**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                                                     Case No. 13-cv-580 (RPP)

ANH NGUYET TRAN, et al.,

                      Plaintiffs,

-v-

BANK OF NEW YORK, et al.,

                      Defendants.

-----------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**
**OR, IN THE ALTERNATIVE, TO SEVER PLAINTIFFS**

## Table of Contents

Page

INTRODUCTION ...........................................................................................................1

SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY ..........................................2

ARGUMENT ................................................................................................................5

I.     Plaintiffs Lack Standing To Maintain Claims Based Upon Alleged Breaches Of Pooling And Servicing Agreements To Which Plaintiffs Are Not Parties And Of Which Plaintiffs Are Not Third-Party Beneficiaries. ..........................................................5

II.    Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted. ............................8

    A.    Standard On Motion To Dismiss For Failure To State A Claim. ...........................8

    B.    The First Count Of Plaintiffs' Amended Complaint Must Be Dismissed Because Plaintiffs Fail Sufficiently To Allege A RICO Violation By Any Defendant. ..........................................................................................9

        1.    Plaintiffs Fail To Allege Sufficient Facts to Demonstrate That They Have RICO Standing. ........................................................10

            a.    Plaintiffs Have Not Suffered a Clear and Definite Injury.............10

            b.    Plaintiffs Have Not Alleged Proximate Causation. ......................11

        2.    Plaintiffs Fail To Allege That Any Defendant Engaged In Any Predicate Act Of Racketeering, Let Alone A Pattern Of Racketeering Activity. ................................................................13

        3.    Plaintiffs Fail To Allege A Coherent Theory As To What Defendant "Conducted" What "Enterprise." ................................15

    C.    The Second Count of Plaintiffs' Amended Complaint Must Be Dismissed Because Plaintiffs Fail To Allege A Conspiracy To Commit A RICO Violation. ........................................................................................17

    D.    Both Plaintiffs' Substantive RICO Claim And Their RICO Conspiracy Claim Are Barred By The Applicable Statute Of Limitations............................18

    E.    The Third Count of Plaintiffs' Amended Complaint Must Be Dismissed Because It Fails To Identify A Substantive Claim For Relief. ............................19

III.    Plaintiffs Are Misjoined In This Action. ........................................................20

CONCLUSION............................................................................................................22

## INTRODUCTION

Plaintiffs' Amended Complaint alleges that five Defendant banks entered into a vast racketeering conspiracy, the alleged object of which was to engage in completely mundane and lawful activity:  collection of payments that Plaintiffs agreed to make on mortgage loans that they had taken out and (after Plaintiffs failed to pay as agreed) foreclosure upon the collateral that Plaintiffs had mortgaged to secure those loans.  Plaintiffs do not dispute that they borrowed the money, that they failed to pay it back, and that the foreclosures were justified by their defaults.  Rather, Plaintiffs allege that Defendants did not own Plaintiffs' mortgage loans as the result of breaches of agreements between Defendants and the previous owners, holders, and assignors of Plaintiffs' promissory notes and mortgages (which evidenced those mortgage loans).

Plaintiffs' complaint should be dismissed for several reasons.  First, well-established law holds that plaintiffs lack standing to bring claims founded upon breaches of contracts to which they are neither parties nor intended third-party beneficiaries.  Plaintiffs' claims are entirely premised upon the allegation that certain alleged contractual provisions of the so-called "Pooling and Servicing Agreements" (or "PSAs") that create and govern the relevant residential mortgage-backed securitization ("RMBS") trusts were not complied with and, therefore, Defendants do not own Plaintiffs' mortgage loans.  Plaintiffs are neither parties to nor third-party beneficiaries of the PSAs.  Thus, they lack prudential standing to bring claims against Defendants that are based upon alleged breaches of those agreements.

Second, Plaintiffs' racketeering and racketeering conspiracy claims must be dismissed because Plaintiffs fail to plead critical facts of the alleged RICO violations.  Specifically, Plaintiffs fail to:

- Allege that they suffered any injury caused by Defendants' alleged racketeering;

- Allege a single predicate act of racketeering by any Defendant; and

- Identify any racketeering enterprise that any Defendant is alleged to have conducted.

Third, the facts that Plaintiffs *do* plead regarding their RICO and RICO conspiracy claims demonstrate that the claims are barred by the applicable statute of limitations.

Finally, Plaintiffs fail to allege any substantive claim to support their prayer for injunctive relief.  The Court should accordingly grant Defendants' joint motion to dismiss the Amended Complaint in its entirety.

If the Court determines not to dismiss the Amended Complaint, the Court should nevertheless grant Defendants' motion to sever.  Plaintiffs' claims concern properties that lie in eight different states.  They entered into different mortgage loan transactions at different times with different lenders and are each at a different stage of the foreclosure process.  Plaintiffs accordingly lack the unitary transaction, occurrence, or series of transactions or occurrences necessary for permissive joinder and should be severed.

## SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiffs are a collection of thirty-eight individuals and one limited liability company who allege that they own or owned residential real properties that have been the subject of foreclosure proceedings.  Am. Compl. ¶ 1.  Defendants Bank of New York n/k/a Bank of New York Mellon, Deutsche Bank National Trust Company, HSBC Bank USA National Association, U.S. Bank National Association, and Wells Fargo Bank National Association (the "Trustee Defendants") are trustees of RMBS trusts created under New York law for the purpose of pooling residential mortgage loans, including Plaintiffs' mortgage loans, and issuing residential

mortgage-backed (RMBS) securities.[1]  *Id.* ¶¶ 2, 5.  Plaintiffs also name as defendants the various

RMBS trusts (the "Trust Defendants") in which they allege their mortgage loans are held.[2]  *Id.* ¶

3.

Plaintiffs' Amended Complaint asserts that various alleged breaches of agreements

underlying the RMBS securitization process (i.e., the PSAs) prevented the Trustee Defendants

from acquiring ownership of Plaintiffs' mortgage loans.  Plaintiffs allege that each RMBS trust

was formed pursuant to a "Pooling and Servicing Agreement," or "PSA."  Am. Compl. ¶ 5.

