# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

**TOMAS ESPINOSA, ESQ.**
**8324 Kennedy Blvd.**
**North Bergen, NJ 07047**
**Tel: (201)223-1803/Fax: (201) 223-1893**
**Attorney for Plaintiffs**

| | |
|---|---|
| Anh Nguyet Tran et als. | :Civil Action No. **13-cv-580** |
| | : |
| Plaintiffs | : |
| | : |
| Vs. | : |
| | : |
| Bank of New York now known as Bank of | : |
| New York Mellon by Merger and/or acquisition et als. | : |
| | : |
| Defendants | : |
| | : |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION

**On the Brief:**

**Tomas Espinosa, Esq.**

**Attorney for Plaintiffs**

**TABLE OF CONTENTS**       **PAGES**

**TABLE OF AUTHORITIES**       iii, iv, v, vi, vii, viii

**CRITERIA OF DECISION**       1

**POINT I**       3

**THE PLAINTIFFS ARE NOT BARRED TO BRING THIS ACTION
BECAUSE OF LACK PRIVITY CONTRACT OR
THIRD PARTY BENEFICIARY STATUS**

   a) **Introduction**       3

   b) **Voidness of a post-closing date transfer to a securitized trust**       6

**POINT II**       10

**THE ALLEGATIONS IN THE COMPLAINT
HAVE A FOUNDATION ON NEW YORK STATUTORY
AND CASE LAW**

**APPLICABLE LAW**       10

**Four essential elements for valid trust property must be present**       13

**POINT III**       14

**THE ALLEGATIONS OF THE COMPLAINT ARE NOT DENIED BY THE
CASE LAW THAT DENY BORROWERS ON THE BASIS OF LACK OF PRIVITY
TO THE PSA THE STANDING TO CHALLENGE THE TRUSTEE STANDING**

**POINT IV**       19

**DEFENDANTS RELIANCE ON THE "TOO BROAD BRUSH PAINTING
" OF PRIVITY OF CONTRACT GLIDE OVER TO A SUBJECT MATTER
THAT IS FACT RIDDEN AND NOT WITHIN THE SUBJECT MATTER
ALLOWED ON A F.R.C.P. 12 (b) (6) MOTION**

**POINT V**       21

**THE COMPLAINT MEETS ALL OF THE REQUIREMENTS
FOR A RICO ACTION**

i

Introduction.                                                                          21

   a)  The complaint meets all the elements on the RICO elements under        21
      18 U.S.C. § 1962 (c)

Enterprise                                                                             21

PATTERNS OF RACKETEERING                                                                23

CONSPIRACY                                                                             24

THE THIRD COUNT OF PLAINTIFFS SHOULD NOT BE DISMISSED                                  27

POINT VI                                                                               27

THE COURT SHOULD DENY ANY SEVERANCE
OF THE PLAINTIFFS' ACTION

CONCLUSION                                                                             28

AFFIRMATION OF SERVICE                                                                 29,30

TABLE OF AUTHORITIES            PAGES

AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.,     11
2008 N.Y. Slip Op. 5766

Alexander v. Fulton City,     28
207 F. 3d 1303 (11th Cir. 2000)

Anderson     15,16

Anderson v. Countrywide Home Loans,     15
2011 U.S. Dist. Lexis 45966,2011 WL 1627945 ( D. Minn. Apr. 8, 2011)

Atlas Pile Driving Co. Dicon Fin. Co.,     21,22
886 F. 2d 986, 995 n.7 (8th Cir. 1989)

Audobon     16

Bank of America National Association vs. Bassman,     18
FBT, LLC, 366 Ill. Dec 936, 981 N.E. 2d 1, 8 ( Ill. Ct. App. 2012)

Banks vs. Wolk,     24
918F  2d 418, 423 (3d Cir. 1990)

Bell Atlantic Corp. v. Twombly,     1
127 S. Ct. 1955, 1964-65 (2007)

Bell Atlantic,     1
127 S. Ct. Supra at 1974

Bell Atlantic, Supra at 1964-65     1

Boone vs. Carlsbard Bancorporation, Inc.,     23
972 F. 2d 1545, 1556 (10th Cir. 1992)

Borrionuevo v. Chase Bank, N.A.,     9
885 F. Supp. 2d 964 (N.D. Cal 2012)

Brown v. Spehr,     11
180 N.Y. 201 (N.Y. 1904)

Calderon v. Bank of America, N.A.     18
( W.D. Tex. April 23, 2013) , No SA: 12-CV-00121-DAE)
___ F. Supp. 2d ____ ____ (2013 WL 1741951 at P 12);)

Conlin v. Mortgage Electronic Registration Systems, Inc.,     5
714 3d 355, 361 (6th Cir. 2013)

Corley v. Rosewood, Center, Inc. of Peoria,     26
142 F. 3 d 1041, 1050-1051(CA 7 1988)

Crowe v. Henry,     2
43 F. 3d 198, 203 (5th Cir. 1995)

Culhane Supra     9, 15

Culhane v. Aurora Loan Services of Nebraska,     5
708 F. 3d 282, 291 (1st Cir. 2013)

Culhane, Supra,     9
708 F 3d at P. 290

Curley v. Perry,     2
246 F. 3d 1278, 1281-82 (10th Cir. 2001)

Davis vs. Monroe City Bd. Of Educa.,     1
526 U.S. 629, 633,  119 S ct 1661, 1666 (1999)

DirecTV Inc. vs. Letto,     27
467 F. 3d 842,844 (3d Cir. 2001)

Erobobo, Supra     9

Firestone v. Firestone,     1
76 F. 3d 1208, 1211 ( D.C. Cir. 1996)

Fleet Credit Corp.  vs. Sion,     23
893F2d 441 (1st Cir. 1990)

Gilbert v. Chase Home Finance, LLC,     5
2013 WL 2318890 (E.D. Cal. May 28, 2013)

Gloski v. Bank of America National Association,     5, 9
218 Cal. App. 4th 1079, 13 Cal. PP Serv. 8751, (2013)

Greene v. Home Loans Services, Inc.,     16
2010 U.S Dist. Lexis 99222 (2010)

Groski v. New Hampshire Dept. of Corr., ........................................................ 2
290 F. 3d 466, 473 (1st Cir 2002)

Guerrero v. Greenpoint Mortgage Funding, Inc., ............................................... 5
403 Fed. Appx. 154, 156 (9th Cir. 2010)

H. J. Inc. vs. NorthWestern Bell Telephone Co, ................................................ 23
492 U.S. 229, 239 (1989)

H.J. Inc. Supra at 240 ...................................................................................... 23

Harlow v. Fitzgerald, ....................................................................................... 2
457 U.S. 800, 102 S. ct. 2727 (1982)

Hazard v. Chase National Bank, ...................................................................... 11,12
159 Misc. 57, 287 N.Y.S. 541 (Sup Ct 1936)
aff'd 257 A.D. 950 14 N.Y.S. 147 (1st Dept.)
aff'd 282 N.Y. 652 cert. de. 311 U.S. 708 (1940)

Huckabay v. Moore, ........................................................................................ 2
142 F 3d 233, 240-41

In Audobon v. Bank of New York Mellon, ........................................................ 15
2011 U.S. Dist. Lexis 138408 (U.S. Hawaii 2011)

In Greene, ...................................................................................................... 16

In Long, .......................................................................................................... 17

In Melissa Juarez, .......................................................................................... 17

In Re Correia, ................................................................................................. 16, 17
45 B.R. 319 ( 1st Cir. BAP, June 30, 2011)

Johnston vs. Willbourn, .................................................................................. 23
760 F. Supp. 578, 588, 589 N. 16 (S.D. Miss. 1991)

