**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                                                         Case No. 13-cv-580 (RPP)
ANH NGUYET TRAN, et al.,

                              Plaintiffs,

        -v-

BANK OF NEW YORK, et al.,

                              Defendants.

-----------------------------------------------------------------X



**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**
**OR, IN THE ALTERNATIVE, TO SEVER PLAINTIFFS**

Table of Contents

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.     Plaintiffs Lack Standing To Maintain Claims Based Upon Alleged Breaches Of Pooling And Servicing Agreements To Which Plaintiffs Are Not Parties And Of Which Plaintiffs Are Not Third-Party Beneficiaries. ..........................................................1

     A.     The New York Estates, Powers and Trusts Law Does Not Confer Standing On Plaintiffs To Challenge Noncompliance With A PSA......................................2

          1.     Plaintiffs Lack Standing To Challenge The Trustee Defendants' Actions As Trustees. ....................................................................................3

          2.     New York Law Does Not Void The Conveyance Of A Mortgage Loan Even If Contrary To Terms Contained In A PSA.............................5

     B.     Plaintiffs Have Not Pleaded That They Are Third-Party Beneficiaries Of The PSAs Governing The Trusts That Hold Their Loans. ....................................7

II.     Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted. ............................8

     A.     Plaintiffs Fail Sufficiently To Allege A RICO Violation By Any Defendant.................................................................................................................8

          1.     Plaintiffs Fail To Allege Sufficient Facts To Demonstrate That They Have RICO Standing. ...............................................................................8

          2.     Plaintiffs Fail To Allege That Any Defendant Engaged In Any Act Of Racketeering, Let Alone A Pattern Of Racketeering Activity. .............9

          3.     Plaintiffs Fail To Allege A Coherent Theory As To What Defendant "Conducted" What "Enterprise." ...............................................10

     B.     Plaintiffs Fail To Allege A Conspiracy To Commit A RICO Violation. ..............11

     C.     Plaintiffs' RICO Claims Are Time Barred. ........................................................12

III.     Plaintiffs Still Fail To Identify A Substantive Claim To Support Their Prayer For Injunctive Relief..............................................................................................................13

IV.     Plaintiffs Should Not Be Granted Leave To Amend. .....................................................13

V.     Plaintiffs Fail To Show That They Meet The Requirements For Permissive Joinder..............................................................................................................................14

CONCLUSION..................................................................................................................15

## INTRODUCTION

Plaintiffs fail to demonstrate that they have standing to assert racketeering claims based solely upon alleged non-compliance with provisions of contracts (*i.e.*, the PSAs) to which they are neither parties nor third-party beneficiaries.  Contrary to Plaintiffs' assertions, New York law does not invalidate the conveyances of their mortgage loans to the Trustee Defendants, and Plaintiffs do not plead, as they must, that the PSAs clearly evidence an intent to benefit them.

But even if Plaintiffs could show standing, which they cannot, Plaintiffs fail also to show that they have satisfied their burden to plead with particularity the circumstances of the alleged fraud underlying their racketeering claims.  Plaintiffs' complaint also fails to explain how any Defendant participated in the conduct of the affairs of any racketeering enterprise and to identify any economic injury resulting from alleged racketeering.  What the Opposition does establish is that Plaintiffs' damages theory takes their RICO Act claims outside the applicable statute of limitations.  Because Plaintiffs fail to explain how these fatal defects can be cured, any amendment would be futile and the Amended Complaint should be dismissed with prejudice.

If the Court determines not to dismiss the Amended Complaint, the Court should nevertheless grant Defendants' motion to sever.  Plaintiffs' Opposition does not dispute that their claims arose at different times from different loans with different lenders in different places. Plaintiffs accordingly fail to meet the requirements for permissive joinder.

## ARGUMENT

**I.      Plaintiffs Lack Standing To Maintain Claims Based Upon Alleged Breaches Of Pooling And Servicing Agreements To Which Plaintiffs Are Not Parties And Of Which Plaintiffs Are Not Third-Party Beneficiaries.**

Plaintiffs' Opposition concedes that the Amended Complaint is founded upon the allegation that the parties to the PSAs did not strictly comply with the contractual provisions contained within those agreements.  *See* Opp'n at 7 ("Plaintiffs allege that the transfers were not

made by the prescribed path of the PSA agreement nor by the prescribed time of the PSA . . . .").

At the same time, Plaintiffs do not attempt to distinguish any of the cases Defendants rely upon

holding that a plaintiff-borrower lacks standing to bring any claim that is based upon alleged

noncompliance with a PSA.  *See* Defs.' Initial Mem. at 6-7 & n.5; *see also Reinagel v. Deutsche

Bank Nat'l Trust Co.*, 722 F.3d 700, 708 (5th Cir. 2013) (dismissing claim alleging failure to

record assignment before PSA closing date).  Because Plaintiffs' claims rely solely on alleged

noncompliance with the PSAs, their Amended Complaint must be dismissed.

