# EXHIBIT # 1

TOMAS ESPINOSA, Esq.
Attorney at Law
8324 Kennedy Blvd.
North Bergen, NJ 07047
Tel: (201) 223-1803/ Fax: (201) 223-1893
E-mail: drtomasespinosa@yahoo.com

N.J. Bar.                                                                                    N.Y. Bar.

October 29, 2013.

**Chief Justice Tani G. Cantil-Sakauye**
And Advocate Justices
Supreme Court of California
350 McCallister Street
San Francisco, CA 94102-4797

Re:    **Opposition to Deutsche Bank National Request for Depublicaion of**
       **Glaski v. Bank of America**
       **California Court of Appeal, Fifth Appellate**

Dear Honorable Chief Justice and Associates Justices of the California Supreme Court:

I represent the more than thirty five plaintiffs in an action known as Anh Nguyet Tran v.

Bank of New York et als., Civil Action No. 13-cv-580 (RPP) presently filed in the United States

District Court of New York For the Southern District.

Recently, we received from a California source a copy of the letter sent by the law firm of

Morgan, Lewis & Bockius, LLP attorney for one of the defendants in the above mentioned U.S.

District Court for the Southern District of New York case. The letter is signed by Lynda

Rosenblatt, despite the fact that the letter of the attorney for Deutsche Bank seeks to affect the

case of the plaintiffs I represent, she chose not to alert us by copying such application that we

may intervene.  We file this response with notice to Deutsche Bank's attorney.

1

As the court is aware, the defendants Appellee in the **Glaski v. Bank of America**, **Fifth Appellate District, Case No. 1064556** applied to the court of the Appeals on August 22, 2013 for a rehearing or reconsideration that has been denied.  However, Deutsche Bank seeks now by its attorney letter to you to depublicize the opinion.  The court should deny this application.

### 1) THE GLASKI COURT DID NOT ERR IN APPLYING NEW YORK LAW

The court in **Glaski** found that a mortgagor had standing to challenge an assignment that was void by application of New York law.  The court also analyzed that the cases in which as the court stated there were holdings of other jurisdictions that have found no standing relied in a "too broad brush painting"  in their application of the privity of contract doctrine to the case dealing with lack of standing because of violation of the PSA provisions. We submit here that the **Glaski**, Court was correct in its decision.

It is uncontroverted that the trust in **Glaski** was governed by New York law and because of that governed by New York Trust Law both N.Y. EPTL (New York Estate Property Trust Law and New York trust case law) and this is the case by the express statement of the trust creating document, the Pooling Service Agreement ("PSA"),  which in **Glaski, Supra** as well as, in **Tran Supra**, the law applicable to the PSA and to the trust was New York law was selected by the parties to the PSA as the governing law. The PSA itself in both cases prescribed that the operation of the trust is governed by New York Law.  The fact that the trust may have been formed in Delaware does not make Delaware Trust Law, the governing law, even a Delaware court we are bound to apply New York law by the expressed decision of the creators of the trust. New York law governs the trust, the trustee actions and the effect of the provisions of the trust indenture.  The **Glaski Court**, correctly applied New York law.  Under **New York EPTL law**

the authority of the trustee is subjected to the limitations in the trust instrument **EPTL § 11-1.1**

**Subd (b)** and every act of the Trustee in contravention to the terms of the trust, except as

authorized by law, is void **EPTL § 7.2-4.**   The lack of power of the trustee cannot be made good

under any equitable principle (**Vohman v. Michel, 185 N.Y. 420, 78 N.E. 186**). Acts in

contravention of the trust indenture are beyond the powers of the trustee and therefore void

(**Kaufman v. Jared Flagg Corp., 227 App. Div. 98, 237 N.Y.S. 26**). Under a securitization the

trustee is not a beneficiary of the trust, the trustee authority to institute a foreclosure on behalf of

the trust derives from the authority bestowed upon him by the Pooling Service Agreement. It is

absurd that if that authority under New York law is subject to the PSA limitations (the trust

indenture) and if the acts in contravention with the indenture that designate the trustee as trustee

are void under **New York EPTL** law, the assignment and note transfer effected after the closing

date of the PSA be valid, when as will be shown below such act of the transfer are void, under

New York law, it is as if they never occurred, this is regardless of privity or not because it has

nothing to do with privity.  It is dictated by New York Trust Law.

We attach here the memorandum of law of Ronald Ryan, Esq. and published by him in

the internet web in support of our position and by derivation, we submit as further reasons that

support the **Glaski Court** decision.  (See Attachment A).