Parties to a PSA typically include the RMBS trustee, who owns and holds mortgage loans in

trust for investors who buy certificates backed by the pooled mortgage loans, a "depositor," who

conveys the loans to the trustee in return for the certificates, and a "servicer" who sees to

administrative tasks involving the individual mortgage loans, such as monthly payment

collection and, in cases of default, foreclosure.[3]  *See generally Trust for the Certificate Holders*

---

[1]  Plaintiffs are suing the Trust Defendants solely in their trustee capacities.  *See, e.g.*, Am.
Compl., ¶¶ 2-4.  In any event, a trustee has a separate identity when it is sued in its individual
capacity versus its trustee capacity.  *Jet Start Enters. Ltd. v. CS Aviation Servs.*, 2004 WL
350733, at *7 (S.D.N.Y. Feb. 25, 2004).  Given that trustees of RMBS trusts do not hold
mortgages in their individual capacities, Plaintiffs lack standing to bring claims against the
Trustee Defendants in their individual capacities.  *See id.*; *City of Cincinnati v. Deutsche
Bank Nat'l Trust Co.*, 897 F. Supp. 2d 633, 638-39 (S.D. Ohio 2012); *Denton v. U.S. Bank,
N.A.*, 2011 WL 7628515, at *6 (D. Or. Oct. 26, 2011), *adopted*, 2012 WL 1029364 (D. Or.
Mar. 26, 2012).

[2]  Under New York law, a trust is not a person that can sue or be sued, and litigation involving
a trust must be brought by or against the trustee in its capacity as such, and therefore any
assertions by one or more of the Trust Defendants throughout this memorandum are made by
the Trustee Defendants on behalf of the Trust Defendants.  *See, e.g.*, *Kirschbaum v. Elizabeth
Ortman Trust*, 2004 WL 1372542, at *2, 3 Misc. 3d 1110(A) (Sup. Ct., Suffolk Cty. Mar. 10,
2004) (trustees "as legal owners of the trust estate generally sue and are sued in their own
capacity" because the trust itself lacks capacity to act).

[3]  Thus, although Plaintiffs' claims are based upon the premise that it is the Trustee Defendants
that collect their mortgage loan payments and execute foreclosure proceedings, that premise
is factually incorrect.  The mortgage loan servicers "will collect the debt service payments on
the loans and distribute the same to the investors" and "are responsible for enforcing the
terms of a defaulted securitized loan.  This responsibility may include . . . foreclosing on the
property . . . ."  Talcott Franklin & Thomas Nealon III, *Mort. & Asset Based Sec. Litig.
Handbook*, §§ 5:105-5:106 (2011).

*of the Merrill Lynch Mortg. Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.*, 556 F.3d 100, 104-05 (2d Cir. 2009) (describing role of PSA in mortgage securitization process). Accordingly, each PSA provides for delivery of trust assets (consisting principally of promissory notes and mortgages) to the trustee in a particular manner on or before a specified closing date. Am. Compl. ¶ 18.  Plaintiffs allege that "these provisions were violated by each of the [D]efendants," *id.* ¶ 18, and that "[t]he delivery of the trust funds to each defendant . . . was never completed on the date of closing or at any other date permitted under the PSA . . . ." *Id.* ¶ 20.  Plaintiffs also assert generally that other conditions governing "creation of the trust[s] and . . . acquisition of the loan[s] by the trust[s] were never met." *Id.* ¶ 31.

Plaintiffs allege that, as a result of these purported breaches of the PSAs, Defendants "each knew that each of them did not own" Plaintiffs' mortgage loans and lacked "standing to enforce the loans."  Am. Compl. ¶ 21.  Plaintiffs assert that Defendants nonetheless "fraudulently claimed they had a right of ownership of [Plaintiffs'] loan[s], . . . and on the basis of this claim collected from the [P]laintiffs payments of the mortgage[s] and enforced the mortgage[s by] wrongfully foreclosing on" Plaintiffs' properties.  *Id.* ¶ 14.  Plaintiffs also allege that Defendants "fraudulently represented that the conditions" governing the acquisition of Plaintiffs' loans "were met and/or concealed the fact that they were not met while enforcing the loan[s]."  *Id.* ¶ 31.  Tellingly, Plaintiffs do not identify the supposed "true" owners of their mortgage loans and do not allege that they have received payment demands from anyone else claiming to own their mortgage loans.  Nevertheless, Plaintiffs allege that Defendants' alleged collection efforts constitute violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1961, et seq., and that Defendants conspired to violate the Act.

Plaintiffs filed their original complaint on January 25, 2013.  Before serving any Defendant, Plaintiffs filed their Amended Complaint on April 15, 2013.  The Trustee Defendants, on behalf of themselves solely in their trustee capacities and on behalf of the Trust Defendants, now move to dismiss the Amended Complaint or, in the alternative, to sever Plaintiffs.

**ARGUMENT**

**I.    Plaintiffs Lack Standing To Maintain Claims Based Upon Alleged Breaches Of Pooling And Servicing Agreements To Which Plaintiffs Are Not Parties And Of Which Plaintiffs Are Not Third-Party Beneficiaries.**

As an initial matter, Plaintiffs' Amended Complaint must be dismissed because it is predicated entirely upon alleged breaches of the PSAs, and Plaintiffs—who are neither parties to nor third-party beneficiaries of those agreements—lack standing to assert claims based upon such breaches.  Although couched in the language of the RICO Act, Plaintiffs' Amended Complaint is founded upon the allegation that contractual provisions contained within the PSAs were violated by the parties to those agreements.[4]  Plaintiffs allege that, as a result of those purported violations, Defendants do not own and are not entitled to enforce Plaintiffs'