Kermani v. Liberty Mut. Ins. Co., ..................................................................... 11
4 A.D. 2d 603 (N.Y. App. Div. 3d Depart. 1957)

Kowal v. MCI Comms., ..................................................................................... 2
16 F. 3d 1271 n. 3 ( D.C. Cir. 1994)

Long v. OneWest Bank, FSB, ............................................................................ 16
2011 U.S. Dist. Lexis 94675 (U.S. Dist. Illinois 2011)

Melissa Juarez vs. U.S. Bank National Association, _____ 16
2011 U.S. Dist. Lexis 128087 (U.S. Dist. Mass. 2011)

Midwest Grinding Co. v. Ipitz, _____ 23
976 F. 2d 1016 (7th Cir. 1992)

Mills v. Polar Molecular, Corp., _____ 1
12 F. 3d 1996, 1170, 1175 (2d Cir. 1993)

Morlee Corp. v. Manufacturer Trust Co., _____ 11
172 N.E. 2d 280 (N.Y. 1961)

Nietske v. Williams, _____ 1
490 U.S. 319, 327, 109 S. ct 1827, 1832 (1989)

Peterson Price _____ 15, 16

Peterson-Price v. United States Bank Nat'l Assn', _____ 15
2010 U.S. Dist. Lexis 43355

Phillipsen v. Emigrant Inds. Saving Bank, _____ 12
86 N.Y.S. 2nd 133 ( N.Y. Sup. Ct. 1948)

RE IBJ Schroeder Bank and Trust Co., _____ 12
271 A.D. 2d 322 (N.Y. App. Div. 1st Dept. 2000)

Reinagel v. Deutsche Bank National Co, _____ 9
F. 3d  (5th Cir. 2013)

Riegel v. Central Hanover Bank and Trust Co., _____ 11
266 App. Div. 586.

Riegel v. Hanover Bank Trust Co., _____ 12
266 App. Div. 586

Scheuer vs. Rhoes, _____ 2
416 U.S. 232,236 94 S. ct 1683 (1974)

Schmid v. Magnetic Head Corp., _____ 11
468 NYS 2d 649 ( NY App. Div. 1983)

Semerenko v. Cendant Corp, _____ 2
223 F.3d 165, 173 (3rd Cir. 2000)

Seville Indus. Mach Corp. v. Southmost Mach. Corp,                              26
742F 2d 786, 792 n. 8 (3d Cir. 1984)

Shearing v. E.F. Hutton Group, Inc.,                                           21
885 F. 2d 1162, 116566 (3d. Cir. 1989)

Sussman v. Sussman,                                                            12
61 A.D, 2d 838 ( N.Y. App. Div. 2d Dept, 1978)

Swierkeiewicz v. Sorema,                                                        1
534 U.S. 506, 512, 122 S. ct. 992, 998 (2002)

Swistock v. Jones,                                                             24
884 F. 2d 755, 758 (3d Cir 1989)

Tellabs, Inc. vs. Makor Issues & Rights LTD,                                    1
127 S. ct. 2499, 2509 (2007)

Torres Ramirez v. Bermudez Garcia,                                             2
 898 F. 2d 224, 226-227 (1st Cir. 1990)

Tuchman v. DSC Comms,                                                          2
14 F. 3d 1061, 1068 (5th Cir. 1994)

UniQuality, Inc. vs. Infotronx, Inc,                                           23
974 F. 2d 918 (7th Cir. 1992)

United States vs. Bledsae,                                                     22
674 D. 2d 647 (8th Cir. 1982)

Vincent v. Putnam,                                                         12, 14
248 N.Y. 76 ( N.Y. 1928)

Vincent v. Rix,                                                               12
248 N.Y. 76 as cited in Gruen v. Gruen, 68 N.Y. 2d 48 (N.Y. 1986)

Walker v. South Cent Bell Tel Co,                                             2
904 D 2d 275, 277 (5th Cir. 1990).

Watts v. Florida Int'l Univ. ,                                                 1
495 F. 3d 1289, 1295, (11th Cir. 2007)

Wells Fargo Bank NA v. Erobobo,                                               9
39 Misc. 3d 1220 (A) 2013 WL 18 3179 Slip. Op. (Apr. 2013) page 8

**Wells Fargo Bank, N.A. v. Farmer,** _____ **12**
2008 N.Y. Slip OP. 51133 U 6 (N.Y. Sup. Ct 2008)


**United States Code**

18 U.S.C. §1962(c)   _____ **21**
18 U.S.C. 1961 (4)   _____ **21**
18 U.S.C. Section 1961 (4)_____ **22**
18 U.S.C. Section 1961 (f)_____ **22**
§ 1962 (c)_____ **25**


**Federal Rules of Civil Procedure**
F.R.C.P. 20 _____ **27,28**
F.R.C.P. 11 (b) (3) _____ **26**
F.R.C.P. 12 (b)(6) _____ **1,3, 20**
F.R.C.P. 8 (a)_____ **1**
F.R.C.P. 11 (b) _____ **1**
F.R.C.P. 9(b)_____ **26**
F.R.C.P. 9(f)_____ **2**
F.R.C.P. 21_____ **27**


**Uniform Commercial Code**
U.C.C. § 3-301   _____ **4**


**New York Estate Property Law**
NY EPTL Section 7-2.4 _____ **8,9,13, 18**
NY EPTL Section 7-1.8 _____ **11**
NY EPTL Section 7-21(c) _____ **11**


**Publications**

Collins vs. Morgan Stanley Dean Winter and 5 Wright &Miller § 1357_____ **2**

## CRITERIA OF DECISION

We submit to the court, as argued below, that the complaint sufficiently suggests that the right to relief as alleged in the complaint is plausible and above mere speculation. **Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)**. Plaintiffs emphasize to the court that the court must assume all material facts contained in the complaint to be true and resolve all inferences in plaintiffs favor, and that **F.R.C.P. 12 (b)(6)** motions in light of the liberal pleading policies of Federal Courts are disfavored.

In ruling on an **F.R.C.P. 12(b)(6)** motion, the court cannot decide disputed facts issues rather the court must assume that all material facts contained in the complaint are true. **Tellabs, Inc. vs. Makor Issues & Rights LTD, 127 S. ct. 2499, 2509 (2007); Bell Atlantic Corp. v. Twombly, 127 S. ct 1955, 1965 (2007); Davis vs. Monroe City Bd. Of Educa., 526 U.S. 629, 633, 119 S ct 1661, 1666 (1999); Nietske v. Williams, 490 U.S. 319, 327, 109 S. ct 1827, 1832 (1989)**. The rule **F.R.C.P 12 (b) (6)** does not permit dismissal based on Judge's disbelief of the complaints factual allegations under the Fair Notice Pleading Standard of **F.R.C.P. 8 (a).**

Although, a plaintiff does not need to plead detailed facts in the complaint, the plaintiff must present factual allegations stating a claim for relief that is plausible (i.e. the factual allegations must at least suggest the elements of the claim. **Bell Atlantic, 127 S. ct. Supra at 1974; Watts v. Florida Int'l Univ. , 495 F. 3d 1289, 1295, (11th Cir. 2007)**. The allegations when assumed true must be enough to show that the plaintiff's right to relief is more than mere speculations. **Bell Atlantic, Supra at 1964-65**. The factual allegations can be based on information and belief. **F.R.C.P. 11 (b). Swierkeiewicz v. Sorema, 534 U.S. 506, 512, 122 S. ct. 992, 998 (2002), Firestone v. Firestone, 76 F. 3d 1208, 1211 ( D.C. Cir. 1996); Mills v. Polar Molecular, Corp., 12 F. 3d 1996, 1170, 1175 (2d Cir. 1993)**. Federal Securities fraud and allegations of time and place must be alleged with specificity, as well as, allegations of