Seeking to avoid this result, Plaintiffs advance a pair of arguments.  First, Plaintiffs argue

that the alleged non-compliance with the PSAs renders the conveyances of their mortgage loans

to the Trustee Defendants void (not merely voidable) as a matter of New York law, and that they

therefore have standing to challenge those allegedly void conveyances.  Second, Plaintiffs argue

that the Amended Complaint raises a "fact laden issue" as to whether they are third-party

beneficiaries of the PSAs that cannot be resolved on a motion to dismiss.  For the reasons given

below, each of Plaintiffs' arguments is equally wrong, and Plaintiffs' Amended Complaint

should be dismissed for lack of standing.

A.    **The New York Estates, Powers and Trusts Law Does Not Confer Standing
       On Plaintiffs To Challenge Noncompliance With A PSA.**

According to Plaintiffs, the conveyances of their mortgage loans to the Trustee

Defendants are "void" because the mortgage notes, mortgages, and other documents pertaining

to their individual loans were allegedly delivered to the Trustee Defendants after the "closing

date" established by each applicable Defs.[1]  *See* Opp'n at 10 ("Plaintiff alleges that in each one

---

[1]   For example, section 2.01 of the PSA applicable to Plaintiff Tran requires, with respect to
each underlying "Mortgage Loan," delivery of "the [endorsed] original Mortgage Note, "the
original Mortgage," "an assignment . . . of the Mortgage in blank or to the Trustee," and
other documents.  *See* Defs.' Initial Mem. at 8 n.6.

of the present cases loans, there was not delivery of . . . the loans (note, mortgage, Deed of Trust and assignments) on or before the closing date of the trust.").  Pointing to section 7-2.4 of the New York Estates, Powers & Trusts Law ("EPTL")[2] and cases holding that third parties have standing to challenge assignments that are "void," as opposed to merely "voidable," Plaintiffs conclude that they have standing to assert claims based upon the Trustee Defendants' alleged lack ownership of Plaintiffs' mortgage loans.  *See* Opp'n at 9.

Plaintiffs' argument is unavailing for at least two reasons.  First, under New York law, persons that are not beneficiaries of a trust lack standing to challenge the actions of the trustee. Second, assuming *arguendo* that the conveyances of Plaintiffs' mortgage loans to the Trustee Defendants somehow contravened the PSAs and EPTL § 7-2.4, the conveyances would be merely "voidable," not void, and Plaintiffs would therefore lack standing to challenge them.

1.      **Plaintiffs Lack Standing To Challenge The Trustee Defendants' Actions As Trustees.**

Plaintiffs are correct that the EPTL is intended to protect trust *beneficiaries*.  Opp'n at 8. Accordingly, New York courts consistently hold that litigants who are not beneficiaries of a trust lack standing to enforce that trust's terms or to challenge the actions of the trustee.  *See In re Estate of McManus*, 47 N.Y.2d 717, 718, 417 N.Y.S.2d 55, 56 (1979) (those "not beneficially interested" in a trust lack standing to challenge trustee's actions); *Cashman v. Petrie*, 14 N.Y.2d 426, 430-31, 252 N.Y.S.2d 447, 449-50 (1964) (non-beneficiary could not sue to enforce a trust); *Naversen v. Gaillard*, 38 A.D.3d 509, 509, 831 N.Y.S.2d 258, 259 (3d Dep't 2007) (same).

Plaintiffs cite only one New York decision, from a state trial court, to support their argument that they have standing to assert affirmative claims based upon alleged noncompliance

---

[2]     Section 7-2.4 of the EPTL provides:  "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

with a PSA.  *See* Opp'n at 9 (citing *Wells Fargo Bank, N.A. v. Erobobo*, No. 31648/09, 39 Misc. 3d 1220(A), 2013 WL 1831799 (Sup. Ct. Kings Cty. Apr. 29, 2013)).[3]  However, the decision in *Erobobo* does not stand for that proposition.  There, the mortgagor was not a plaintiff asserting a cause of action based upon alleged noncompliance with a PSA; he was a defendant in a foreclosure action asserting an affirmative defense.  The plaintiff RMBS trustee moved for summary judgment and thus bore the burden of proving that there were no questions of fact that it indeed owned the mortgagor's note and mortgage.  Here, Defendants bear no such burden.  *See Williams v. Rickard*, No. 09-cv-00535, 2011 WL 2116995, at *5 (D. Haw. May 25, 2011) ("The banks need not establish that they are the legal owners of [plaintiff's] loans before they defend against [plaintiff's] claims.  'Standing' is a plaintiff's requirement . . . .").