It is simply a non sequitur that the law of New York that was created for the protection of

the beneficiaries of the trust (the securities purchasers) from the ultravires action of the trustee is

could be validly invoked by Deutsche Bank as being to their detriment because the beneficiaries

will not receive the fruits of the illegal foreclosures obtained by the trustee by way of acts that

are prohibited by the applicable law.

The victims of the ultravires acts of the Trustee are both the borrowers and the beneficiaries and both should be protected from the void acts of the trustees and compensated accordingly.

## APPLICABLE LAW

An express life trust is governed by New York Law ( EPTL and New York Case law ) and it requires the property, the intention to create a trust and the beneficiaries. The PSA designated the property that was to be the trust fund and that upon delivery to the designated trustee would had created the trust, as well as, the time and date of delivery of the property. What is to be property or not of the trust is governed by the PSA. It is not a matter of the defendant not having privity to enforce the PSA.   What matter is if under the applicable controlling law that governs the creation and performance of this trust and trustee, the trust and trustee were real parties in interest ("standing") at the time that a foreclosure action was filed.

In New York, the mere intention to create a trust without delivery of the complete trust assets to the trustee has not legal consequences; it does not create a trust, the trust is formed when the transfer of assets is completed.  If the trust names a third party as a trustee, the property, titled assets, documents evidencing ownership of the property must be formally and actually transferred to the trustee by the date and manner prescribed by the corporate indenture of the trust (the PSA).  A transfer is not effected by mere recital of assignment, but the written assignments and all documents of property must be actually delivered to the trustee (**New York EPTL §7-1.8).**  As stated above the property has to pass to the trustee with the intention to pass legal title thereto to it as trustee. **Brown v. Spehr, 180 N.Y. 201 (N.Y. 1904)**.  There is no valid trust until actual delivery of the assets to the trust. **Riegel v. Central Hanover Bank and Trust Co., 266 App. Div. 586**.  There is no trust if the trust fails to acquire the property.  **Kermani v.**

4

**Liberty Mut. Ins. Co.**, 4 A.D. 2d 603 (N.Y. App. Div. 3d Depart. 1957).  Under New York

Law (EPTL) there is not legal title to the property if there is no actual delivery as per the

instrument creating the trust ( PSA). The property in the instant cases is the trust fund.  This is a

matter of Trust Law on what constitutes property of the trust.  This is not a matter of privity of

contract; it is a matter of trust law about what is required to create the trust.

The delivery of the property must be done to the trust as designated in the instrument

creating the Trust (**EPTL §7.21(c)**).  The PSA prescribed the specific method of transfer.  This is

not subject to variation because it is set in the instrument.  No court can ignore and create

contractual remedies that were omitted in the PSA. **Schmid v. Magnetic Head Corp., 468 NYS**

**2d 649 (NY App. Div. 1983)**.  However, the court can enforce the prescriptions of the PSA.

**Morlee Corp. v. Manufacturer Trust Co.**, 172 N.E. 2d 280 (N.Y. 1961).

What is valid delivery to the trustee is governed by the corporate business indenture, (the

PSA).  The corporate business indenture is the document that creates the trust by prescribing the

manner, time and formation of the trust and governs the actions of the trustee, because the trustee

in the present case is a corporate trustee.  Under a corporate indenture the right of the trustee is

not governed by fiduciary relationship but by the terms of the agreement (the PSA).  **AG Capital**

**Funding Partners, L.P. v. State St. Bank & Trust Co.**, 2008 N.Y. Slip Op. 5766; **Hazard v.**

**Chase National Bank,** 159 Misc. 57, 287  N.Y.S. 541 (Sup Ct 1936) aff'd 257 A.D. 950 14

N.Y.S. 147 (1st Dept.) aff'd 282 N.Y. 652 cert. de. 311 U.S. 708 (1940). The duties and power

of the trustee are set by the agreement (PSA).  In **RE IBJ Schroeder Bank and Trust Co.,** 271

**A.D. 2d 322 (N.Y. App. Div. 1st Dept. 2000) and governed by the NYEPTL.**

The delivery of the trust funds under the PSA requires under the corporate indenture

provisions of New York Trust Law strict compliance with the mandatory terms of the trust

indenture, because the property has to be delivered as prescribed and the securities ascertained if not no right to beneficiaries arise. **Wells Fargo Bank, N.A. v. Farmer,** 2008 N.Y. Slip OP. 51133 U 6 (N.Y. Sup. Ct 2008) and no right in the trust arises without consideration paid.

The delivery necessary to consummate a transfer must be perfected as to the nature of the property. There must be actual surrender and control and authority over the things surrendered must be intended. It is the consummation that completes the transaction, intention alone is not sufficient. **Vincent v. Putnam,** 248 N.Y. 76 (N.Y. 1928). The Consummation Act of the delivery of all the property and documents is necessary. **Phillipsen v. Emigrant Inds. Saving Bank,** 86 N.Y.S. 2nd 133 (N.Y. Sup. Ct. 1948).