---

[4]    There is one lone paragraph of the Amended Complaint in which Plaintiffs vaguely allude to a separate ground for their claims.  In Paragraph 32, Plaintiffs allege "[o]n information and belief" that Defendants somehow benefitted from Plaintiffs' defaults "either by credit swaps or by default insurance."  This allegation fails to state a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), because Plaintiffs plead no facts in support of it.  *See Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 698 (E.D. Va. 2010) (dismissing borrower's claim based upon alleged credit default swap or default insurance payout where complaint "contain[ed] no specific facts plausibly suggesting that any pay-out actually occurred; that any Defendant received a pay-out as the result of Plaintiffs' default . . . ; or that the pay-outs satisfied Plaintiffs' obligation under the loan").  The allegation also fails to state a claim because there is no legal basis for the contention that such a payout would satisfy Plaintiffs' indebtedness.  *See id.* at 698-99; *Dumont v. HSBC Mortg. Corp., USA*, 2010 WL 3023885, at *6 (D. Ariz. Aug. 2, 2010); *Flores v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 2719849, *4 (D. Md. July 7, 2010).

promissory notes and mortgages, which evidence their mortgage loans.  Paragraph 31 of the

Amended Complaint aptly summarizes Plaintiffs' theory:

> The Pooling and Servicing Agreement (PSA) under which each
> trust was created prescribed the conditions of the creation of the
> trust and the conditions and prescription in which the loans were to
> become property of the trust.  *The said conditions and*
> *prescriptions were never met by the defendants.*  This creation of
> the trust and the conditions for acquisition of the loan by the trust
> were never met.  The defendants knew this was the case, and
> fraudulently represented that the conditions were met and/or
> concealed the fact that they were not met while enforcing the loan.

Am. Compl. ¶ 31 (emphasis added).  Plaintiffs repeat and underscore this theory in numerous

paragraphs throughout the Amended Complaint:

> Each particularly above numerated defendants corresponding to
> the trustee and trust of each particularly numerated mortgage
> loan . . . fraudulently claimed they had a right of ownership of the
> loan . . . *by the time prescribed in the document known as the*
> *pooling and servicing agreement for the delivery of the trust funds*
> *to the trust and the consequent creation of the trust . . . , and on the*
> *basis of this claim collected from the plaintiffs payments of the*
> *mortgage and enforced the mortgage payments wrongfully*
> *foreclosing on the . . . plaintiffs . . . .* (¶ 14) (emphasis added)

> . . . in each case *the securitization process was not adhere as per*
> *the instrument that created the trust the Pooling Service*
> *Agreement* ("PSA").  (¶ 16) (emphasis added)

> In each of the PSA that created the trust, there are provisions . . .
> that provides for the delivery at the date of the closing of the PSA
> of the trust funds by the depositor . . . .  All of these provisions
> were violated by each of the defendants . . . , and the documents
> never delivered by the prescribed route and date of delivered in
> violation to the PSA after the prescribed date.  (¶ 18)

> The delivery of the trust funds to each defendant . . . was never
> completed on the date of closing or at any other date permitted
> under the PSA each of the trust was never formed.  (¶ 20)

Having chosen that theory, Plaintiffs have pleaded themselves out of court.  "The weight

of caselaw throughout the country holds that a non-party to a PSA lacks standing to assert non-

compliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013) (citing cases).  Indeed, every federal appellate court that has considered the issue has held that a plaintiff-borrower lacks standing to bring any claim that is based upon alleged noncompliance with a PSA or the assignment of the plaintiff's mortgage loan.[5]  This holding is grounded upon the prudential standing principle that a party may not "'rest his claim to relief on the legal rights or interests of third parties.'"  *Livonia Prop. Holdings, L.L.C. v. Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735 (E.D. Mich.) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)), *aff'd*, 399 F. App'x 97 (6th Cir. 2010), *cited in Rajamin*, 2013 WL 1285160, at *3.  Any purported breach of a PSA relating to the conveyance and transfer of any Plaintiff's mortgage loan to a Trustee Defendant is a matter between that Trustee Defendant and the other parties to the applicable PSA.  Such a breach—if it

---

[5]  *See Robinson v. Select Portfolio Servicing, Inc.*, No 12-1768, 2013 WL 1405201, at *3-*4 (6th Cir. Apr. 9, 2013) (plaintiff/mortgagors lacked standing to allege unfair practices against RMBS trustee challenging the assignment of their mortgage based upon alleged noncompliance with a PSA (even though their mortgage was allegedly added to the RMBS trust after the closing date specified in PSA) because they were not parties to, or third-party beneficiaries of, the assignment or PSA); *Smith v. Litton Loan Servicing, LP*, No. 12-1684, 2013 WL 888452, at *2 (6th Cir. Mar. 12, 2013) (dismissing claims asserting that RMBS trustee did not own plaintiff's mortgage loan because assignment of the mortgage to the trust occurred after the closing date specified in the PSA; plaintiff lacked standing to assert such claims because he "was neither a party nor a third-party beneficiary to the [PSA], so even if its terms were violated, [plaintiff] may not challenge compliance with the [PSA]"); *Karnatcheva v. JP Morgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (plaintiff/mortgagors lack standing to assert a declaratory judgment claim challenging the assignment of their mortgage loan based upon alleged noncompliance with a PSA because they are not parties to or third party beneficiaries of the PSA); *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102-03 (6th Cir. 2010) (a plaintiff/mortgagor "who is not a party to an assignment" lacks standing to challenge a defendant's ownership of the assigned mortgage loan based upon noncompliance with a PSA that allegedly rendered the assignment invalid); *Rogan v. Bank One, National Association (In re Cook)*, 457 F.3d 561, 567-68 (6th Cir. 2006) (dismissing plaintiff's claim against RMBS trustee seeking a declaration that the trustee did not have a perfected security interest in the property because of alleged noncompliance with the "Trust Agreement," which required the assignment to be recorded, because plaintiff lacked standing to enforce the Trust Agreement).

even existed—would not affect "*whether* [a borrower] owes its obligations, but only to *whom* [the borrower] is obligated." *Livonia*, 717 F. Supp. 2d at 735.  That is, Plaintiffs' obligation to repay their mortgage loans continues regardless of who owns the underlying indebtedness.

Here, Plaintiffs allege no facts tending to show that any of them is a party to or an intended third-party beneficiary of any applicable PSA.  Nor could they.[6]  As such, Plaintiffs simply have no right to bring any claim based upon an alleged breach of a PSA.  Because Plaintiffs' claims rely solely on such alleged breaches, their Amended Complaint must be dismissed.