1

fraud. **F.R.C.P. 9(f),** <u>**Huckabay v. Moore,**</u> **142 F 3d 233, 240-41.**  A claim may be adequate despite elements of omission if the elements or element can be fairly inferred from the pleadings as a whole.  <u>**Torres Ramirez v. Bermudez Garcia,**</u> **898 F. 2d 224, 226-227 (1st Cir. 1990),** <u>**Walker v. South Cent Bell Tel Co,**</u> **904 D 2d 275, 277 (5th Cir. 1990).**

A complaint containing allegations on information and belief is appropriate when matters are in the knowledge of the defendants but not the plaintiff. <u>**Kowal v. MCI Comms.,**</u> **16 F. 3d 1271 n. 3 ( D.C. Cir. 1994);** <u>**Tuchman v. DSC Comms,**</u> **14 F. 3d 1061, 1068 (5th Cir. 1994).**

A motion to dismiss for failure to state a claim upon which relief could be granted admits the fact alleged in the complaint but challenges the plaintiffs' right to any relief based on those facts.  <u>**Crowe v. Henry,**</u> **43 F. 3d 198, 203 (5th Cir. 1995).**  The issue is not whether the plaintiffs would ultimately prevail but whether the plaintiffs can offer evidence to support their claims.  <u>**Semerenko v. Cendant Corp,**</u> **223 F.3d 165, 173 (3rd Cir. 2000),** also <u>**Scheuer vs. Rhoes,**</u> **416 U.S. 232,236 94 S. ct 1683 (1974)** overruled on other grounds, <u>**Harlow v. Fitzgerald,**</u> **457 U.S. 800, 102 S. ct. 2727 (1982);** <u>**Groski v. New Hampshire Dept. of Corr.,**</u> **290 F. 3d 466, 473 (1st Cir 2002).**  Motions for relief for failure to state a claim upon relief could be granted are viewed with disfavor and seldom granted. See **Collins vs. Morgan Stanley Dean Winter and 5 Wright &Miller § 1357.**

The defendants in the present case have no requested dismissal without leave to amend, however, even if they had, generally a court will not dismiss without leave to amend on the first challenge to the complaint. <u>**Curley v. Perry,**</u> **246 F. 3d 1278, 1281-82 (10th Cir. 2001).** Plaintiffs however request that if the court grants the motion of defendants in whole or in part that plaintiffs be given leave to amend and file an amended complaint curing the defects.

Under the above criteria as shown below the motion of defendants should be denied.

2

## POINT I

## THE PLAINTIFFS ARE NOT BARRED TO BRING THIS ACTION BECAUSE OF LACK PRIVITY CONTRACT OR THIRD PARTY BENEFICIARY STATUS TO THE PSA

### Introduction

a)   Central to the motion of the defendants is their mistaken perception that plaintiffs allegations in the complaint are barred because of lack of privity of contract since they are not a signatory, each to the respective pooling service agreement by which the defendants trustees claimed authority to collect payments and that the plaintiffs are not intended third party beneficiaries to the PSA. Although as will be argued in the second point below, the plaintiffs may qualify as intended third parties beneficiaries, this is not the central basis of the relevance of the PSA to the claims of the plaintiffs. In addition, whenever plaintiffs are expressed or implied third party beneficiaries to the PSA is a fact laden issue not amenable to a **F.R.C.P. 12 (b) (6)** treatment.

The claims of the plaintiffs are that the defendants caused injuries and damages to the plaintiffs not through the **mundane** and rightfully collection of payments but by the fraudulent representations that the defendants had a right to such collections and that the defendants had a right to seek foreclosure because they had standing to seek foreclosure and to foreclose.

The claims of the plaintiffs have a component that the defendants each had no standing to seek the foreclosure and that fraudulently they made representations to the courts where the foreclosure was instituted that they had such standing. Invariably in each of the cases, there was an assignment coming from an entity not involved in the chain of assignment evidenced by the

3

PSA nor involved in the chain of transfers that the PSA describes as the proper channel for the transfer of the note. The issue is not solely of the content and language of the PSA but to unauthorize acts that under the law made the trustee not to be the holder of the note at the time of the foreclosure institution. This is one of the component of the standing issue because under the **U.C.C. § 3-301** only the holder of the note can enforce the note or a non-holder with the right of a holder.  If the defendant each was not a valid holder of the note or was not a non-holder with the right of a holder at the time of the filing of the actions for foreclosure then each of the defendants had no standing to bring the particular action.  The violations of the provisions of the PSA do not have value solely as to the claim a contract action because of the violation of the express language of the PSA but it has also the evidentiary value that the defendants failed to follow the expressed chain of the transfer of the trust funds under the PSA and that at the time of the filing of the complaints for foreclosure they were not in legal possession of the notes and the interim assignments of the mortgages.   The violations of the PSA have therefore a first value as evidence that the defendants had not standing when they instituted foreclosure and eventually foreclosed on the properties of the plaintiffs.

Moreover the same reasoning is applicable to the evidentiary bases for lack of standing under the PSA, lack of ownership (non beneficiary) and authority to collect payments by enforcing the note.  The present RICO action has frauds as one or several of the predicate acts of the defendants. These frauds were not only claimed to be committed against plaintiffs directly but against plaintiffs through the instrumentalities of the courts and the servicers of the loans and those others stated in the complaint.

Second, the claims that a foreclosure was wrongful because it was initiated  by a non-holder of the mortgage or Deed of Trust as (1) the foreclosing party lacking standing to foreclose

(2) or the chain of title relied upon by the foreclosing party containing breaks or defects have been a theory recognized by the courts throughout the country. See **Glaski v. Bank of America National Association, 218 Cal. App. 4th 1079, 13 Cal. PP Serv. 8751, (2013); Guerrero v. Greenpoint Mortgage Funding, Inc., 403 Fed. Appx. 154, 156 (9th Cir. 2010).** One of the basis raised in the complaint is that the assignment relied by the defendants were ineffective as a matter of law.  When a borrower asserts an assignment was ineffective, a question arises about the borrower's standing to challenge the assignments (note and mortgage or Deed of Trust) an assignment to which the borrower was not a party. Nevertheless, **Conlin v. Mortgage Electronic Registration Systems, Inc., 714 3d 355, 361 (6th Cir. 2013)** held that a third party can only challenge an assignment if the that challenges would render the assignment absolutely invalid or ineffective or void, also under Massachusetts law, mortgagor has standing to challenge a mortgage assignment as invalid, ineffective or void. **Culhane v. Aurora Loan Services of Nebraska, 708 F. 3d 282, 291 (1st Cir. 2013).** The same has been held in **Gilbert v. Chase Home Finance, LLC, 2013 WL 2318890 (E.D. Cal. May 28, 2013).**  It is clear that a borrower (plaintiffs in the present case) can challenge an assignment of his or her note, mortgage or Deed of Trust if the defect asserted would void the assignment. The First Circuit in **Culhane v. Aurora Loan Services of Nebraska, Supra 708 F. 3d at P 290** stated that courts adopting the position that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to, or third party beneficiary of, the assignment agreement were applying "paint with too broad a brush "instead the courts should proceed to the question whether the assignment was void.