In any event, *Erobobo* is contrary to other, more well-reasoned New York cases that espouse the overwhelming majority view.  *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013); *Karamath v. U.S. Bank, N.A.*, 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012); *Cimerring v. Merrill Lynch Mortg. Investors, Inc.*, No. 8727/11, 2012 WL 2332358, at *9 (Sup. Ct. N.Y. Cty. June 13, 2012).  Likewise, *Glaski v. Bank of America, National Ass'n*, 160 Cal. Rptr. 3d 449 (Cal. Ct. App. 2013), upon which Plaintiffs also seek to rely, has not deterred California federal courts from continuing to rule that mortgagors may not mount challenges to the assignments of their mortgages.  *See Dick v. Am. Home Mortg. Servicing, Inc.*, 2013 WL 5299180, at *2-*3 (E.D. Cal. Sept. 18, 2013) (*Glaski* notwithstanding, plaintiff-mortgagors suffered no injury from allegedly invalid assignment because they could not "show that the allegedly improper assignment interfered with the borrower's ability to pay or that

---

[3]   *Erobobo* is now on appeal to the Appellate Division, Second Dep't, Appeal No. 2013-06986.

the original lender would not have foreclosed under the circumstances").[4]  Accordingly,

Plaintiffs lack standing to assert an affirmative claim against Defendants based upon alleged

noncompliance with the alleged requirements of the PSAs.

> ### 2.      New York Law Does Not Void The Conveyance Of A Mortgage Loan Even If Contrary To Terms Contained In A PSA.

*Some* courts have held that, although a third party generally lacks standing to challenge

the validity of an assignment, that party may raise a defense to an assignment if that defense

renders the assignment void.  Plaintiffs attempt to shoehorn themselves into this exception to the

standing requirement by arguing that alleged noncompliance with the PSAs renders the

conveyances of their mortgage loans under the PSAs void under EPTL § 7-2.4.[5]

Initially, EPTL § 7-2.4 only renders void certain "acts" of a trustee.  Plaintiffs have not

alleged or argued (nor could they) that any Trustee Defendant actively committed any act in

contravention of the PSAs or EPTL § 7-2.4.  *See Deutsche Bank Nat'l Trust Co. v. Stafiej*, 2013

WL 1103903, at *4 (N.D. Ill. Mar. 15, 2013).  But even assuming that a Trustee Defendant acted

in contravention of the terms of a PSA, such act would be voidable, rather than void, and would

not provide Plaintiffs with an exception to the standing requirement.

It is horn-book law that a void contract is "invalid or unlawful from its inception," while

a voidable contract "is one where one or more of the parties have the power, by the manifestation

of an election to do so, to avoid the legal relations created by the contract."  17A C.J.S.

*Contracts* § 169.  New York courts have thus held that *ultra vires* acts by trustees are merely

---

4    The decision in *Glaski* is also flawed for reasons explained below.
5    Plaintiffs' Opposition fails to explain why the Trustee Defendants' ownership of their
     mortgage loans would depend upon timely delivery of individual notes and mortgages.  The
     PSAs themselves operate "as of the Closing Date" to "assign, transfer, sell, set over and
     otherwise convey to the Trustee[s] . . . all the right, title and interest . . . in and to the
     Mortgage Loans . . ." and provide that the delivery of individual loan documents merely
     occurs "*[i]n connection with such transfer and assignment . . . .*"  Defs.' Initial Mem. at 8 n.6
     (§ 2.01 of PSA applicable to Plaintiff Tran) (emphasis added).

voidable because they can be ratified by the trust's beneficiaries.  *See, e.g.*, *Mooney v. Madden*, 193 A.D.2d 933, 933-34, 597 N.Y.S.2d 775, 776 (3d Dep't 1993) ( "[a] trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement"); *Washburn v. Rainer*, 149 A.D. 800, 803, 134 N.Y.S. 301, 302 (2d Dep't 1912) (same); *Hine v. Huntington*, 118 A.D. 585, 592, 103 N.Y.S. 535, 540 (4th Dep't 1907) ("the cestui que trust is at perfect liberty to elect to approve an unauthorized investment and enjoy its profits, or to reject it at his option"); 106 N.Y. Jur. 2d *Trusts* § 431 (2013) (beneficiary may ratify trustee's act).