The delivery rule requires that the delivery necessary to consummate a gift must be perfected as to the nature of the property and the circumstances permit. **Vincent v. Rix,** 248 N.Y. 76 as cited in **Gruen v. Gruen,** 68 N.Y. 2d 48 (N.Y. 1986). See also **Sussman v. Sussman,** 61 A.D, 2d 838 (N.Y. App. Div. 2d Dept, 1978); **Riegel v. Hanover Bank Trust Co.,** 266 App. Div. 586 there must be a change of dominion over the thing intended to be given. **Vincent v. Putnam,** 248 N.Y. 76, 82-84 (N.Y. 1928). The corporate indenture is strictly construed under New York law.

The plaintiff position in **Glaski** was that the transfers did not comply with the PSA since the assignments of the mortgage occurred in violation of the dates prescribed for the closing of the trust. The claims were that the transfer of the notes and the assignment of mortgages and/or Deeds of Trust, were void because the act of accepting them out of the time prescribed by the PSA was in violation of NY EPTL and therefore void as a matter of law.

Plaintiffs alleged that the transfers were not made by the prescribed path of the PSA agreement nor by the prescribed time of the PSA and all of this was done after the closing date of

the trust.  Any act of the trustee contrary to the trust agreement (PSA ) is void  (**NY EPTL Section 7-2.4**).  It is NY EPTL, the law of the State of New York § 7-2.4 that prescribes the nullity of an assignment in violation of the PSA.  This is not a matter that is subject to the arguments that defendant has no standing to raise PSA violation because lack of privity to the PSA, because the claim to possession and the right of the trustee to bring the foreclosure action and to collect payments is predicated on the trustees being the holders of the notes and the trustee of the trust based on the authority conferred upon the trustee by the document that designate him as trustee and that prescribed the formation of the trust and  also which rule the actions of the trustees.

The PSA is not simply an agreement but the document that states the conditions in which the trust is created under New York Trust Law.  The trust is created only when the full property of the trust is delivered as per the language of the corporate indenture.  It also prescribes what action of the trustee is void or not.

In order to prove injury in fact to foreclose the defendants had to prove that they had legal standing by showing that they were real parties in interest in each foreclosure.  In order to collect payments they had to have had the rights of a valid loan holder and/or owner. If the defendants cannot prove that the loan became an asset of the trust, under New York law and the PSA, they can never be able to prove standing.

New York delivery rule requires complete and specific dominium by the closing date of the trust.  Delivery must be such that it vests the donee with control and dominion over the property and absolutely divest the donor of its dominion and control and the delivery must be to the donee with intent to vest the property in the donee, equity will not help and incomplete delivery. **Vincent v. Putnam, 248 N.Y. 76 ( N.Y. 1928).**

The court in **Glaski** was correct because **Glaski** allegations were not based on being a party to the PSA but on the void nature of the transfer to the trustee void by operation of law.   In the **Tran, Supra** case, the plaintiffs' position is that the PSA is the business indenture of a trust, and that under New York Applicable Trust Law, the Law that the creators of the trust chose to govern the corporate indenture, the transfers were void.  The trusts governed by New York Trust Law and the trustees were the trustees of trusts governed by New York Trust Law. New York Trust Law governs what acts of the trustee are valid or void and that the PSA prescribes the creation of the trust because it describes what property is the property of the trust, how this property is to be received, when the property become property of the trust, the conditions for that property to be property of the trust and what acts of the trustee are valid or void.  It is not under contract law that the acts of the trustee are ruled but under New York Trust Law. The trustees alleged rights to foreclose arose out of it being the acts of the trustees acting on behalf of the trust by the powers and limitations granted to him under the PSA and the authority and power to act as the trustee is subjected to New York Trust law.

An examination of some of the main cases for the denial of standing to raise violation of the PSA as a defense to a foreclosure action shows the defect of non comprehension of New York Trust Law and/or the too broad painting with a too broad brush that The **Glaski** Court described.