## II.   Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted.

### A.   Standard On Motion To Dismiss For Failure To State A Claim.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient.  *Twombly*, 550 U.S. at 555. These requirements apply with particular force to civil RICO claims.  *See United States v. Int'l Longshoremen's Assoc.*, 518 F. Supp. 2d 422, 458-59 (E.D.N.Y. 2007) (applying *Twombly* to

---

[6]   As part of the securitization process, PSAs are filed publicly with the Securities and Exchange Commission.  For example, the PSA pertaining to the first named Plaintiff's loan is available at: http://edgar.sec.gov/Archives/edgar/data/1356674/000088237706002580/d509167_ex4.htm. As review of the document confirms, Plaintiff Tran is not a party to—nor an intended third-party beneficiary of—the agreement.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (court considering motion to dismiss may rely on documents required to be filed with Securities and Exchange Commission).

RICO complaint); *see also Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000).

"'Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Goldfine*, 118 F. Supp. 2d at 397 (omissions in original) (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)).

> ### B. The First Count Of Plaintiffs' Amended Complaint Must Be Dismissed Because Plaintiffs Fail Sufficiently To Allege A RICO Violation By Any Defendant.

Even if dismissal of Plaintiffs' Amended Complaint was not required on prudential standing grounds, Plaintiffs' First Count must nonetheless be dismissed because Plaintiffs fail adequately to allege the elements of a RICO violation against any Defendant.  The elements of a violation of section 1962(c) are "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Bernstein v. New York*, 591 F. Supp. 2d 448, 461 (S.D.N.Y. 2008) (quoting *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).  A plaintiff also "must allege 'causation, *i.e.*, that he or she was injured in his business or property by reason of a violation of section 1962[(c)].'" *Weizmann v. Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 254 (S.D.N.Y. 2002) (quoting *Moss v. Morgan Stanley*, 719 F.2d 5, 17 (2d Cir. 1983)).

To withstand dismissal, a RICO complaint may not generalize among multiple defendants.  Rather, the elements of a section 1962(c) violation "'must be established as to each individual defendant.'" *Weizmann*, 229 F. Supp. 2d at 255 (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).  Plaintiffs' Amended Complaint fails adequately to allege a section 1962(c) violation by any Defendant.

### 1.   Plaintiffs Fail To Allege Sufficient Facts to Demonstrate That They Have RICO Standing.

Plaintiffs' Complaint fails to demonstrate that they have standing under RICO, which "is a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). "To demonstrate standing [under RICO], a plaintiff must plead, at a minimum, '(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)). Plaintiffs must allege facts demonstrating each of them has standing. *See Macomber v. Travelers Prop. Cas. Corp.*, 3:98-cv-01060, 1999 WL 118005, at *2 (D. Conn. Jan. 28, 1999) (requiring plaintiffs, in amending their complaint, to "[s]et forth with the requisite particularity how each has standing to bring a RICO claim under the three RICO standing sections"). Plaintiffs have not adequately demonstrated that they have standing to pursue their RICO claims.

### a.   Plaintiffs Have Not Suffered a Clear and Definite Injury.

First, Plaintiffs do not allege an injury that was caused by any alleged pattern or acts of racketeering. To confer standing under RICO, a plaintiff must allege an injury to "business or property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c). Furthermore, the "actual loss" suffered by the plaintiff must be "clear and definite." *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("as a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite.").

Plaintiffs do not allege actual losses that are clear and definite. Instead, Plaintiffs appear to offer two injury theories. First, they suggest that they were "injured" because, if they had known of alleged defects in the conveyance and transfer of their mortgage loans, they could have

withheld payment.  *See* Am. Compl. ¶ 14, 16, 18, 20, 22, & 31.  Plaintiffs' suggestion is

mistaken.  As a matter of law, a defect in the conveyance and transfer of a Plaintiff's loan would

not erase that Plaintiff's obligation to repay his or her debt.  *See Velasco v. Sec. Nat'l Mortg. Co.*,

823 F. Supp. 2d 1061, 1067 n.3 (D. Haw. 2011) (quoting *Livonia*, 717 F. Supp. 2d at 737).

Taking as true Plaintiffs' allegation that Defendants violated RICO by fraudulently concealing

defects in the conveyances and transfers of Plaintiffs' loans, Plaintiffs are no worse off

economically than they would have been if their original lenders had continued to hold their

loans.  They do not allege that Defendants collected payments in excess of what Plaintiffs had

agreed to pay under the terms of their mortgage loans.  Regardless who held their mortgage

loans, Plaintiffs were obligated to pay as agreed and subject to foreclosure when they defaulted.

Thus, Plaintiffs have not suffered any injury cognizable under RICO.

　　　Alternatively, Plaintiffs suggest that they were injured when Defendants foreclosed upon

certain Plaintiffs' loans.  However, according to the Complaint, thirteen of the Plaintiffs have not

yet been foreclosed upon.  *See* Am. Compl. Ex. 1.  It is beyond doubt that those Plaintiffs cannot

have suffered a "clear and definite injury" as a result of foreclosure.  *See First Nationwide Bank*,

27 F.3d at 768-69 ("the loss [plaintiff] would suffer as to those loans [plaintiff] has not finally

foreclosed cannot yet be determined.  Only when [plaintiff's] actual loss becomes clear and

definite will the claims be ripe for suit.").  They therefore do not have standing to pursue claims

under RICO.

### b.　　　Plaintiffs Have Not Alleged Proximate Causation.

　　　Second, assuming *arguendo* that plaintiffs have alleged a "clear and definite" actual loss,

they have not alleged facts demonstrating that Defendants' alleged predicate acts proximately

caused their losses.  A RICO plaintiff must allege that "a RICO predicate offense 'not only was a

'but for' cause of his injury, but was the proximate cause as well.'"  *Hemi Group, LLC v. City of*

*New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. SIPC*, 503 U.S. 258, 268 (1992)); *see also Lerner*, 318 F.3d at 120 (to satisfy causation requirement, the plaintiff must allege "the defendant's conduct is both the factual and proximate cause of the injury alleged").  Proximate cause requires "'some direct relation between the injury asserted and the injurious conduct alleged.'"  *Hemi Group*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268).  A plaintiff who does not allege facts showing that its injury was caused directly by a pattern of racketeering activity or by individual RICO predicate acts does not have standing under RICO.  *See Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003).