5

**b)  Voidness of a post-closing date transfer to a securitized trust**

The plaintiffs each claims in the complaint that for each loan each particular defendant claimed "ownership, possession of the note, mortgage and assignments (page 10 of the Amended complaint Paragraphs # 13). The complaint also alleges that the defendants fraudulently claimed they had a right of ownership of the loan, had validly assigned mortgages, and were in possession of the mortgage and properly negotiable notes, duly indorsed by the time prescribed in the documents known as the Pooling Service Agreement for delivery of the trust funds and also by the time each filed a foreclosure action against the correspondent listed plaintiffs and on the basis of this claim collected payments and enforced the mortgage payments wrongfully foreclosing on their properties. (Page 11 Paragraph 14)

The complaint further alleges that on the basis of these false hoods the defendants collected payments from plaintiffs of the mortgages and enforced the mortgage payments wrongfully foreclosing on the corresponding listed plaintiff "(Page 11 paragraphs 14). It also states that "these actions were made through a securitization process" (Page 11 Paragraph 15). It identifies the pooling service agreement (" PSA") as the instrument that created the trust ( Page  11 Paragraph 16), the Governing law for the creation of the trust, the date of the closing of the trust as per the PSA and also identified the date of the actual formation of the trust, the law creating and governing the actions of the trust and governing what actions of the trustee that are valid and what actions are invalid.  It states also what is the date of delivery of the trust funds (notes properly indorsed, all interim assignments) which is also the date of closing (See Page 11, Paragraph 17).

The allegations are of fraud perpetrated by the formation of trusts that were never validly formed under New York Trust Law and by actions taken as trustees of these invalidly formed

trusts that were void under New York Trust Law for the collection of payments for which the trustees were not entitled to receive and collect since the trustee could not be the trustee of a non-existent trust and could not accept the loan on behalf of the trust through void actions under New York law.

The question is not if plaintiff's have a right to enforce the right of others under the PSA for which it is argued they are not signatory parties or it is also argued that they are not intended third-party beneficiaries, but if the trustees have a right to enforce loans on behalf of a trust that was never validly formed under New York trust law and if the trustee could do that by actions that are declared void under New York trust law. This law is not only applicable only because the PSA in each case states, as alleged in the complaint, that the governing law is New York law but because the said trust were allegedly formed under New York law. They are alleged to be New York trusts. The allegation is that the fraud on plaintiffs (and also on the courts) was committed by the defendants, trustees as trustee that invalidly claimed possession or ownership of the loan because those actions of possession and assignments were void under New York law.

The PSA it is alleged in the complaint has a dual aspect, one as the corporate indenture of the trust (the documents that create the trust, and governed its final formation and rules the acts that can be valid or not by the trustee, as well it establishes how and when the trust is finally formed), the other if the contractual obligations of the parties to it including the beneficiaries of the trust.

The allegations in the complaint are that each of the trusts were created and purportedly formed under New York law. The allegations are that the trust formation document, the PSA establishes a closing date after which the trust may no longer accept loans (see paragraphs 17, 18, 19, 20, 21, 22 of the complaint) the allegations are that the trust funds were never transferred to the trust on the date of the formation of the trust, the date of the closing of the trust.

Under New York trust law, NY EPTL 7-2.4 (New York Estates property law section 7-2.4) "
if the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance,
or other acts of the trustee in contravention of the trust, except as authorized by this article by
any other provision of the law, is void". The allegations are that in each of the trust of each
trustee the PSA establishes a closing date after which the trust cannot accept, loans that is to say
loan documents, notes, mortgages, deed of trust, and assignments. This is a statutory provision
not a clause of the PSA.

The defendants state in their brief that there are a series of cases that in some federal courts
have rejected the post-closing date theory of invalidity on the grounds that the borrower does not
have standing to challenge the invalidity of an assignment between two other parties and that the
borrower cannot claim any defense or seek any redress for violation of the PSA because of lack
of privity.  We submit to the court that those cases are not persuasive because they do not
address that a borrower can challenge an assignment (transfer of note, mortgage, deed of trust)
that is void as shown in the cases above cited and they do not address that New York Law does
not state that the requirements of EPTL Section 7-2.4 can only be raised by the signatories of the
PSA. In fact the statutory purpose of Section 7-2.4 is to protect trust beneficiaries from the
unauthorized actions of the trustee"(Turano, Practice Commentaries, McKinney Cosnolidated
Laws of New York , Book 17B, EPTL Section 7-2.4). The fact that the purpose was to protect
the beneficiaries do not means that the only one that could enforce or raise that violation is
someone that is in privity of contract, it encompasses that any act of the trustee that is in
contravention with the corporate indenture is ipso facto void as a matter of law.

This literal interpretation of EPTL section 7-2.4 is supported by the fact that the beneficiaries
of the trust will be protected from the potential adverse effects of the trust losing its status as a

8

Real Estate Mortgage Investment Conduit (" REMIC") and being subject to taxation under the Internal Revenue Code. New York courts have interpreted **EPTL section 7-2.4** strictly," under New York trust law, every sale, conveyance or other act of the trustee in contravention of the trust is void. **EPTL section 7-2.4.** Therefore, the acceptance of the note and mortgage by the trustee after the date of the trust was closed is void. **Wells Fargo Bank NA v. Erobobo, 39 Misc. 3d 1220 (A) 2013 WL 18 3179 Slip. Op. (Apr. 2013) page 8.**

The above New York decision is in accord with the majority holdings that a borrower can challenge an assignment of his own or her note and deed of trust (mortgage) if the assignment is void. **Reinagel v. Deutsche Bank National Co, (5th Cir. 2013)____ F 3d ___[2013 WL 3480207 Page 3].** As stated above the cases adopting the position of the defendants "paint with too broad a brush" **Culhane, Supra, 708 F 3d at P. 290.**

**New York EPTL Section 7-2.4** strictly applied as **Erobobo, Supra** held is one of the bases of the plaintiffs' allegations in the complaint for wrongful foreclosure. " The claim that a foreclosure was conducted by or at the direction of a nonholder of the loan rights often arises where the mortgage has been securitized (Buchwalter, Cause of Action in Tort for Wrongful Foreclosure of Residential Mortgage, 52 Causes of Action Second (2012) 119, 149 [Section 11 addresses foreclosure by a nonholder rights". Note 11 of **Glaski vs. Bank of America, National Association, 218 Cal. App. 4th 1079 (2013).** The cause of action for wrongful foreclosure has been recognized as a valid cause of action by courts throughout the country. **Borrionuevo v. Chase Bank, N.A., 885 F. Supp. 2d 964 (N.D.Cal 2012).** Plaintiffs here have alleged the specific facts of the claim invoking them to show that the foreclosure of the plaintiff was not carried out by a nonholder of rights to the loan.

## POINT II

## THE ALLEGATIONS IN THE COMPLAINT HAVE A FOUNDATION ON NEW YORK STATUTORY AND CASE LAW

### APPLICABLE LAW

An express life trust is governed by New York Law ( EPTL and New York Case law ) and it requires the property, the intention to create a trust and the beneficiaries. The PSA designated the property that was to be the trust fund and that upon delivery to the designated trustee would had created the trust. What is to be property or not of the trust is governed by the PSA. It is not a matter of the defendant not having privity to enforce the PSA.   What matter is if under the applicable controlling law that governs the creation and performance of this trust and trustee, the trust and trustee were real parties in interest ("standing") at the time that the foreclosure action was filed.  Plaintiffs' allegations are that they were not and that the trustees and the trusts remain not being real parties in interest when they sought and/or obtained and therefore lacked standing to bring the foreclosure actions. Also that the defendants knew of these defects when they sought to foreclose and when they through their servicer extracted payments from the plaintiffs.