Courts that have conducted any meaningful analysis of the EPTL issue raised by Plaintiffs have concluded that non-compliance with the terms of a PSA would, at most, render an assignment voidable, not void, and that mortgagors lack standing to bring claims based upon merely voidable assignments.  After conducting an exhaustive examination of New York law, including the EPTL, the Illinois Court of Appeals in *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 8 (Ill. Ct. App. 2012), found that, because a beneficiary of a trust can ratify a trustee's *ultra vires* act, that act is merely voidable rather than void.  *Id.*  Moreover, the *Bassman* court found that the trust beneficiaries need not actually ratify the act to preclude third parties from bringing a claim—such parties "have standing to attack the transaction only if it is void, regardless of whether it was in fact ratified."  *Id.* at 9.

More recently, in reliance upon the New York authorities cited above, another court deciding this very issue held:

> New York courts have made clear that a beneficiary can ratify a trustee's ultra vires act . . . .  Because a trustee's unauthorized transactions may be ratified, such transactions are *voidable*—not void.  Thus, even if it is true that the Notes were transferred to the trust in violation of the trust's terms, that transaction could be ratified by the beneficiaries of the trust and is therefore merely voidable . . . . Accordingly, since even an after-the-deadline transfer of the Notes to the trust

would merely be voidable at the option of the trust's beneficiaries, Plaintiff has no standing to challenge that assignment.

*Omrazeti v. Aurora Bank, FSB*, 2013 WL 3242520, at *6-*7 (W.D. Tex. June 25, 2013).

Several other courts have recently undertaken this analysis and have held that EPTL § 7-2.4 does not provide plaintiff-mortgagors with the standing they otherwise lack to assert a claim based upon alleged noncompliance with a PSA.[6]   One such case analyzed *Erobobo* and explicitly rejected its analysis.  *See Koufos v. U.S. Bank, N.A.*, 2012 WL 4444971, at *3 n.4 (D. Mass. July 1, 2013) ("The heft of *Erobobo's* statutory analysis was considered and rejected by the detailed analysis of this issue in *Bassman*.").  Accordingly, EPTL § 7-2.4 does not provide Plaintiffs with standing they otherwise lack.

**B.    Plaintiffs Have Not Pleaded That They Are Third-Party Beneficiaries Of The PSAs Governing The Trusts That Hold Their Loans.**

Plaintiffs also contend that whether they are third-party beneficiaries of the PSAs, and thus have standing to assert claims based upon breaches of the PSAs, is a "fact laden issue" that cannot be determined within the context of Defendants' motion to dismiss.  What Plaintiffs ignore, however, is that they bear the burden affirmatively to plead facts showing their intended third-party beneficiary status.  *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *Rajamin*, 2013 WL 1285160, at *3.  Plaintiffs fail to point to any such allegations in

---

6    *See Green v. Bank of Am. N.A.*, 2013 WL 2417916, at *2 (S.D. Tex. June 4, 2013); *Sigaran v. US Bank Nat'l Ass'n*, 2013 WL 2368336, at *3 (S.D. Tex. May 29, 2013); *Calderon v. Bank of Am. N.A.*, ___ F. Supp. 2d. ___, 2013 WL 1741951, at *11-*12 (W.D. Tex. Apr. 23, 2013) (collecting cases); *Stafiej*, 2013 WL 1103903, at *3 ("After reviewing the pertinent New York authority on section 7-2.4, this court agrees with the analysis in *Bassman* and holds that section 7-2.4 only makes an act by the [RMBS] trustee in contravention to the trust instrument voidable, not void."); *Karamath*, 2012 WL 4327613, at *7.

For the reasons explained in all of these cases, the holding in *Glaski* was incorrect under New York law in that, under that law, non-beneficiaries lack standing to bring a claim to enforce a trust's terms or challenge the actions of a trustee, and, in any event, acts in contravention of a trust's terms are merely voidable at the election of the beneficiaries, not void.

the Amended Complaint.  *See* Opp'n at 19-20.  Moreover, Plaintiffs can only attain status as

intended third-party beneficiaries if the PSAs themselves "'clearly evidence[] an intent to permit

enforcement'" by them.  *Premium Mortg.*, 583 F.3d at 108 (alteration in original) (quoting

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985)).

Plaintiffs point to no such provisions, even though the PSAs are public documents.  *See* Defs.'

Initial Mem. at 8 n.6.  While Plaintiffs' Opposition speculates that the PSAs may place duties

upon mortgage loan servicers to safeguard Plaintiffs' properties from such perils as physical

destruction and tax forfeiture, Opp'n at 19-20, Plaintiffs fail to explain how such provisions

would be intended to benefit them, as opposed to the RMBS certificateholders, for whom

Plaintiffs' properties constitute collateral securing their investment.  Accordingly, Plaintiffs have

failed to allege that they are third-party beneficiaries of the PSAs, and they therefore lack

standing to bring claims based on alleged breaches of those agreements.