**In Audobon v. Bank of New York Mellon, 2011 U.S. Dist. Lexis 138408 (U.S. Hawaii 2011)** the court citing **Anderson v. Countrywide Home Loans, 2011 U.S. Dist. Lexis 45966,2011 WL 1627945 ( D. Minn. Apr. 8, 2011), Anderson,** in turn was based on **Peterson-Price v. United States Bank Nat'l Assn', 2010 U.S. Dist. Lexis 43355,** denied the PSA defenses of the borrower.  Since **Audobon** was based on **Anderson,** and this on **Peterson-Price,**

I will start with **Peterson Price**.  In this case the validity of the assignment under Minnesota Law that requires recordation was in question, the court found the assignment valid under the Law of Minnesota and denied the PSA argument because the offered argument did not give any legal authority for the argument that the contravention of the PSA made the assignment invalid and the court used the privity argument under contract law to deny that borrower could bring the PSA violation as ground to invalidate the assignment.  **Anderson,** applied the same argument finding independent validity of the assignment (independent from PSA violation) and used the privity argument against the borrower, again, there was no analysis of the grounds to challenge an assignment that is void by operation of law.   **Audobon** followed **Peterson-Price** and **Anderson**, the court found an independent validity on the side of the assignor for the assignment because the plaintiff in that case did not cite any authority for the proposition that an assignment made in contravention with the PSA is void.

I list here other illustrative cases of the line denying standing on the basis of privity. **Greene v. Home Loans Services, Inc.,** 2010 U.S Dist. Lexis 99222 (2010); Long v. **OneWest Bank, FSB,** 2011 U.S. Dist. Lexis 94675 (U.S. Dist. Illinois 2011); **Melissa Juarez vs. U.S. Bank National Association,** 2011 U.S. Dist. Lexis 128087 (U.S. Dist. Mass. 2011); **In Re Correia,** 45 B.R. 319 ( 1st Cir. BAP, June 30, 2011) .

 I will refer to the cases listed above that are usually offered against the proposition of defendant in respect to the impact of the PSA on the issue of standing by using solely the first name in the case cited.

**In Greene**, the court found that the matter of the standing in respect to the PSA was not adequately pleaded and again that the borrower had no standing based on the privity of contract

to challenge a breach by the Trustee of the PSA.  There was no analysis of the impact of New

York Law because the borrower offered none.

    **In Long,** first this was a Deed of Trust jurisdiction case and the language of the Deed of

Trust gave MERS the power to assign and sell (power of sale), again there was therefore, validity

of assignment from the side of the assignor, and citing Anderson, it denied standing to challenge

the assignment to the trust because the borrower were not parties to the PSA without any analysis

of New York Law because there was not any analysis offered by the borrower.  It clearly stated

that the borrower (plaintiff in that case) had not cited any precedent holding that an assignment is

invalid because it conflicts with a PSA.  Moreover, since the borrower did not plead that MERS

failed to physically deliver the note and borrower did not show any law only speculations about

possible fabrication of the note, the contention was denied.

    **In Melissa Juarez**, this is a Massachusetts case, Massachusetts is a Title Mortgage

Jurisdiction.  In Massachusetts the mortgage give title to the mortgagee that reverts when note is

fully paid. The mortgage under Massachusetts law gave the mortgagee under a power of sale the

power to foreclose and to assign.  Therefore, **In Melissa Juarez,** the assignment from the side of

the assignor was valid, and the court citing **In Re Correia, 45 B. R. 319 (1ˢᵗ Cir. BAP June 30,**

**2011**), also a decision based on contractual privity, stated that the PSA did not provide

independent basis for mortgagors to collaterally contest since they were no party in interest to the

PSA.  There was no analysis of the impact of New York Trust law on the claims of the borrower.

The court should read all of these cases with extra care as it was done in the cases cited by the

**Glaski** court and which submitted them to an analysis that did not paint the privity arguments as

applicable with a plainly "too broad brush".   There was not in any of the cases any analysis of

the impact of New York law both New York EPTL and New York case law on valid actions or

not of the trustee.  There was no consideration of the impact of the New York finality Rule on

the creation, formation and existence of the trust, nor any analysis of the impact of the fact that in

each securitization trust is created by the PSA, the PSA and that is the corporate indenture and

that the obligations under the corporate indenture are under New York Law strictly construed.

The court in **Glaski** also made an analysis of cases that had found the ultravires the acts of the

trustee are only voidable not void, to wit **Calderon v. Bank of America, N.A.** ( W.D. Tex.

**April 23, 2013) , No SA: 12-CV-00121-DAE)___ F. Supp. 2d ____ ____ (2013 WL 1741951**

**at P 12); Bank of America National Association vs. Bassman**, FBT, LLC, 366 Ill. Dec 936,

**981 N.E. 2d 1, 8 ( Ill. Ct. App. 2012),** but the **Glaski** court found that the express terms of New

York law of making the acts void are more protective of beneficiaries of the trust protecting them

from the consequences of the ultravires action of the trustee is more in accord with the intention

and aim of New York law.