  Here, Plaintiffs have failed to allege any injury proximately caused by Defendants' alleged predicate acts.  To the extent that Plaintiffs allege that they incurred foreclosure or shortsale—the only alleged injuries in this case that could even arguably support the RICO claims—such injuries were proximately caused solely by Plaintiffs' failure to comply with the terms of their mortgage loans, *e.g.*, make timely payments.  *See Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa)*, 674 F.3d 1083, 1092-93 (9th Cir. 2012) ("Debtor's losses 'result[ed] from' her default, rather than Lenders' failure to shout out the postponement of the foreclosure."); *Caswell v. JP Morgan Chase Bank, N.A.*, 500 F. App'x 580, 582 (9th Cir. 2012) (dismissal of wrongful foreclosure suit; "any alleged failure by Chase to disclose information caused Plaintiff no damage; only her failure to pay the mortgage caused her damage"); *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, No. 11-6239, 2013 WL 2444036, at *9 (D.N.J. June 4, 2013) ("The direct cause of the foreclosure proceedings was the Giles' failure to make mortgage payments."); *Casault v. Fed. Nat'l Mortg. Ass'n*, 11-cv-10520, 2012 WL 6861701, at *7 (C.D. Cal. Nov. 26, 2012); *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1109 (D. Minn. 2011) ("The foreclosure was caused by Plaintiff's inability to make payments pursuant to the loan

agreement.").  Therefore, Plaintiffs have not alleged that any alleged predicate acts by

Defendants proximately caused their harm.  *See Lerner*, 318 F.3d at 123 ("the racketeering

activities alleged are not a substantial factor in the chain of causation that led to plaintiffs'

losses"); *Bernstein v. Misk*, 948 F. Supp. 228, 240 (E.D.N.Y. 1997) ("When factors other than

the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury

cannot be said to have occurred by reason of the defendant's actions.").  Because the alleged

racketeering activity could not have caused any injury to Plaintiffs' business or property,

Plaintiffs lack standing to bring suit under RICO.

### 2.    Plaintiffs Fail To Allege That Any Defendant Engaged In Any Predicate Act Of Racketeering, Let Alone A Pattern Of Racketeering Activity.

Even if Plaintiffs had adequately alleged an actionable injury and proximate causation,

their RICO claim would still have to be dismissed for failure to allege that any Defendant

engaged in a pattern of racketeering activity.  "Racketeering activity" is defined to include a

number of crimes including mail and wire fraud as defined in sections 1341 and 1343 of title 18

of the United States Code.  *See* 18 U.S.C. § 1961(1).  A "'pattern of racketeering activity'

requires at least two acts of racketeering activity . . . ."  18 U.S.C. § 1961.  To state a claim

against a particular defendant, a plaintiff must sufficiently allege two predicate acts of

racketeering committed by that defendant.  *See Weizmann*, 229 F. Supp. 2d at 255.

When, as here, a plaintiff alleges that violations of the mail or wire fraud statutes supply

the racketeering activity element, the plaintiff must meet the heightened pleading standards of

Rule 9(b) of the Federal Rules of Civil Procedure.  *See Spool v. World Child Int'l Adoption

Agency*, 520 F.3d 178, 185 (2d Cir. 2008).  "The elements of a mail or wire fraud violation are:

(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the

mails or wires to further the scheme."  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 299

n.45 (S.D.N.Y. 2011) (internal quotation marks omitted).  A plaintiff's mail or wire fraud

allegations "'should state the contents of the communications, who was involved, [and] where

and when they took place, and [should] explain why they were fraudulent.'"  *Id.* at 185

(alterations in original) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.

1993)).  A complaint alleging mail and wire fraud must also "plead facts that give rise to a strong

inference that the defendant possessed fraudulent intent."  *Mills*, 12 F.3d at 1176.

The Amended Complaint fails to identify a single act of racketeering by any Defendant.

Instead, under the heading "The Pattern of Racketeering," Plaintiffs allege in vague and

conclusory fashion that:

> Continuously as listed in **Exhibit # 1** at page 5 from the date of the
> PSA closing date, the defendants, to the date of foreclosure, short
> sale or loan modification (**Exhibit # 1** at Page 7), in each particular
> case, engaged in obtaining by fraud, extortion or deception
> payments from the plaintiffs in every particularly stated case and
> enforced fraudulently, deceptively either way of modification or
> short sale and/or foreclosure the loans with the methods above
> stated . . . .

Am. Compl. ¶ 42.  In the following paragraph, Plaintiffs allege that "defendants['] aforesaid acts

constitute racketeering activities because they are prohibited activities under **18 U.S.C. § 391**,"

Am. Compl. ¶ 43a, but there is no statute codified at section 391 in title 18 of the United States

Code.  Plaintiffs further allege that "defendants['] actions are in violation of **18 U.S.C. §1343**

(the said acts occurred though mail communications, by fraudulent pretenses, representations in

interstate commerce by executing and scheme or artifice."  Am. Compl. ¶ 43b.  It is difficult to

discern what Plaintiffs mean by this paragraph since they invoke the wire fraud statute while

alleging the existence of "mail communications."  But regardless whether Plaintiffs intend to

allege mail fraud, wire fraud, or both, Plaintiffs fail to identify any allegedly fraudulent

communications, who made the communications, when the communications were made, what

was communicated, why the communications were fraudulent, or how the mails or wires were used in furtherance of an alleged fraud.  Plaintiffs similarly fail to allege, as to any Defendant, facts demonstrating intent to defraud.  In the absence of such allegations, Plaintiffs fail to state a claim.  *See Mills*, 12 F.3d at 1176.  Finally, although Plaintiffs make passing reference throughout the Amended Complaint to alleged "theft by deception, extortion, and other illegal and fraudulent activities," Am. Compl. ¶ 40, Plaintiffs utterly fail to allege any facts tending to show that such conduct actually occurred.  Because they have failed to allege any act of racketeering by any Defendant, Plaintiffs' RICO claim must be dismissed.