In New York, the mere intention to create a trust without delivery of the complete trust assets to the trustee has not legal consequences; it does not create a trust, the trust is formed when the transfer of assets is completed.   Plaintiff alleges that in each one of the present cases loans, there was not delivery of the trust funds, the loans (note, mortgage, Deed of Trust and assignments) on or before the closing date of the trust.  If the trust names a third party as a trustee the property, titled assets, documents evidencing ownership of the property must be formally and actually transferred to the trustee by the date and manner prescribed by the

corporate indenture of the trust (the PSA).  A transfer is not effected by mere recital of assignment, but the written assignments and all documents of property must be actually delivered to the trustee (**New York EPTL §7-1.8).**  As stated above the property has to pass to the trustee with the intention to pass legal title thereto to it as trustee. **Brown v. Spehr, 180 N.Y. 201 ( N.Y. 1904).**  There is no valid trust until actual delivery of the assets to the trust. **Riegel v. Central Hanover Bank and Trust Co., 266 App. Div. 586.**  There is no trust if the trust fails to acquire the property. **Kermani v. Liberty Mut. Ins. Co., 4 A.D. 2d 603 (N.Y. App. Div. 3d Depart. 1957).**  Under New York Law (EPTL) there is not legal title to the property if there is no actual delivery as per the instrument creating the trust( PSA). The property in the instant cases is the trust fund.  This is a matter of Trust Law on what constitutes property of the trust.  This is not a matter of privity of contract; it is a matter of trust law about what is required to create the trust.

The delivery of the property must be done to the trust as designated in the instrument creating the Trust ( **EPTL §7.21(c)**).  The PSA prescribed the specific method of transfer.  This is not subject to variation because it is set in the instrument.  No court can ignore and create contractual remedies that were omitted in the PSA. **Schmid v. Magnetic Head Corp., 468 NYS 2d 649 ( NY App. Div. 1983**).  However, the court can enforce the prescription of the PSA. **Morlee Corp. v. Manufacturer Trust Co., 172 N.E. 2d 280 ( N.Y. 1961).**

What is valid delivery to the trustee is governed by the corporate business indenture, (the PSA).  The corporate business indenture is the document that creates the trust by prescribing the manner, time and formation of the trust and governs the actions of the trustee, because the trustee in the present case is a corporate trustee.  Under a corporate indenture the right of the trustee is not governed by fiduciary relationship but by the terms of the agreement (the PSA). **AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 2008 N.Y. Slip Op. 5766; Hazard v.**

11

**Chase National Bank,** 159 Misc. 57, 287  N.Y.S. 541 (Sup Ct 1936) aff'd 257 A.D. 950 14

N.Y.S. 147 (1st Dept.) aff'd 282 N.Y. 652 cert. de. 311 U.S. 708 (1940).** The duties and power

of the trustee are set by the agreement (PSA).  In **RE IBJ Schroeder Bank and Trust Co.,** 271

A.D. 2d 322 (N.Y. App. Div. 1st Dept. 2000) and governed by the NYEPTL.**

The delivery of the trust funds under the PSA requires under the corporate indenture

provisions of New York Trust Law strict compliance with the mandatory terms of the trust

indenture, because the property has to be delivered as prescribed and the securities ascertained if

not no right to beneficiaries arise.  **Wells Fargo Bank, N.A. v. Farmer,** 2008 N.Y. Slip OP.

51133 U 6 (N.Y. Sup. Ct 2008) and no right in the trust arises without consideration paid.

The delivery necessary to consummate a transfer must be perfected as to the nature of the

property. There must be actual surrender and control and authority over the things surrendered

must be intended.  It is the consummation that completes the transaction, intention alone is not

sufficient.  **Vincent v. Putnam,** 248 N.Y. 76 ( N.Y. 1928).  The Consummation Act of the

delivery of all the property and documents is necessary.  **Phillipsen v. Emigrant Inds. Saving**

**Bank,** 86 N.Y.S. 2nd 133 ( N.Y. Sup. Ct.  1948).

The delivery rule requires that the delivery necessary to consummate a gift must be

perfected as to the nature of the property and the circumstances permit.  **Vincent v. Rix,** 248

N.Y. 76 as cited in **Gruen v. Gruen,** 68 N.Y. 2d 48 ( N.Y. 1986). See also **Sussman v.**

**Sussman,** 61 A.D, 2d 838 ( N.Y. App. Div. 2d Dept, 1978); **Riegel v. Hanover Bank Trust**

**Co.,** 266 App. Div. 586 there must be a change of dominion over the thing intended to be given.

**Vincent v. Putnam,** 248  N.Y. 76, 82-84 ( N.Y. 1928). The corporate indenture is strictly

construed under New York law.

**Four essential elements for valid trust property must be present:**

1) A designated beneficiary

2) A designated trustee

3) A fund or property, sufficiently designated or identified to enable title to pass to the trustee

4) Actual delivery of the fund or property or the legal assignments.

The allegations in the present case, are that the transfers did not comply with the PSA since the assignments of the mortgage occurred after the date of the closing of the trusts. The allegations in the complaint are that the transfer of the notes and the assignment of mortgages and/or Deeds of Trust were both unauthorized, were void because the act of accepting them out of the time prescribed by the PSA was in violation of NY EPTL and therefore void as a matter of law.

Plaintiffs allege that the transfers were not made by the prescribed path of the PSA agreement nor by the prescribed time of the PSA and all of this was done after the closing date of the trust. Any act of the trustee contrary to the trust agreement ( PSA ) is void (**NY EPTL Section 7-2.4**). It is NY EPTL, the law of the State of New York **§ 7-2.4** that prescribes the nullity of an assignment in violation of the PSA. This is not a matter that is subject to the arguments that defendant has no standing to raise PSA violation because lack of privity to the PSA, because the claim to possession and the right of the trustee to bring the foreclosure action and to collect payments is predicated on the trustees being the holders of the notes and the trustee of the trust based on the authority conferred upon the trustee by the document that designate him as trustee and that prescribed the formation of the trust and which rule the actions of the trustees are governed by New York State EPTL law.

13

The PSA is not simply an agreement but the document that states the conditions in which the trust is created under New York Trust Law.  The trust is created only when the full property of the trust is delivered as per the language of the corporate indenture.

In order to prove injury in fact to foreclose the defendants had to prove that they had legal standing by showing that they were real parties in interest in each foreclosure.  In order to collect payments they had to have had the rights of a valid loan holder and/or owner. If the defendants cannot prove that the loan became an asset of the trust, under New York law and the PSA, they can never be able to prove standing.

The allegations in the complaint are that they had no standing at the time that they instituted the foreclosure action and that they had no right to collect payments under the loans, as well as, to extract from the plaintiffs agreements for modifications for which they had no authority since the trust were not formed and the possession of the trust funds was void by operation of New York Trust Law.

New York delivery rule requires complete and specific dominium by the closing date of the trust.  Delivery must be such that it vests the donee with control and dominion over the property and absolutely divest the donor of its dominion and control and the delivery must be to the donee with intent to vest the property in the donee, equity will not help and incomplete delivery. **Vincent v. Putnam**, 248 N.Y. 76 ( N.Y. 1928).

## POINT III

### THE ALLEGATIONS OF THE COMPLAINT ARE NOT DENIED BY THE CASE LAW THAT DENY BORROWERS ON THE BASIS OF LACK OF PRIVITY TO THE PSA THE STANDING TO CHALLENGE THE TRUSTEE STANDING

First, anyone is mistaken in asserting that the position of the plaintiffs in respect to the PSA is negated by the holding of some courts that the borrowers of a mortgage loan that had been securitized have no privity of contract under the PSA to enforce the PSA or to raise PSA

violations as a defense to a foreclosure action. The Standing allegations of the plaintiffs are not brought solely under a claim of being a party to the PSA. This is not the position of the defendant. The position of the defendant is that the PSA is the business indenture of a trust, under New York Applicable Trust Law. The Law that the creation of the defendants chose to govern the corporate indenture. The trusts are New York Trust and the trustees are the trustees of New York Trust governed by New York Trust Law. New York Trust Law governs what acts of the trustees are valid or void and that the PSA prescribes the creation of the trust because it describes what property is the property of the trust, how this property is to be received, when the property become property of the trust and the conditions for that property to be property of the trust. It is not under the contract law that the above are ruled but under New York Trust Law. The trustees alleged rights arose out of it being the trustees holding or acceptance of the loan documents, and authority to act as the trustee is either allowed by New York Trust law or found void under the said law. Moreover, it is alleged in the complaint that the trust as per the PSA's are ruled by New York Law by a choice of the parties that constituted the trusts.