## II.   Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted.

### A.   Plaintiffs Fail Sufficiently To Allege A RICO Violation By Any Defendant.

Even if Plaintiffs had standing to assert claims based upon alleged breaches of the PSAs,

Plaintiffs still must adequately allege a substantive claim for relief.  Because Plaintiffs fail in

their attempt to allege a claim under the RICO Act, the Amended Complaint must be dismissed.

#### 1.   Plaintiffs Fail To Allege Sufficient Facts To Demonstrate That They Have RICO Standing.

Apart from stating that their injuries are pleaded in "Paragraph 42 of the complaint with

the exhibits stated therein," Opp'n at 24, Plaintiffs' Opposition wholly ignores their failure to

plead facts demonstrating that they have standing under RICO.  "To demonstrate standing [under

RICO], a plaintiff must plead, at a minimum, (1) the defendant's violation of § 1962, (2) an

injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's

violation." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (internal quotation marks omitted); Defs.' Initial Mem. at 10-13.  RICO standing is "a more rigorous matter than standing under Article III."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).  In Paragraph 42 of the Amended Complaint, Plaintiffs allege that they suffered injury when Defendants "collected sums and payments" on Plaintiffs' mortgage loans or when some Plaintiffs lost "the value of [their] house[s], sold in sheriff or other auctions sales after foreclosure."  But Plaintiffs still do not contend that Defendants collected payments that were any greater than what their original lenders would have collected in the absence of the alleged racketeering activity.  *See* Defs.' Initial Mem. at 11.  And Plaintiffs still do not explain how anything other than their own failures to make timely payments caused any injury arising from loan modification, shortsale, or foreclosure.  *See id.* at 11-12.  Plaintiffs simply fail to identify any economic injury whatsoever that they have suffered *because of* the conveyances of their mortgage loans to the Trustee Defendants.  Accordingly, Plaintiffs lack standing under RICO, and the First and Second Counts of the Amended Complaint must be dismissed.

> **2.    Plaintiffs Fail To Allege That Any Defendant Engaged In Any Act Of Racketeering, Let Alone A Pattern Of Racketeering Activity.**

Plaintiffs' Opposition fails to account for the absence from the Amended Complaint of *any* alleged facts demonstrating that *any* Defendant committed *any* RICO predicate act. Although Plaintiffs' Opposition acknowledges their burden to plead mail and wire fraud with particularity, Opp'n at 1-2, Plaintiffs fail to point to any allegations in the Amended Complaint detailing "the contents of [fraudulent] communications, who was involved, [and] where and when they took place, and . . . why they were fraudulent."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (first alteration in original) (internal quotation marks omitted); Defs.' Initial Mem. at 13-14.  Plaintiffs' Amended Complaint utterly fails to explain

how any Defendant is alleged to have made any fraudulent communication to any Plaintiff at any particular time or place through use of the wires or mails.  Nor do Plaintiffs explain how facts regarding any such fraudulent communications *to Plaintiffs* could possibly be in the exclusive control of Defendants.  Plaintiffs' failure to plead such facts is fatal to their RICO and RICO conspiracy claims.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (plaintiff must plead two predicate acts by defendant); *Weizmann v. Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 255 (S.D.N.Y. 2002) (elements of a RICO violation "must be established as to each individual defendant"); Defs.' Initial Mem. at 13-15.

> ### 3. Plaintiffs Fail To Allege A Coherent Theory As To What Defendant "Conducted" What "Enterprise."

According to Plaintiffs, the Amended Complaint alleges an enterprise consisting of the Trustee Defendants together with all of their "servicers, associated corporations and even . . . the courts . . . ."  Opp'n at 21-22.  Plaintiffs, however, still fail to allege any facts to show how any Defendant, as a RICO "person," participated directly or indirectly in the conduct of the affairs of such a far flung enterprise.  *See* Defs.' Initial Mem. at 16.  Nor do Plaintiffs plead any factual detail whatsoever regarding the "hierarchy, organization, and activities" of the alleged enterprise or any facts whatsoever to show how "its members functioned as a unit."  *First Capital Asset Mgt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal quotation marks omitted). Plaintiffs' failure to supply such detail dooms their RICO claims.  *See id.* at 174 (affirming dismissal of RICO claim where complaint failed to provide "any solid information" regarding hierarchy, organization, and activities of alleged association-in-fact enterprise); Defs.' Initial Mem. at 16-17.  The First Count of the Amended Complaint must accordingly be dismissed.