     In addition, none of these cases, that are not New York cases, make the distinction that

the duties of the trustees under New York law are different than the merely fiduciary duty, the

duty of other types of trust, but that under New York law in a business trust, the corporate

indenture is strictly construed as to the application and interpretation of it and that **EPTL 7-2.4** is

therefore literally applied to corporate indenture trust. As to the other cases in some of the

Federal Districts Courts they lack persuasive power because they do not address the principle

that a borrower may challenge an assignment that is void and they do not apply New York trust

law.  In each of these cases, the PSA is looked in isolation of N.Y. Trust Law or only a side

glance made at it.

We submit to the court that the subject matter of the rights by Borrowers to use the violation of the PSA as a basis to their claim in its evidentiary capacity and as violation of the New York Law, is also underpinned by a synthesis of New York cases that deal with the right of a third party that is not a signatory of the PSA to bring claims against the trustee for ultravires actions taken by the trustee in contravention of the trust indenture. The beneficiaries of the trust have also the right to raise the violation by the trustee of the trust indenture (PSA) as a defense against claims by third parties that had as their basis actions and omissions of the trustee in dealing with them.

## THIRD PARTIES HAVE STANDING UNDER NEW YORK LAW TO RAISE THE TRUSTEE ACTIONS IN VIOLATION OF THE TRUST IDENTURE

The New York cases that give standing to third parties that have not privity to the trust agreement are a series of cases starting with **Dye v. Lewis, 324 N.Y.S. 2d 172, 67 Misc. 2d 426( Supreme Court Monroe County)**, also **In the Matter of Pepi**, (decision published in the **New York Law Journal on June 19, 1996, Section Pg 1 ( Col. 3) Vol. 215**, Second Judicial Department, Nassau County, Subrogate Court. I have been unable to find the formal citation, also **R. Dye v. Lincoln Rochester Trust Company, 334 N.Y.S. 2d 402 40 A.D. 2d 583 (Supreme Court Appellate Division, Fourth Department, July 6, 1972)**, the synthesis of these cases go to the proposition that third parties dealing with a trust can raise the violation of the trust indenture and of **EPTL 7:2.4** as basis for their claims. Similarly acts of the trustee in violation of the indenture can be brought by third parties based on the language of the indenture of the trust. In fact, third parties that deal with a trust are charged with the presumption of knowing the trust agreement language, and when the defense of the acts being ultravires raised

by the trust beneficiaries against the third party.  It stands to reason that if the beneficiaries can

raise as a defense against a third party the ultravires actions of the trustee, because of violation of

the trust agreement the beneficiary can also raise the ultravires action of the trustee as defense

against the trust and the beneficiary of the trust.  The reason is clear; the trust agreement is not a

mere conract but the indenture creating the trust.  It is the constitution document of a legal entity

that prescribes the power and limitations of the trustee

     Furthermore, there is also the case that was decided in New York this year, **Wells Fargo,**

**N.A. v. Erobobo,** **2013 N.Y. Slip Op 50675, (N.Y. Sup. Ct 2013)** the argument that **Erobobo**

**Supra** is on appeal does not deny the fundamental fact that **Erobobo** is in complete harmony

with both NY EPTL language and New York Trust Law.

     We want also to submit to the court that New York law is controlling not only because

the law of New York was the law that the provision of the corporate indenture (PSA) state is the

applicable law, but also because even under choice of law and conflict of law principles, New

York has more contact than any jurisdiction in respect to the trusts, the trust possession of the

note and assignments, as well as, to the fact that the trusts were never validly formed.  The

**Glaski** court decision looked finely to New York Law and correctly decided not to paint the

standing argument by applying the incorrect argument of privity to the claims of borrower with a

"too broad brush".

## CONCLUSION

The court may rest assured that the **Glaski** decision is a landmark decision because; it creates a clear precedent that separates the validity of the trustee actions from the false limitations of contractual privity of contract painted with a "too broad brush" to make it be green under light the applicable trust law.

It is the trust law governing the creation formation an authority of the trustee and the basis on which it can claim standing or not to pursue foreclosures. The decision should be kept published.

Respectfully submitted,

_____

Tomas Espinosa, Esq.

## CERTIFICATION OF SERVICE

I, Tomas Espinosa, Esq. certify that I have provided via regular mail a copy of the present letter

as follows:

Lynda Rosenblatt, Esq.
Morgan, Lewis & Bockius, LLLP
101 Park Avenue
New York, NY 10170-0060

Dated: 10/29/2013

Tomas Espinosa, Esq.