### 3.    Plaintiffs Fail To Allege A Coherent Theory As To What Defendant "Conducted" What "Enterprise."

Plaintiffs' RICO claim also fails because Plaintiffs fail to allege that any Defendant conducted or participated in the conduct of the affairs of any identifiable enterprise.  "'[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.'"  *Rosenson v. Mordowitz*, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012) (alteration in original) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 553 U.S. 158, 161 (2001)); *see* 18 U.S.C. § 1962(c) ("It shall be unlawful for any *person* . . . associated with any *enterprise* . . . to conduct or participate, directly or indirectly, in the conduct of such *enterprise's* affairs through a pattern of racketeering activity . . . .") (emphasis added).  Once a plaintiff identifies an enterprise, the plaintiff must also "plead facts from which it can be inferred that each of the defendants participated, directly or indirectly, in the conduct of the enterprise's affairs."  *Elsevier, Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010).  An enterprise may consist of "any individual, partnership, corporation, association or other legal

15

entity, and any union or group of individuals associated in fact although not a legal entity[.]"  18

U.S.C. § 1961(4).

Plaintiffs' Amended Complaint fails to allege any facts tending to show that any

Defendant, as a RICO "person," participated in the conduct of the affairs of any separate

"enterprise."  Under the heading "Enterprise," Plaintiffs allege generally that:

> The corrupt defendants engaged in a pattern of racketeering
> activity individually, through their respective banking institution,
> personnel, agents, servicers, corporations and other business
> institution to defraud the plaintiffs through and elaborated scheme
> that use the mechanism of securitization to enforce loans for which
> they were not entitled, knowing that they had not such right,
> concealing it and seeking to foreclose on the plaintiffs' property.
> These acts of concealment and fraudulent actions were the sole
> reason for the creation of the racketeering organization.

Am. Compl. ¶ 38.  In the next paragraph, Plaintiffs allege that:

> All individually corrupt defendants and their associated corporate
> counterparts as set forth supra, formed an enterprise and
> participated in the pattern of fraud, theft by deception, and
> fraudulent enforcement of loans for which they had not right to
> enforce.

*Id.* ¶ 39.  None of these allegations even begins to describe what Defendant is alleged to have

participated in conducting the affairs of what separate enterprise.

Plaintiffs' "association in fact" allegations fare no better.  "[F]or an association of

individuals to constitute an enterprise, the individuals must share a common purpose to engage in

a particular fraudulent course of conduct *and work together to achieve such purposes*."  *First*

*Capital Asset Mgt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (emphasis added)

(internal quotation marks omitted); *see Boyle v. United States*, 556 U.S. 938, 946 (2009)

(association-in-fact enterprise must have "both interpersonal relationships and a common

interest").  Plaintiffs' attempt to plead the existence of an association in fact begins and ends

with the rote allegation that Defendants "formed an 'association in fact' enterprise within the

meaning of **18 U.S.C. § 1961 (f)** which with knowledge had their main reason for existence in

the criminal corrupt scheme of fraud, theft by deception, extortion, and other illegal and

fraudulent activities to steal from and defraud plaintiffs." Am. Compl. ¶ 40. Plaintiffs make no

attempt to explain how any Defendant allegedly worked together with others in an alleged

scheme to defraud. Without such explanation, Plaintiffs' RICO claim fails. *See Elsevier*, 692 F.

Supp. 2d at 307 (dismissing RICO complaint in which "not a single fact [was] pleaded tending to

show that the various sets of named defendants . . . had any interpersonal relationships"). The

First Count of Plaintiffs' Amended Complaint must accordingly be dismissed.

### C.   The Second Count of Plaintiffs' Amended Complaint Must Be Dismissed Because Plaintiffs Fail To Allege A Conspiracy To Commit A RICO Violation.

Plaintiffs' Second Count must be dismissed because Plaintiffs fail to allege that any

Defendant conspired to violate the RICO statute. A complaint that fails adequately to allege a

substantive RICO violation cannot state a claim for RICO conspiracy. *See Satinwood*, 385 F.3d

at 182. For the reasons stated above, Plaintiffs have failed to allege that any Defendant

committed a substantive RICO violation. Plaintiffs' RICO conspiracy claim therefore

necessarily fails as well.

Plaintiffs' RICO conspiracy claim is also doomed by Plaintiffs' failure to allege a factual

basis sufficient to support a plausible inference that a conspiracy took place. At a minimum, a

plaintiff alleging the existence of a RICO conspiracy must allege "'some factual basis for a

finding of a conscious agreement among the defendants.'" *Picard v. Kohn*, 907 F. Supp. 2d 392,

400 (S.D.N.Y. 2012) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d

Cir. 1990)). Here, Plaintiffs' conspiracy allegations alternate between bare recitations of the

existence of an agreement:

> The Corrupt Defendants agreed to commit the predicate acts

specified in the First Count and to violate 18 U.S.C. § 1962 (c). (¶ 51)

The Corrupt Defendants' elaborate fraud, and extortion and fraudulent scheme was organized in a manner in which all participants agreed to and in fact, either directly, or indirectly through other participants, conducted the same type of actions that caused the plaintiffs injuries and damages.  (¶ 52)

and inscrutable circular reasoning:

The Corrupt Defendants that participated in the enterprise described in the First Count did so with the common goal of defrauding plaintiffs in each case and globally since the conduct of all defendants whether individually in each particularly case with their agents for that particular case or globally in concert with each other show a common pattern of racketeering, conspiracy of all defendants.  (¶ 50)

Both of Plaintiffs' approaches are characterized by the lack of any *factual* allegation against any Defendant.  Nowhere do Plaintiffs explain which Defendants agreed with which other Defendants, when the agreement took place, how the agreement came about, or what was agreed upon.  In the absence of any such factual content, Plaintiffs cannot state a claim for RICO conspiracy.  *See Elsevier*, 692 F. Supp. 2d  at 313 (dismissing RICO conspiracy claim where complaint contained "nothing more than a conclusory allegation of an agreement among defendants").  Accordingly, the Second Count of Plaintiffs' Amended Complaint must be dismissed.