An examination of some of the main cases for the denial of standing to raise violation shows the defect of non comprehension of New York Trust Law and/or the too broad painting with too broad brush that **Culhane Supra** described.

**In Audobon v. Bank of New York Mellon, 2011 U.S. Dist. Lexis 138408 (U.S. Hawaii 2011)** the court citing **Anderson v. Countrywide Home Loans, 2011 U.S. Dist. Lexis 45966,2011 WL 1627945 ( D. Minn. Apr. 8, 2011), Anderson,** in turn was based on **Peterson-Price v. United States Bank Nat'l Assn', 2010 U.S. Dist. Lexis 43355,** denied the PSA defenses of the borrower on grounds inapplicable to the present case, since **Audobon** was based on **Anderson,** and this on **Peterson-Price,** I will start with **Peterson Price**. In this case the

15

validity of the assignment under Minnesota Law that requires recordation was in question, the court found the assignment valid under the Law of Minnesota and denied the PSA argument because the offered of the argument did not give any legal authority for the argument that the contravention of the PSA made the assignment invalid and the court used the privity argument under contract law to deny that borrower could bring the PSA violation as ground to invalidate the assignment. **Anderson,** applied the same argument finding independent validity of the assignment, and the privity argument against the PSA argument of the borrower, again, there was no analysis of the grounds to challenge an assignment that is void by operation of law.

**Audobon** followed **Peterson-Price** and **Anderson,** the court found an independent validity on the side of the assignor for the assignment because the plaintiff in that case did not cite any authority for the proposition that an assignment made in contravention with the PSA is void.

I list here other illustrative cases of the line denying standing on the basis of privity. **Greene v. Home Loans Services, Inc., 2010 U.S Dist. Lexis 99222 (2010); Long v. OneWest Bank, FSB, 2011 U.S. Dist. Lexis 94675 (U.S. Dist. Illinois 2011); Melissa Juarez vs. U.S. Bank National Association, 2011 U.S. Dist. Lexis 128087 (U.S. Dist. Mass. 2011); In Re Correia, 45 B.R. 319 ( 1st Cir. BAP, June 30, 2011) .**

I will refer to the cases listed above that are usually offered against the proposition of defendant in respect to the impact of the PSA on the issue of standing by using solely the first name in the case cited.

**In Greene,** the court found that the matter of the standing in respect to the PSA was not adequately pleaded and again that the borrower had no standing based on the privity of contract to challenge a breach by the Trustee of the PSA.  There was no analysis of the impact of New York Law because the borrower offered none.

**In Long,** first this was a Deed of Trust jurisdiction, and the language of the Deed of Trust gave MERS the power to assign and sell (power of sale), again there was therefore, validity of assignment from the side of the assignor, and citing Anderson, it denied standing to challenge the assignment to the trust because the borrower were not parties to the PSA without any analysis of New York Law because there was not any analysis offered by the borrower.   It clearly stated that the borrower (plaintiff in that case) had not cited any precedent holding that an assignment is invalid because it conflicts with a PSA.   Moreover, since the borrower did not plead that MERS failed to physically deliver the note and borrower did not show any law only speculations about possible fabrication of the note, the contention was denied.

**In Melissa Juarez,** this is a Massachusetts case, Massachusetts is a Title Mortgage Jurisdiction.  In Massachusetts the mortgage give title to the mortgagee that reverts when note is fully paid. The mortgage under Massachusetts law gave the mortgagee under a power of sale the power to foreclose and to assign.  Therefore, **In Melissa Juarez,** the assignment from the side of the assignor was valid, and the court citing **In Re Correia, 45 B. R. 319 (1ˢᵗ Cir. BAP June 30, 2011**), also a decision based on contractual privity, stated that the PSA did not provide independent basis for mortgagors to collaterally contest since they were no party in interest to the PSA.  The court should read all of these cases with extra care. There was not in any of the cases any analysis of the impact of New York law both New York EPTL nor New York case law on trust.  There was no consideration of the impact of the New York finality Rule on the creation, formation and existence of the trust, nor any analysis of the impact of the fact that in each trust in New York created by the PSA, the PSA is the corporate indenture and the obligations under the corporate indenture under New York Law are strictly construed.  A survey throughout the nation cases that analyses that under New York law, the acts of the trustee that are ultra vires are only

voidable not void, to wit **Calderon v. Bank of America, N.A.** ( W.D. Tex. April 23, 2013) , No

SA: 12-CV-00121-DAE)___ F. Supp. 2d ____ ____ (2013 WL 1741951 at P 12); **Bank of**

**America National Association vs. Bassman,** FBT, LLC, 366 Ill. Dec 936, 981 N.E. 2d 1, 8 (

**Ill. Ct. App. 2012),** however, these are New York courts and moreover each of this case do not

make the distinction that the duties of the trustees under New York law are different than the

merely fiduciary duty, duty of other types of trust but that under New York  law in a business

trust, the corporate indenture is strictly construed as to the application and interpretation of it and

that **EPTL 7-2.4** is therefore literally applied to corporate indenture trust. As to the other cases in

some of the Federal Districts Courts they lack persuasive power because they do not address the

principle that a borrower may challenge an assignment that is void and they do not apply New

York trust law.  In each of these cases, the PSA is looked in isolation of N.Y. Trust Law or only

a side glance made at it.

**POINT IV**

**DEFENDANTS RELIANCE ON THE "TOO BROAD BRUSH PAINTING " OF PRIVITY OF CONTRACT GLIDE OVER TO A SUBJECT MATTER THAT IS FACT RIDDEN AND NOT WITHIN THE SUBJECT MATTER ALLOWED ON A F.R.C.P. 12 (b) (6) MOTION**

Plaintiffs do not bring this point as to bring material outside the four corners of the amended complaint but to illustrate that even the argument about the PSA violations not been allowed to be raised by plaintiffs because of the rulings that the borrowers have not standing to do this since they are no parties to the PSA contract, nor third party beneficiary, it also presuppose that every PSA is similar or better, equal, that all of the exhibits are the same in each PSA, that there are no provisions in the PSA that would give rise to third party beneficiary status whether express or implied, and that provisions in the PSA and in any ancillary documents made with the PSA and made part of it by reference do not create such rights. The cases cited by the defendants did not analyzed the issue of privity and third-party beneficiaries whether express or implied and merely glided over the fact of the obligations to pay the loan without looking to the language of the PSA and ancillary documents to base their holdings.