**B.      Plaintiffs Fail To Allege A Conspiracy To Commit A RICO Violation.**

Plaintiffs do not dispute that a complaint that fails adequately to allege a substantive

RICO violation cannot state a claim for RICO conspiracy.  *See* Opp'n at 24-26.  For the reasons

stated above and in Defendants' initial memorandum, Plaintiffs' Amended Complaint fails to

state a substantive RICO violation by any Defendant, requiring automatic dismissal of Plaintiffs'

RICO conspiracy claim.  *See Satinwood*, 385 F.3d at 182; Defs.' Initial Mem. at 17-18.

But even if Plaintiffs had adequately alleged a substantive RICO violation, their RICO

conspiracy claim would still fail because Plaintiffs do not allege any *facts* showing that

Defendants joined together in a conspiracy.  A plaintiff alleging the existence of a RICO

conspiracy must allege "'some *factual* basis for a finding of a conscious agreement among the

defendants.'"  *Picard v. Kohn*, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) (emphasis added)

(quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)); Defs.'

Initial Mem. at 17-18.  Plaintiffs' suggestion that *Corley v. Rosewood Center, Inc. of Peoria*, 142

F.3d 1041 (7th Cir. 1998), *cited in* Opp'n at 26, relaxes the pleading standards for RICO

conspiracy claims is simply wrong.[7]  The plaintiffs in the *Corley* case did not allege a RICO

conspiracy; the word "conspiracy" appears nowhere in the court's opinion.  But even if *Corley*

had purported to relax the pleading requirements for RICO conspiracy, such relaxed standards

would not have survived the Supreme Court's later decision in *Twombly*.  *Twombly* makes plain

that a plaintiff alleging conspiracy must offer some "further factual enhancement" beyond a

"naked assertion of conspiracy" to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

557 (2007).

---

[7]   Plaintiffs' reliance upon *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
742 F.2d 786 (3d Cir. 1984), *cited in* Opp'n at 26, is similarly misplaced.  In *Seville*, the
court affirmed a district court's dismissal of a RICO conspiracy claim because of pleading
deficiencies.  *See id.* at 792 n.8.

Far from supplying "further factual enhancement," Plaintiffs' Opposition merely repeats the conclusory allegations contained in the Amended Complaint. *See* Opp'n at 25-26. Plaintiffs still do not explain which Defendants agreed with which other Defendants, when the agreement took place, how the agreement came about, or what was agreed upon. Without any such allegations, Plaintiffs cannot state a claim for RICO conspiracy. *See Elsevier, Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010) (citing *Twombly*); Defs.' Initial Mem. at 18. The Second Count of the Amended Complaint must accordingly be dismissed.

### C.   Plaintiffs' RICO Claims Are Time Barred.

Plaintiffs' Opposition confirms that Plaintiffs brought their RICO and RICO conspiracy claims outside the applicable statute of limitations. Plaintiffs offer no authority to dispute that the four-year limitations period for claims under the RICO Act begins to run when the plaintiff discovers or should have discovered the RICO injury. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998) (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)). At the same time, Plaintiffs underscore their theory that their alleged racketeering injury includes "collection of payments to which the defendants were not entitled . . . for as early as 2005" and that the alleged "enterprise was continuously in the wrongful conduct of the racketeering since the PSA closing date . . . to the date of foreclosure." Opp'n at 22-23. Plaintiffs still do not—and cannot—claim that they were unaware that they were making payments on their mortgage loans, thereby suffering their alleged "injury." The statute of limitations therefore runs from the "PSA closing date" applicable to each Plaintiff, and Plaintiffs' RICO Act claims are time barred. *See* Defs.' Initial Mem. at 18-19.

Recognizing the consequences of their chosen theory, Plaintiffs state, without analysis or argument, that dismissal should be denied "because of tolling provisions applicable to cases of concealment." Opp'n at 22. However, it is Plaintiffs' burden adequately to plead the elements

of fraudulent concealment, *see Merrill Lynch*, 154 F.3d at 60, and the Amended Complaint fails to meet that burden.  The elements of fraudulent concealment are "(1) wrongful concealment by [the defendant], (2) which prevented [plaintiffs'] discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Id.* at 60.  In their Amended Complaint, Plaintiffs fail to allege that any Defendant undertook any action to conceal anything from any Plaintiff, fail to explain how such concealment prevented the discovery of Plaintiffs' alleged injuries within the limitations period, and fail to detail their due diligence in pursuing discovery of their claim.  Plaintiffs have therefore failed adequately to allege that the RICO Act's statute of limitations was tolled by fraudulent concealment.  *See id.* at 60.  Plaintiffs' RICO and RICO conspiracy claims must therefore be dismissed.