# ATTACHMENT # A

Ronald Ryan
Ronald Ryan PC
1413 E Hedrick Dr
Tucson AZ 85719
phone: (520)298-3333 fax: (520)743-1020
ronryanlaw@cox.net
AZ Bar #018140

MEMORANDUM OF LAW EXPLAINING AND SUPPORTING COUNT I (Written
pursuant to Arizona Law, but can be tailored to your State)

**LOANS NOT COMPLYING WITH STRICT PROVISIONS OF TRUST DOCUMENTS
CANNOT BE PROPERTY OF THE TRUST AS A MATTER OF LAW**

1.       MBS Trusts are almost always subject to New York Trust law, and the MBS

Trust in this case is so subject.[1]  New York's trust law is ancient and settled. If the MBS

Trust failed to acquire the Property, then there is no trust over the Property which may be

enforced.[2] For property to be transferred to a New York Trust, there must be intent and

DELIVERY. For property to be transferred to a New York Trust, there must be "intention

of passing legal title thereto to him as trustee."[3] The Trust Documents, if properly executed

establish only the INTENT to sale a Note, Loan and Mortgage to the MBS Trust. Within the

Statutes of New York governing Trusts, Estates Powers and Trusts Law (EPTL)  section

---

[1]  As early as 1935, in *Burgoyne v. James*, 282 N.Y.S. 18, 21 (1935), the New
York Supreme Court recognized that business trusts, also known as ""Massachusetts
trusts","are deemed to be common law trusts. See also In re *Estate of Plotkin*, 290
N.Y.S.2d 46, 49 (N.Y. Sur. 1968) (characterizing common stock trust funds as
""common law trust[s]""). Other jurisdictions are in accord. See, e.g., *Mayfield v. First
'Nat'l Bank of Chattanooga*, 137 F.2d 1013 (6th Cir. 1943) (applying common law trust
principles to a pool of mortgage participation certificate holders).

[2]  In an action against the individual defendant as trustee, based on the theory of
breach of fiduciary obligation, the complaint was properly dismissed on the ground that
he had acquired no title or separate control of the goods and, hence, there was no
actual trust over the property to breach. *Kermani v. Liberty Mut. Ins. Co.*, 4 A.D.2d 603
(N.Y. App. Div. 3d Dep't 1957).

[3]  *Brown v. Spohr*, 180 N.Y. 201, 209-210 (N.Y. 1904).

7-2.1( c) authorizes investment trusts to acquire real or personal property "in the name of the trust as such name is designated in the instrument creating said trust." Even language in Trust Documents that contains language that states that the mortgage loans are transferred contemporaneously with the execution thereof does nothing more than establish intent.  Intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given.[4]  It is the consummation of the donor's intent to give that completes the transaction. Intention alone, no matter how fully established, is of no avail without the consummated act of delivery.[5]  The well-settled New York trust law provides that "A mere intention to make a gift which has not been carried into effect confers no right upon the intended beneficiary. There must be also delivery beyond the power of further control and dominion."[6]

      2.     When the requirements of transfer to the trustee are viewed in the context of the corporate or business trust indenture, more information about compliance with these requirements becomes apparent. One must first understand that:

> "[t]he corporate trustee has very little in common with the ordinary trustee .
> . . . The trustee under a corporate indenture . . . has his [or her] rights and
> duties defined, not by the fiduciary relationship, but exclusively by the terms
> of the agreement. His [or her] status is more that of a stakeholder than one
> of a trustee."[7]

---

[4] *Vincent v. Putnam*, 248 N.Y. 76, 82-84 (N.Y. 1928).

[5] *Phillippsen v. Emigrant Indus.Sav. Bank*, 86 N.Y.S.2d 133, 137-138 (N.Y. Sup. Ct. 1948). (Beaver v. Beaver, supra, 117 N.Y. 421, 428, 22 N.E. 940, 941, 6 L.R.A. 403, 15 Am.St.Rep. 531).

[6] *Vincent v. Rix*, 248 N.Y. 76, 85 v. Rix, 248 N.Y. 76, 85; *Matter of Green*, 247 App. Div. 540; McCarthy v. Pieret, 281 N.Y. 407, 409.) as cited by *In re First Trust & Deposit Co.*, 264 A.D. 940, 941 (N.Y. App. Div. 4th Dep't 1942).

[7] *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 2008 N.Y. Slip Op. 5766, 7 (N.Y. 2008).

Indeed, "[a]n indenture trustee is unlike the ordinary trustee. In contrast with the latter, some cases have confined the duties of the indenture trustee to those set forth in the indenture."[8]  The indenture trustee, it has been said, resembles a stakeholder whose obligations are defined by the terms of the indenture agreement.[9]  Moreover,"[i]t is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries".