### D.  Both Plaintiffs' Substantive RICO Claim And Their RICO Conspiracy Claim Are Barred By The Applicable Statute Of Limitations.

Plaintiffs' RICO and RICO conspiracy claims must be dismissed also because they are barred by the applicable statute of limitations.  Civil actions under the RICO Act are subject to a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury.  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d

Cir. 1998) (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)).  As noted above, Plaintiffs' alleged injury consists of mortgage loan payments that Defendants allegedly "fraudulently took" from Plaintiffs "on a monthly basis *from the date of the PSA stated closing date* to the time that each plaintiff came to stop his/her monthly payment of the note . . . ."  Am. Compl. ¶ 23 (emphasis added).  Plaintiffs must have been aware that they were making their mortgage loan payments, and they do not allege otherwise.  Accordingly, under Plaintiffs' pleaded theory of the case, each Plaintiff's alleged RICO claim accrued upon the date of the first monthly payment following the closing date established by the PSA under which each Plaintiff's loan is held in trust.

Plaintiffs allege the "PSA stated closing date" applicable to each of their loans in Exhibit 1 to the Amended Complaint.  *See id.* ¶ 17 & Ex. 1 at 5.  The latest of these dates is September 28, 2007.  *See id.* Ex. 1 at 5.  The original complaint in this action was filed on January 25, 2013, more than five years after the last of Plaintiffs' alleged RICO claims accrued.[7]  Accordingly, the First and Second Counts of Plaintiffs' Amended Complaint are barred by the statute of limitations and must be dismissed.

### E.      The Third Count of Plaintiffs' Amended Complaint Must Be Dismissed Because It Fails To Identify A Substantive Claim For Relief.

The Third Count of Plaintiffs' Amended Complaint fails because it prays for injunctive relief without identifying a substantive claim that would support the issuance of an injunction.  "Injunction is not a separate cause of action; it is a remedy."  *Chiste v. Hotels.com L.P.*, 756 F.

---

[7]   At a minimum, the four Plaintiffs who allege they were foreclosed upon before January 1, 2009—Christina T. Soulamany (foreclosure date: December 9, 2008), Lai Somchanmavong (foreclosure date: December 9, 2008), Kay Aphayvong (foreclosure date: February 20, 2008), and Kim-Thuy Nguyen (foreclosure date: April 17, 2008)—had actual notice of their claims more than four years prior to the filing of the Complaint.  Such claims are clearly barred by the statute of limitations.

Supp. 2d 382, 407 (S.D.N.Y. 2010); *see also Cangemi v. United States*, ___ F. Supp. 2d ___,

2013 WL 1332842, at *4 (E.D.N.Y. Mar. 29, 2013).  A plaintiff seeking an injunction must plead

a viable substantive claim, and that claim must entitle the plaintiff to injunctive relief.  *See*

*Chiste*, 756 F. Supp. 2d at 407-08.  For the reasons stated above, Plaintiffs have failed to state

any substantive claim under the RICO Act.  Even if Plaintiffs had sufficiently pleaded such a

claim, injunctive relief is not available to private plaintiffs under the Act.  *See Am. Med. Assoc.*

*v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 445-46 (S.D.N.Y. 2008).  The Amended

Complaint identifies no other substantive basis for injunctive relief.[8]  *See* Am. Compl. ¶¶ 55-59.

Accordingly, Plaintiffs' Amended Complaint should be dismissed in its entirety.

## III.    Plaintiffs Are Misjoined In This Action.

Finally, if the Court determines not to dismiss the Amended Complaint outright, it should

find that Plaintiffs have been misjoined and grant Defendants' motion to sever.  Plaintiffs may

join together in an action only if "they assert any right to relief . . . with respect to or arising out

of the same transaction, occurrence, or series of transactions or occurrences" and "any question

of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  "It is

well established that separate loan transactions by different lenders do not constitute a single

transaction or occurrence and claims by plaintiffs who engaged in those separate transactions

generally cannot be joined in a single action."  *See Abraham v. Am. Home Mortg. Servicing, Inc.*,

___ F. Supp. 2d ___, 2013 WL 2285205, at *4 (E.D.N.Y. May 23, 2013).  In *Abraham*, the court

granted a motion to sever several hundred plaintiffs.  *See* 2013 WL 2285205, at *7.  The court

concluded that the plaintiffs' "separate mortgage transactions do not constitute a single

---

8    While they fail to identify a substantive claim, Plaintiffs do emphasize that their allegations
sound in fraud.  *See* Am Compl. ¶¶ 56 & 59.  To the extent that Plaintiffs allege that they are
entitled to an injunction as the result of an alleged fraud, they fail to plead such allegations
with particularity.  *See* Fed. R. Civ. P. 9(b).

transaction or occurrence under Rule 20 of the Federal Rules of Civil Procedure," because the

plaintiffs "asserted claims against several dozen mortgage originators and servicers regarding

different mortgages issued in different states over a nine year period." *Id.* at *4.

Likewise, in *Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 365 (M.D. Fla.

2013), the court granted a motion to sever even though the case joined claims of only "18

different borrowers against at least 9 different lenders arising out of 15 separate mortgages

entered into with 10 different lenders." Like Plaintiffs here, the *Barber* plaintiffs "contend[ed]

that they were harmed when their loans were sold to third-party investors as part of the

securitization process . . . ." 289 F.R.D. at 366. The court found that the plaintiffs' allegations

of "industry-wide" mortgage securitization policies and practices "ignore[d] the individualized

nature" of their claims "as well as the practical difficulties arising" from the attempt at joinder.

*Id.* at 367. The court observed that the plaintiffs' claims "involve[d] conduct by different

[d]efendants, different loan documents, different dates, and different operative fact scenarios"

and "would require individualized attention and likely require separate trials." *Id.* at 367.

As in both *Abraham* and *Barber*, the thirty-nine Plaintiffs in this case are misjoined.