And whether the plaintiffs here are or are not third-party beneficiaries or not are a factual issue and whether they were intended third party beneficiaries or not depend on the facts of the case and the totality of the documents of the securitization. By way of illustration, was there a master service agreement or service agreement contemplated in the PSA and provided by it in which the duty of collection of payment also gave the service of maintaining an escrow account and the payment of the amount of insurances, hazard and liability, by the servicer on behalf of the trust seeking to protect the property from hazard and giving a benefit of protection to the beneficiary of the securitization process and to the plaintiffs. Also the collection and payment of

19

municipal taxes by the servicer of its agents could be prescribed by the PSA giving protection to both beneficiaries of the securitization process (the securities purchasers) and the plaintiffs from a strict tax sale foreclosure action. If the servicer duties under the PSA encompasses those services and the property is destroyed by hazard would not the plaintiffs have a right under the obligations delineated as the duties of the servicer in the PSA or in any consequent service agreement of the servicer with the trustee to bring an action under the PSA and ancillary documents. We do not know, the defendants do not know, but third party beneficiary status this is in fact legal question that is fraught with factual issues.

What are the facts that can make up plaintiffs to be an intending implied third party beneficiary in each particular case?. The fact is that none of the cases cited by defendants considered these issues stated here and in prior points listed above.

The third party beneficiary issue does not belong to the **F.R.C.P. 12 (b) (6)** motion.

For example the intent to benefit test to decide if a person is a third party beneficiary has proven to be very difficult to apply on a consistent manner, with courts using the **Restatement (Second) of Contracts Section 302** but been constantly forced to look to the prior **Restatement Section 133** or a mixture of the two. There is a gamut of factual considerations that the court cannot entertain in a motion under **F.R.C.P. 12 (b)(6)**  each particular case must be judged on the facts and therefore, each plaintiff in the present case is or is not a third party beneficiary to the PSA is an issue that is full of issues of material fact that cannot be resolved by an **F.R.C.P. 12 (b)(6)** motion.

20

## POINT V

## THE COMPLAINT MEETS ALL OF THE REQUIREMENTS

## FOR A RICO ACTION

**Introduction.**

The court should look to the tremendous effort to make the complaint as concise as possible without failing to cover the RICO pleadings requirements.  The plaintiffs submit to the court that the RICO elements had been written in the pleadings with specificity.

**a)  The complaint meets all the elements on the RICO elements under 18 U. S. C. §1962(c)**

The four primary elements under **Section 1962 (c)** which makes it unlawful to conduct or participate directly or indirectly in the conduct of an enterprise through a pattern of racketeering activity are:

1)  conduct

2)  of an enterprise

3)  through a pattern

4)  of a racketeering activity

**Enterprise**

The enterprise was the association in fact created by defendants for the carrying the racketeering activity described above.   RICO provides that an enterprise may be composed of any union or group of individuals associated in fact even if it is not legal entity. **18 U.S.C. 1961 (4).**   While some have argued that this definition limits associations in fact to group of individuals, that argument has found little support in the decisions.  **Atlas Pile Driving Co. vs. Dicon Fin. Co., 886 F. 2d 986, 995 n.7 (8th Cir. 1989), Shearing v. E.F. Hutton Group, Inc., 885 F. 2d 1162, 116566 (3d. Cir. 1989).**

The allegations in the complaint are that the trustees as trustee of this securitization trusts were not acting conducting the normal affairs of their institutions but engaged in the acts stated in the complaint through the instrumentalities of its servicers, associated corporations and even using the courts to bring to fruition the racketeering scheme and purpose of each defendant. **Atlas Pile Driving Co. v. Dicon Fin., 886 F. 2d 986 (1989).** We submit to the court that the enterprise requirement has been met as defined in **18 U.S.C. Section 1961 (4).** See complaint paragraphs 37, 38, 39, 40 and 41, and as defined in **18 U.S.C. Section 1961 (f)**, the enterprise was continuously in the wrongful conduction of the racketeering since the PSA closing date for each defendant as listed in **Exhibit 1** to the complaint, to the date of the foreclosure, the foreclosure dates were also given in **Exhibit 7** to the complaint. The earliest foreclosure was on May 29, 2007 all of the others were from February 20, 2008 to February 1, 2012. With the exception of the May 29 2007 all of the wrongful foreclosure occurred on dates for the start running of limitation for the sale 2007 case that fall outside the four year statute of limitation should be extended. However, the four years statute of limitation without full discovery should not be the basis for a dismissal of the case, the sale 2007 case because of tolling provisions applicable to cases of concealment. The court should see the allegations in light of the impact of P 11 through P 34 of the complaint on each of the counts in the complaint.

The three characteristics of an enterprise are pleaded in the complaint:

1) Continuity of both structure and personality;

2) Ascertainable structure of the structure inherent in the pattern of racketeering. **United States vs. Bledsoe, 674 D. 2d 647 (8th Cir. 1982).**

## PATTERN OF RACKETEERING

This is also correctly pleaded. The fraud, wrongful foreclosure, forced modifications, collection of payments to which the defendants were not entitled, etc and the sum total of the amounts of damages for each of the plaintiffs was listed in **Exhibit 1** at page 8 of the exhibits to the complaint for as early as 2005 through the date of foreclosure, or modification, or through the dates in which any of the plaintiffs was still subject to litigation seeking to foreclose on them. There is described in the complaint a pattern of the racketeering acts showing that they are related. In fact it is the same pattern in each case and the extent in which it poses the threat of continued criminal activity.  **H. J. Inc. vs. NorthWestern Bell Telephone Co, 492 U.S. 229, 239 (1989).** The acts of the defendants clearly had similar purposes, results, participants, victims and method of commission and they are otherwise interrelated by distinguishing characteristic and are not isolated events. **H.J. Inc. Supra at 240.** This conduct was not closed ended conduct lasting 12 months or less and on the contrary the same threat type of criminal conduct continues, since the fraudulently enforcement of securitized loans is still ongoing. **Midwest Grinding Co. v. Ipitz, 976 F. 2d 1016 (7th Cir. 1992). UniQuality, Inc. vs. Infotronx, Inc, 974 F. 2d 918 (7th Cir. 1992); Johnston vs. Willbourn, 760 F. Supp. 578, 588, 589 N. 16 (S.D. Miss. 1991).** Moreover, the present case involved multiple victims and is not a case of a single individual. **Boone vs. Carlsbard Bancorporation, Inc., 972 F. 2d 1545, 1556 (10th Cir. 1992).**

The plaintiffs' complaint meets the multifactor test, in respect to the nature, number, variety of predicate acts, duration of time span, number of victims, the number of separate transactions involving unlawful conduct and the presence of distinct injury. Although these factors are not universally applied, See **Fleet Credit Corp. vs. Sion, 893 F. 2d 441 (1st Cir.**

**1990)** although courts utilize them. See **Banks vs. Wolk, 918 F. 2d 418, 423 (3d Cir. 1990).** Under any of the test the complaint pass muster.

The defendants' brief is wrong in stating that there are not distinct injuries pleaded apparently they missed Paragraph 42 of the complaint with the exhibits stated therein and made part of the complaint.

In respect to the arguments about tranches being paid, this was made on information and belief, and such things are under the exclusive knowledge of the defendants. The allegations on information and belief are permissible. (See section of this brief on the criteria for decision).

Clearly the enterprise created and the persons are two separate entities, the enterprise is the Association in fact, the persons that formed the enterprise. The individual defendants are the persons engaged in the formation of the racketeering association in fact.   The enterprise goes further as stated in the complaint it comprises the servicers, and the enterprise uses the listed instrumentalities including the use of recourse to the courts to pursue the racketeering activities. The complaint is explicit about that.

It is clear stated in the complaint that this constitutes an structure that uses the securitization process to enforce loans for which the defendants had no standing and that uses fraud to foreclose or otherwise enforce loans that they had no right to enforce.