### III.    Plaintiffs Still Fail To Identify A Substantive Claim To Support Their Prayer For Injunctive Relief.

Plaintiffs do not dispute that injunctive relief is unavailable to private litigants suing under the RICO Act, *see* Defs.' Initial Mem. at 20, and do not purport to have stated any other substantive claim for relief.  Opp'n at 27.  Accordingly, the Third Count of Plaintiffs' Amended Complaint must be dismissed.

### IV.    Plaintiffs Should Not Be Granted Leave To Amend.

Plaintiffs incorrectly state that Defendants "have no[t] requested dismissal without leave to amend . . . ."  Opp'n at 2.  To the contrary, Defendants have requested dismissal of "Plaintiffs' Amended Complaint in its entirety with prejudice."  Defs.' Initial Mem. at 22.  While the general policy of courts is to grant an opportunity to replead upon granting a motion to dismiss, that policy does not apply when the plaintiff has already availed itself of an opportunity to amend. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (per curiam).  Dismissal without opportunity to replead is particularly appropriate where the plaintiff gives no indication

how amendment can save the plaintiff's claim.  *See id.* at 118; *see also Metz v. U.S. Life Ins. Co.*, 662 F.3d 600, 603 (2d Cir. 2011) (per curiam); *Porat v. Lincoln Towers Cmty. Assoc.*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999); *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 513 F. App'x 109, 112 (2d Cir. 2013) (summary order).  Here, Plaintiffs have already availed themselves of one opportunity to amend the complaint.  While their Opposition indicates willingness to replead again, it does nothing to explain what amendments could cure the fatal flaws in their RICO claims.  *See* Opp'n at 2. Under these circumstances, Plaintiffs' Amended Complaint should be dismissed with prejudice.

**V.      Plaintiffs Fail To Show That They Meet The Requirements For Permissive Joinder.**

Finally, if the Court determines not to dismiss the Complaint in its entirety and with prejudice, Plaintiffs still fail to show that they meet the requirements for permissive joinder. "The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20." *Kalie v. Bank of Am. Corp.*, ___ F.R.D. ___, 2013 WL 4044951, at *5 (S.D.N.Y. Aug. 9, 2013) (internal quotation marks omitted).  That burden simply is not met where, as here, Plaintiffs allege claims based on 37 different PSAs, each stemming from a separate mortgage loan transaction entered into with a separate lender at a separate time concerning a separate property. *See id.* at *3-*4; *see also Adams v. US Bank, NA*, 2013 WL 5437060, at *4 (E.D.N.Y. Sept. 27, 2013); *Abraham v. Am. Home Mortg. Servicing, Inc.*, ___ F. Supp. 2d ___, 2013 WL 2285205, at *4 (E.D.N.Y. May 23, 2013); *Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 367 (M.D. Fla. 2013).  Plaintiffs do not attempt to distinguish their circumstances from those addressed in *Abraham* and *Barber*.  Nor do Plaintiffs cite a single case in which a court has denied a motion to sever plaintiffs asserting claims arising from separate mortgage loan transactions.  Indeed, neither of the cases that Plaintiffs cite even addresses such a scenario.  *See DirecTV, Inc. v. Leto*, 467 F.3d 842 (3d Cir. 2006) (defendants allegedly pirated satellite

television), *cited in* Opp'n at 27; *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (plaintiffs alleging systemic pattern or practice of employment discrimination by same employer), *cited in* Opp'n at 28.

Plaintiffs' assertion that permissive joinder is warranted by their conclusory allegations of "concerted effort" and conspiracy among the Trustee Defendants, Opp'n at 27, is mistaken. As in *Kalie*, Plaintiffs' Amended Complaint is "fatally indistinct as to the roles played by the particular defendants or the dealings between particular defendants and particular plaintiffs." 2013 WL 4044951, at *5. Plaintiffs concede that "[t]he cases vary among the plaintiffs," Am. Compl. ¶ 27, and then fail to allege any facts linking "any particular loan to any particular type of wrongdoing by any particular defendant . . . ." 2013 WL 4044951, at *5. In the absence of factual allegations outlining what Defendant is alleged to have committed what wrongful act against what Plaintiff, the Court cannot conclude that the Plaintiffs assert a right to relief arising from the same transaction, occurrence, or series of transactions or occurrences. *See id.* at *5; *Abraham*, 2013 WL 2285205, at *5; *Barber*, 289 F.R.D. at 367-68. Accordingly, if it does not dismiss the Amended Complaint entirely and with prejudice, the Court should grant Defendants' motion to sever Plaintiffs.

## CONCLUSION

For the foregoing reasons, as well as those contained in Defendants' initial memorandum of law, Defendants respectfully request that that the Court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice or, in the alternative, drop all Plaintiffs except Plaintiff Anh Nguyet Tran.