3.      This leads to the New York Trust Law "Perfect Delivery Rule." When the Trust Documents set forth the requirements for delivery, there is no perfect delivery unless it is made in strict compliance with these documents. The actual contracts of the Trust Participants, the Trust Documents, prescribe a very specific method of transfer of the notes and mortgages to the Trust. Because the method of transfer is set forth in the Trust instrument, it is not subject to any variance or exception.[10]  New York Trust law provides for strict construction of Trust Documents. It is legally impossible for property to come into

---

[8]  *Green v. Title Guarantee & Trust Co.*, 223 A.D. 12, 227 N.Y.S. 252 (1st Dept.), aff'd, 248 N.Y. 627 (1928); *Hazzard v. Chase National Bank*, 159 Misc. 57, 287 N.Y.S. 541 (Sup. Ct. 1936), aff'd, 257 A.D. 950, 14 N.Y.S.2d 147 (1st Dept.), aff'd, 282 N.Y. 652, cert. denied, 311 U.S. 708 (1940).

[9]  See *Meckel v. Continental Resources*, 758 F.2d 811, 816 (2d Cir. 1985) as cited in *Am Indem. Corp. v. Bankers Trust Co.*, 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

[10]  Courts may neither ignore the actual provisions of transaction documents nor create contractual remedies that were omitted from the governing contracts by the contracting parties. See *Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 654 (N.Y. App.Div. 1983) (""It is fundamental that courts enforce contracts and do not rewrite them . . . An obligation undertaken by one of the parties that is intended as a promise . . . should be expressed as such, and not left to implication."" (citations omitted)); Morlee *Sales Corp. v. Manufacturers Trust Co.*, 172 N.E.2d 280, 282 (N.Y. 1961) (""[T]he courts may not by construction add or excise terms . . . and thereby 'make a new contract for the parties under the guise of interpret[ation].""" (quoting *Heller v. Pope*, 250 N.E. 881, 882 (N.Y. 1928)).

the MBS Trust that was not obtained pursuant to the contractual requirements in the Trust Documents.

4.      Equity will not help out an incomplete delivery. If the agent of the donor has failed to make the delivery expected, equity will not declare him a trustee for the donee. Further, the failure to convey to a trust per the controlling trust document is not a matter that may be cured even by the parties involved. New York law is unflinchingly clear that a trustee has only the authority granted by the instrument under which he holds, either deed or will. This fundamental rule has existed from the beginning and is still law.[11] An indenture trustee is unlike the ordinary trustee. In contrast with the latter, some cases have confined the duties of the indenture trustee to those set forth in the indenture.[12] From this context springs the seminal rule of law that effectively causes the parties to the Trust agreement and the Trust to be "gored by their own bull".  New York's law is so well-settled regarding the limitations of a trustee's power to act that New York's Estates Powers and Trust Law Section 7-2.4 states:

> § 7-2.4 Act of trustee in contravention of trust
>
> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

Therefore, the trustees for these trusts may only acquire assets in the manner set forth in the Trust Documents and may not acquire assets in violation of these documents. To the extent that any assets were not conveyed to these trusts as required, including the time

---

[11]  *Allison & Ver Valen Co. v. McNee*, 170 Misc. 144, 146 (N.Y. Sup. Ct. 1939).

[12]  *Am Indem. Corp. v. Bankers Trust Co.*, 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

deadlines set forth in the documents, they are not assets of the trusts. Furthermore, MBS Trustee cannot correct this deficiency now since the funding period provided in the Trust instruments passed many years ago. The attempt to acquire assets by these trusts which violate the terms of the Trust instrument are void. Therefore, late assignments, improper chains of title, late endorsements, improper chains of title in the endorsements and the attempt to transfer to the trusts by foreclosure deed are just a number of the many examples of actions which are void if taken by a party to the indenture who is attempting to transfer property to the Trustee for the Trust in violation of the Trust Documents .

     5.    A verified Complaint from the New York Attorney General, **attached hereto as XB**, constitutes an Attorney General Opinion that Plaintiff's interpretation of the affect of New York Trust law upon the following issues, discussed more in detail below:

    a)    That provisions in Trust Documents that detail how a trust can obtain mortgage loans into the trust corpus govern. XB, p9-12.

    b)    That such provisions include requirements that Note and other documents be delivered to the MBS Trustee must be complied with in order for the trust to obtain mortgage loans to which said documents pertain. XB, p10-12.

    c)    That it takes intent AND DELIVERY for a MBS Trust to obtain property, and that successful delivery requires strict compliance with the technical requirements in the Trust Documents. XB, p10.

    d)    The Trust must have proof of the entire chain of transfers beginning with the Originator and ending with the MBS Trustee. XB, p11-12.

    e)    The Kemp v. Countrywide Home Loans, Inc., 440 B.R. 624, 629 (D.N.J. Bankr. 2010) case was pivotal and the testimony from a top Countrywide foreclosure operations official (Linda DeMartini) had effects far beyond the Kemp case the testimony was that it was "customary" for Countrywide "to maintain possession of the original note and related loan documents," rather than transferring those documents to the trustees (Id. at 628), which was fatal to successful delivery of the loan to trust. XB, p14.