They entered into different mortgage loan transactions in different states for different properties

at different times with different lenders. Am. Compl. Ex. 1. Indeed, Plaintiffs' allegations only

highlight the disparities in their individual situations:

> The cases vary among the plaintiffs some being forced to modify
> loans for which the modification was improvident and constituted
> extortion. (See **Exhibit** #1)  (¶ 27)
>
> Some were foreclosed and deed transferred (See **Exhibit** # 1).
> (¶ 28)
>
> Some are still subject to foreclosure actions.  (¶ 29)

Plaintiffs also allege that Plaintiffs' mortgage loans were securitized into thirty-seven separate and distinct RMBS trusts. *See*, *e.g.*, Am. Compl. ¶ 3. These differences will inevitably give rise to fact-specific claims and defenses. *See Barber*, 289 F.R.D. at 368-69. Moreover, Plaintiffs' allegations of concerted action by Defendants do not help them to avoid severance. *See Abraham*, 2013 WL 2285205, at *5-*6; *Barber*, 289 F.R.D. at 367-68. Plaintiffs' "'unsupported and speculative allegation[s] that the various Defendants conspired to defraud each individual Plaintiff does not satisfy the requirement that Plaintiffs' claims arise out of the same transaction, occurrence, or series of occurrences, nor does it obviate the need for separate proof as to each individual claim." *Abraham*, 2013 WL 2285205, at *5 (alteration in original) (quoting *Richards v. Deutsche Bank Nat'l Trust Co.*, 2012 U.S. Dist. LEXIS 115302, at *2 (C.D. Cal. Aug. 15, 2012)). Accordingly, if it does not dismiss the Amended Complaint entirely, the Court should grant Defendants' motion to sever and drop all but the first named Plaintiff, Anh Nguyet Tran. *See id.* at *9.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that that the Court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice or, in the alternative, drop all Plaintiffs except Plaintiff Anh Nguyet Tran.

Dated: New York, New York
       August 2, 2013

s/Eric R. Sherman
Eric R. Sherman
*admitted pro hac vice*
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600
sherman.eric@dorsey.com

Christopher G. Karagheuzoff
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
(212) 415-9200
karagheuzoff.chris@dorsey.com

*Attorneys for Defendants U.S. Bank National*
*Association as Trustee of the Citigroup*
*Mortgage Loan Trust 2007-6, U.S. Bank*
*National Association as Trustee of the Lehman*
*Mortgage Trust 2007-6, U.S. Bank National*
*Association as Trustee of the Merrill Lynch*
*Mortgage Investors Trust, Series 2006-HE6,*
*U.S. Bank National Association as Trustee of*
*the GSAA Home Equity Trust 2006-12, U.S.*
*Bank National Association as Indenture Trustee*
*of the Citigroup Mortgage Loan Trust 2005-11,*
*U.S. Bank National Association as Trustee of*
*the First Franklin Mortgage Loan Trust 2005-*
*FF9, U.S. Bank National Association as Trustee*
*of the First Franklin Mortgage Loan Trust,*
*Series 2007-FF2, U.S. Bank National*
*Association as Trustee of the First Franklin*
*Mortgage Loan Trust, Series 2007-FFC, U.S.*
*Bank National Association as Trustee of the*
*Structured Adjustable Rate Mortgage Loan*
*Trust 2005-8XS, U.S. Bank National Association*
*as Trustee of the Lehman XS Trust, Series 2005-*
*2, U.S. Bank National Association as Trustee of*
*the Banc of America Funding 2006-6 Trust, U.S.*
*Bank National Association as Trustee of the*
*Bear Stearns ALT-A Trust 2006-3, and U.S.*
*Bank National Association as Trustee of the*
*CSMC Mortgage-Backed Trust Series 2006-5*

s/Christine B. Cesare
Christine B. Cesare
Scott H. Kaiser
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000
cbcesare@bryancave.com
scott.kaiser@bryancave.com

Nafiz Cekirge
BRYAN CAVE LLP
120 Broadway, Suite 300
Los Angeles, CA 90401
(310) 576-2100
nafiz.cekirge@bryancave.com

*Attorneys for Defendants The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-17, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2007-HYB2, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-OA6, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2005-HYB6, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-58, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2007-HY6, The Bank of New York Mellon as trustee of the CHL Mortgage Pass-Through Trust 2005-11, The Bank of New York Mellon as trustee of the CHL Mortgage Pass-Through Trust 2007-3, The Bank of New York Mellon as trustee of the CWHEQ Home Equity Loan Trust, Series 2007-S2, The Bank of New York Mellon as trustee of the Bear Stearns ALT-A Trust 2005-4, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-OA19, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-22T1, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2006-HYB5, and The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-29T1*

24

s/Bernard J. Garbutt III
Bernard J. Garbutt III
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000
bgarbutt@morganlewis.com

Thomas J. Sullivan
*pro hac vice pending*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
tsullivan@morganlewis.com

*Attorneys for Defendants*
*Deutsche Bank National Trust Company, solely in its capacity as Trustee of the American Home Mortgage Assets Trust 2006-1, Deutsche Bank National Trust Company, solely in its capacity as Trustee of the Impac Secured Assets Trust 2006-5, Deutsche Bank National Trust Company, solely in its capacity as Trustee of the RALI Series 2006-QS8 Trust, Deutsche Bank National Trust Company, solely in its capacity as Trustee of the IXIS Real Estate Capital Trust 2006-HE3, Deutsche Bank National Trust Company, solely in its capacity as Trustee of the Fremont Home Loan Trust 2005-1, and Deutsche Bank National Trust Company, solely in its capacity as Trustee of the GSAMP Trust 2006-HE1*

25

s/Brian S. McGrath
Allison J. Schoenthal
Lisa J. Fried
Brian S. McGrath
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
allison.schoenthal@hoganlovells.com
lisa.fried@hoganlovells.com
brian.mcgrath@hoganlovells.com

*Attorneys for Defendants*
*HSBC Bank USA National Association as*
*Trustee of the Opteum Mortgage Acceptance*
*Corp. 2005-1, HSBC Bank USA National*
*Association as Trustee of the Merrill Lynch*
*Alternative Note Asset Trust 2007-A2, Wells*
*Fargo Bank National Association as Trustee of*
*the Securitized Asset Backed Receivables LLC*
*Trust 2005-HE1, and Wells Fargo Bank*
*National Association as Trustee of the*
*GreenPoint Mortgage Funding Trust 2005-AR4*