Plaintiffs remind the court that "where plaintiffs have the opportunity to have pattern allegations threshed out in discovery" there should not be a dismissal. **Swistock v. Jones, 884 F. 2d 755, 758 (3d Cir 1989).**

## CONSPIRACY

There is no circular allegations in the complaint as argued by defendants, the complaint alleges the existence of an agreement between defendants to commit the racketeering predicate

24

acts, each and every one of the defendant committed the same acts of seeking to enforce and enforcing the acts described in the complaint, all used the same of racketeering and to the same methodology to effect the foreclosures, obtain payment from the loans, imposed modifications, and subjected the plaintiffs to the same process. All of the defendants were part of the same pattern of racketeering activity that is described in the complaint. The agreement between the parties is pled; all used similar instrumentalities, the servicers, and the fraudulent use of the court to enforce claims for which they had no right to pursue. What the defendants called circular reasoning omits  Paragraph 51 of the complaint where it stated clearly that the defendants agreed to commit the predicated acts in violation of **§ 1962 (c)**. Again the factual make up cannot be isolated from the preceding description of the nature of the actions in light of the securitization process on the mechanism to collect payments for which they had no rights and in light of the wrongful foreclosures conducted, as well as in light of the modifications of loans imposed.

What the defendants argued to be circular reasoning is the statement of above bad acts in light of the securitization, but alleged in detail.  The acts that were the subject matter of the conspiracy.  An agreement that constitutes a conspiracy does not have to be proven by formal statements of agreement but by concert and accord shown by actions, methodology and the process used to injure the plaintiffs.

Here the accord in the acts and the agreement are plead with a description of the acts agreed, it is also almost copy picture the acts of the coconspirators in accord, as described in the facts common to all counts section of the complaint.

The complaint pled with sufficient specificity such acts that show the agreement to join the conspiracy, agreement to commit the predicate acts, and the knowledge that those acts were

25

predicate acts, as well as, the agreement to the pattern of racketeering. See **Seville Indus. Mach Corp. v. Southmost Mach. Corp,** 742F 2d 786, 792 n. 8 (3d Cir. 1984).

There were no allegations that were not based on the securitization process and on what transpired in each case. To say that there was not criminal basis plead is not reading the complaint.

The complaint states that the defendants are engaged in foreclosures without having standing and fraudulently represented to plaintiffs and to the courts that they had standing. The defendants concealed the lack of standing and lack of ownership to the plaintiffs and to the courts, they concealed that they had not valid possession of the loans (nor right to possess the loans, while representing that they did, and through interstate commerce, caused their servicers to carry the fraud as well other agents of the defendants such as attorneys. Even under standards of the Second Circuit cases cited by the defendants there is sufficient detail in the pleadings to meet the RICO requirements.

Moreover the defendants ignored the flexibility provided by **F.R.C.P. 11 (b) (3)** allowing less exacting pleadings or amendment when the pleadings are based on evidence reasonable anticipated to be obtained after further investigation and discovery. **Corley v. Rosewood, Center, Inc. of Peoria,** 142 F. 3 d 1041, 1050-1051(CA 7 1988).

**Corley Supra,** relaxed the particularity requirements under **F.R.C.P. 9 (b)** where a RICO plaintiffs lack access to all facts necessary to detail a claim beyond that already shown in the complaint.

26

## THE THIRD COUNT OF PLAINTIFFS SHOULD NOT BE DISMISSED

There is nothing that precludes the court from entertaining the court seeking injunctive relief. Injunctive relief is the seeking of a command from the court to stop irreparable damages that is imminent or immediate.

The defendants have pled imminent injury and damage to some of the plaintiffs. The defendants are seeking through the same racketeering activity. The substantive rights they have are those of the protection by their real property from the consequences and the actions of the racketeering scheme.

## POINT VI

## THE COURT SHOULD DENY ANY SEVERANCE

## OF THE PLAINTIFFS' ACTION

Misjoinder occurs when there is no common question of law, fact or when the events that give rise do not stem from the same transaction. **DirecTV Inc. vs. Letto**, **467 F. 3d 842,844 (3d Cir. 2001)**. There are common question of law and of fact in the present case and therefore a motion under **F.R.C.P. 21** should be denied.

The present action has the commonality of questions of facts stemming from the process of securitization and the fraud committed against the plaintiffs by the defendants, they also stem from the same commonality of facts, the complaint claims that all of the parties were subjected to the same racketeering actions, by a concerted effort in pursuing the committing the predicated acts. Joinder under **F.R.C.P. 20** can join plaintiffs if they assert any right of relief jointly, severally or in the alternative with respect to or arising out of the same transaction or occurrences or a series of transactions and occurrences. Here we have a claim under RICO that the defendants constituted an association in fact, an enterprise, that engaged in a pattern of

27

racketeering by which fraudulently they committed wrongful foreclosures, extorted sums of money from the plaintiffs, through loan modification and by false representations to the plaintiffs and to the courts.  The complaint claims that defendants concerted and agreed to a conspiracy that committed the RICO alleged acts continuously, including the collection of mortgage payments for which they had no right. The facts and issues are common, and so is the law.

In addition, the defendants under the same **F.R.C.P. 20** rule may be joined as defendants if any right to relief is asserted, in one action jointly, severally or in the alternative with respect to or arising from the same transaction or occurrence or series of occurrences and a question of law or fact common to all defendants will arise in the action.

A transaction is a word of multiple meaning it may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship. Accordingly all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction and occurrence. **Alexander v. Fulton City, 207 F. 3d 1303 (11th Cir. 2000).** It is clear that the motion to sever should be denied.

## CONCLUSION

For all of the above reasons, the defendants' motion should be denied.

Respectfully submitted,

Tomas Espinosa, Esq.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

**TOMAS ESPINOSA, ESQ.**
**8324 Kennedy Blvd.**
**North Bergen, NJ 07047**
**Tel: (201)223-1803/Fax: (201) 223-1893**
**Attorney for Plaintiffs**

| | |
|---|---|
| Anh Nguyet Tran et als. | :Civil Action No. **13-cv-580** |
| | : |
| Plaintiffs | : |
| | : |
| Vs. | : |
| | : |
| Bank of New York now known as Bank of | : |
| New York Mellon by Merger and/or acquisition et als. | : **AFFIRMATION OF SERVICE** |
| | : |
| Defendants | : |
| | : |
| | : |

I, Tomas Espinosa, Esq. being duly sworn depose and say:

That deponent is not a party to the action, is over 18 years of age and resides in North Bergen, Hudson County, New Jersey.  That on September 5, 2013 deponent served the within Opposition to Defendants' Motion To Dismiss on the following attorney (s) for DEFENDANTS via email and ECF System as follows:

Eric R. Sherman sherman.eric@dorsey.com, christensen.renee@dorsey.com, garcia.sara@dorsey.com
Eric R. Sherman, Esq.
Dorsey & Whitney, LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498

Christopher G. Karagheuzoff(CK-1122)
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
(212) 415-9200
karagheuzoff.chris@dorsey.com

29

Christine Cesare
Scott H. Kaiser
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000
cbcesare@bryancave.com
scott.kaiser@bryancave.com

Nafiz Cekirge
BRYAN CAVE LLP
120 Broadway, Suite 300
Los Angeles, CA 90401
(310) 576-2100
nafiz.cekirge@bryancave.com

Bernard J. Garbutt III
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000
bgarbutt@morganlewis.com

Thomas J. Sullivan (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
tsullivan@morganlewis.com

Allison J. Schoenthal
Lisa J. Fried
Brian S. McGrath
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
allison.schoenthal@hoganlovells.com
lisa.fried@hoganlovells.com
brian.mcgrath@hoganlovells.com

Sworn to before me on
September 5, 2013
North Bergen, New Jersey

**Tomas Espinosa, Esq.**
**8324 Kennedy Blvd.**
**North Bergen, NJ 07047**
**Tel (201) 223-1803 /Fax (201) 223-1893**

30