Dated: New York, New York
October 7, 2013

s/Eric R. Sherman
Eric R. Sherman
*admitted pro hac vice*
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600
sherman.eric@dorsey.com

Christopher G. Karagheuzoff
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
(212) 415-9200
karagheuzoff.chris@dorsey.com

*Attorneys for Defendants U.S. Bank National
Association as Trustee of the Citigroup
Mortgage Loan Trust 2007-6, U.S. Bank
National Association as Trustee of the Lehman
Mortgage Trust 2007-6, U.S. Bank National
Association as Trustee of the Merrill Lynch
Mortgage Investors Trust, Series 2006-HE6,
U.S. Bank National Association as Trustee of
the GSAA Home Equity Trust 2006-12, U.S.
Bank National Association as Indenture Trustee
of the Citigroup Mortgage Loan Trust 2005-11,
U.S. Bank National Association as Trustee of
the First Franklin Mortgage Loan Trust 2005-
FF9, U.S. Bank National Association as Trustee
of the First Franklin Mortgage Loan Trust,
Series 2007-FF2, U.S. Bank National
Association as Trustee of the First Franklin
Mortgage Loan Trust, Series 2007-FFC, U.S.
Bank National Association as Trustee of the
Structured Adjustable Rate Mortgage Loan
Trust 2005-8XS, U.S. Bank National Association
as Trustee of the Lehman XS Trust, Series 2005-
2, U.S. Bank National Association as Trustee of
the Banc of America Funding 2006-6 Trust, U.S.
Bank National Association as Trustee of the
Bear Stearns ALT-A Trust 2006-3, and U.S.
Bank National Association as Trustee of the
CSMC Mortgage-Backed Trust Series 2006-5*

s/Christine B. Cesare
Christine B. Cesare
Scott H. Kaiser
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000
cbcesare@bryancave.com
scott.kaiser@bryancave.com

Nafiz Cekirge
BRYAN CAVE LLP
120 Broadway, Suite 300
Los Angeles, CA 90401
(310) 576-2100
nafiz.cekirge@bryancave.com

*Attorneys for Defendants The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-17, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2007-HYB2, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-OA6, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2005-HYB6, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-58, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2007-HY6, The Bank of New York Mellon as trustee of the CHL Mortgage Pass-Through Trust 2005-11, The Bank of New York Mellon as trustee of the CHL Mortgage Pass-Through Trust 2007-3, The Bank of New York Mellon as trustee of the CWHEQ Home Equity Loan Trust, Series 2007-S2, The Bank of New York Mellon as trustee of the Bear Stearns ALT-A Trust 2005-4, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-OA19, The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2005-22T1, The Bank of New York Mellon as Trustee of the CHL Mortgage Pass-Through Trust 2006-HYB5, and The Bank of New York Mellon as Trustee of the Alternative Loan Trust 2006-29T1*

s/Bernard J. Garbutt III
Bernard J. Garbutt III
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000
bgarbutt@morganlewis.com

Thomas J. Sullivan
*admitted pro hac vice*
Christopher J. Mannion
*admitted pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
tsullivan@morganlewis.com

*Attorneys for Defendants*
*Deutsche Bank National Trust Company, solely*
*in its capacity as Trustee of the American Home*
*Mortgage Assets Trust 2006-1, Deutsche Bank*
*National Trust Company, solely in its capacity*
*as Trustee of the Impac Secured Assets Trust*
*2006-5, Deutsche Bank National Trust*
*Company, solely in its capacity as Trustee of the*
*RALI Series 2006-QS8 Trust, Deutsche Bank*
*National Trust Company, solely in its capacity*
*as Trustee of the IXIS Real Estate Capital Trust*
*2006-HE3, Deutsche Bank National Trust*
*Company, solely in its capacity as Trustee of the*
*Fremont Home Loan Trust 2005-1, and*
*Deutsche Bank National Trust Company, solely*
*in its capacity as Trustee of the GSAMP Trust*
*2006-HE1*

s/Brian S. McGrath
Allison J. Schoenthal
Lisa J. Fried
Brian S. McGrath
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
allison.schoenthal@hoganlovells.com
lisa.fried@hoganlovells.com
brian.mcgrath@hoganlovells.com

*Attorneys for Defendants*
*HSBC Bank USA National Association as*
*Trustee of the Opteum Mortgage Acceptance*
*Corp. 2005-1, HSBC Bank USA National*
*Association as Trustee of the Merrill Lynch*
*Alternative Note Asset Trust 2007-A2, Wells*
*Fargo Bank National Association as Trustee of*
*the Securitized Asset Backed Receivables LLC*
*Trust 2005-HE1, and Wells Fargo Bank*
*National Association as Trustee of the*
*GreenPoint Mortgage Funding Trust 2005-AR4*