6.     MBS securitization documents provide procedures that are more rigorous than the standards in Article and 3 and 9 of the UCC, for the sale, negotiation and transfer of Notes, Loan ownership and Mortgages. Provisions of the Articles of the UCC may be varied by agreement, as set forth in UCC § 1-302 (ARS § 47-1302). Variations are not permitted: a) when the UCC so indicates (see, e.g., UCC § 9-602);[13] b) When the variation would disclaim obligations of good faith, diligence, reasonableness, or care prescribed by the UCC; c ) When the meaning of the statute itself is varied by agreement; d) To avoid the application of UCC Article 9 to a transaction that falls within its scope, and when this is the case, UCC Article 9 trumps common law. XM, UCC Report, p2-3, fn 7-8; UCC § 9-602. The requirements in the Trust Documents that establish requirements for the MBS Trust to have obtained the Loan and Mortgage as trust property, are "variations of the UCC by agreement" that are permitted, and they imposed additional requirements for the sale and transfer of the Loan and Mortgage toMBS Trustee beyond those in Articles 3 and 9.

7.     To re-summarize the requirements for delivery of the Loan and Mortgage to the MBS Trust in this case, there had to be "True Sales" from each Transferee to each Transferor. For there to be a True Sale, there had to be of value given for each transfer by the Transferor to the Transferee and a documented release of interest in the Loan, Note and DOT by the Transferor in favor of the Transferee, and there had to be a true negotiation on the Original Note by each Transferor in favor of each Transferee, and physical delivery of the original Note to MBS Trustee in its capacity as MBS Trustee. There could be no missing intervening endorsements. Each sale was required to be properly documented and identify that the Note was sold and purchased with the intention that the

---

[13] The provisions of Article 9 discussed herein cannot be avoided by agreement.

Note was sold with the Mortgage represented by the DOT.

8.      More specifically, for the Loan to be successfully pooled into the MBS Trust, it had to have been truly sold from A) Originator, XA, to B) Seller, XB. to C) Purchaser and Depositor, XC [14] to D) MBS Trustee, as Trustee.[15] The critical dates for these transactions were: "Cut-off Date" November 1, 2006; and "Closing Date": November 28, 2006. The final true sale to MBS Trustee as Trustee had to have been successfully completed by the Closing Date of November 28, 2006. The original Mortgage Note had to be delivered to MBS Trustee by the Closing Date, bearing all intervening endorsements, showing a complete chain of endorsement from the Originator to the last endorsee, MBS Trustee as Trustee.[16] A small exception to strict time requirements is allowed for delivery of some of the physical documents. XE, as the "Responsible Party," was allowed until 30 days following the Closing Date to deliver documents other than the Note (11/28/2006 plus 30 days, or 12/28/2006), and is allowed an additional 90 days following the Closing Date to have the documents required to be recorded delivered to MBS Trustee (11/28/2006 plus 90 days, or 2/26/2007), if necessary due to the length of time it takes locally to receive documents from the recording office. The final endorsement had to read "Pay to the order of MBS Trustee, without recourse" and had to be signed by an authorized officer of [IDENTIFIER WALL STREET DEPOSITOR, INC] There also had to be a package of other documents included in the delivery including, the original of any guaranty executed in connection with the Mortgage Note; a copy of the recorded DOT; the originals of all

---

[14]  Bill of Sale, p2 of 6.

[15]  Section 2.01 Pooling and Servicing Agreement ("PSA"), p39 of 212.

[16]  PSA, Section 2.01, p39 of 212.

documents required to establish sale of ownership of the Loan along with the DOT rights, as required by Article 9, which includes all intervening assignments of Mortgage evidencing a complete chain of assignments, with evidence of recording thereon or a certified true copy of such intervening assignments of Mortgage submitted for recording. Other documents must be provided, including writings that makes it clear that each true sale of the Loan and Note was made for value and that the DOT rights were included in each sale.

     8.    MBS Trustee had commensurate duties to acknowledge receipt of all the above required documents and instruments in proper form within commensurate time periods to the Depositor, [IDENTIFIER WALL STREET DEPOSITOR, INC], and the Servicer.[17]

---

[17]  PSA, Section 2.02, p40 of 212.