# EXHIBIT # 2

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel. 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

**Morgan Lewis**
COUNSELORS AT LAW

Bernard J. Garbutt III
(212) 309-6084
bgarbutt@morganlewis.com

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
RECEIVED

OCT 08 2013

By _____ Deputy

October 7, 2013

Chief Justice Tani G. Cantil-Sakauye
 and the Associate Justices
Supreme Court of California
350 McAllister Street
San Francisco, CA 94102-4797

Re:   Request for Depublication
      *Glaski v. Bank of America, N.A., et al.*,
      California Court of Appeal, Fifth Appellate District - Case No. F064556

To:   The Honorable Chief Justice and Associate Justices of the California Supreme Court

We represent Deutsche Bank National Trust Company, solely in its capacity as trustee (the "Trustee") of the relevant residential mortgage-backed ("RMBS") trusts, as a defendant in the cases *Rajamin v. Deutsche Bank Nat'l Trust Co.*, No. 10-cv-7531 (LTS) (S.D.N.Y.), on appeal, 13-1614-cv (2d Cir.) ("*Rajamin*") and *Tran v. Bank of New York*, No. 13-cv-580 (RPP) (S.D.N.Y.) ("*Tran*").

With all due respect to the Court of Appeal, Fifth District, California (the "Court"), we write to request depublication of the Court's opinion in *Glaski v. Bank of America, N.A., et al.*, 218 Cal. App. 4th 1079, 2013 WL 4037310, issued on July 31, 2013 and certified for publication on August 8, 2013 (the "Opinion"). This request is made pursuant to Rule of Court 8.1125.

### Background

In *Glaski*, the plaintiff/mortgagor brought a wrongful foreclosure claim against an RMBS trustee, among others, relating to the non-judicial foreclosure upon plaintiff's mortgage loan. In sum, the plaintiff alleged that the "attempted" assignment of his mortgage loan to an RMBS trust was made after the closing date in the pooling and servicing agreement (the "PSA") for that RMBS trust, and, therefore, the assignment was ineffective. The plaintiff argued that this deprived the party that had foreclosed upon his mortgage loan of the standing to do so because it was not the true owner of his loan. The trial court dismissed all of plaintiff's claims. The Court reversed.

The Court found that a mortgagor (who obviously was not a party to or a third-party beneficiary of the agreements at issue there) had standing to challenge an alleged defect in an assignment if the defect rendered the assignment void, and not merely voidable. *Glaski*, 2013 WL 4037310 (hereinafter, "*Glaski*"), at *9-10. The Court next analyzed whether the assignment was "void." For this purpose, the Court assumed (albeit incorrectly) that the RMBS trust was formed under New York law. *Glaski*, at *10. The Court thus found that New York law governed the

Chief Justice Tani G. Cantil-Sakauye
  and the Associate Justices
October 7, 2013
Page 2

**Morgan Lewis**
COUNSELORS AT LAW

operation of the trust, and then examined the New York Estates, Powers & Trusts Law ("NY EPTL"), and specifically Section 7-2.4 thereof. Section 7-2.4 provides that: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." Importantly, the Court recognized that the purpose of this provision was to protect trust beneficiaries from unauthorized actions by the trustee. Glaski, at *10.

The Court then reasoned that because the RMBS trust was created by a PSA with a closing date after which the trust could no longer accept mortgage loans, NY EPTL § 7-2.4 provided a legal basis for concluding that the RMBS trustee's attempt to "accept" plaintiff's mortgage loan after the closing date would be void as an act in contravention of the trust document (i.e., the PSA). Glaski, at *11. Based upon the foregoing, the Court concluded that the plaintiff had sufficiently stated a basis for concluding that the assignment was void, thus depriving the party that brought the non-judicial foreclosure of the standing to do so.

* * *

We note that a New York trial court decision upon which Glaski relied, Wells Fargo Bank, N.A. v. Erobobo, No. 31648/09, 2013 WL 1831799 (Sup. Ct. Kings Cty. Apr. 29, 2013), has been appealed to the New York Appellate Division, Second Department.[1] We also note that the decision granting the Trustee's motion to dismiss in the Rajamin case referenced above[2] is currently on appeal to the Second Circuit Court of Appeals, is fully briefed, and is already scheduled for oral argument (on November 20, 2013). Also, in the Tran case referenced above, defendants have filed a motion to dismiss. In both of these two cases, the plaintiffs have raised NY EPTL § 7-2.4 and relied upon Glaski. Thus, New York courts may shortly be considering issues concerning the NY EPTL that were (as explained below, unnecessarily) decided in Glaski.

For the reasons demonstrated below, the Glaski Opinion should be depublished.

## I.   THE *GLASKI* COURT ERRED IN APPLYING NEW YORK TRUST LAW

The Opinion should be depublished because it is, for all intents and purposes, the equivalent of an advisory opinion concerning New York law—and it gets New York law wrong. The Court never needed to delve into an interpretation of the NY EPTL because the basis for that foray was incorrect—the PSA at issue in Glaski was not governed by New York law. The PSA, which is available on the SEC's website,[3] states that the RMBS trust at issue in Glaski is a Delaware Statutory Trust, organized under the Delaware Statutory Trusts Statute, 12 Del. Code Ann. §§ 3801, et seq., and is governed by Delaware law. See, e.g., PSA § 10.05. Nor did the Court appear to have the benefit of briefing on the NY EPTL issue prior to rendering the Opinion.[4]

---

[1]   See N.Y. Appellate Division, Second Department, Appeal No. 2013-06986.

[2]   Rajamin v. Deutsche Bank Nat'l Trust Co., No. 10-cv-7531, 2013 WL 1285160 (S.D.N.Y. Mar. 28, 2013).

[3]   See   http://www.sec.gov/Archives/edgar/data/1347345/000127727706000004/psa2005ar17.pdf.

[4]   This New York trust law issue does not appear to have been addressed in the parties'
(Continued note)

Chief Justice Tani G. Cantil-Sakauye
and the Associate Justices
October 7, 2013
Page 3

**Morgan Lewis**
COUNSELORS AT LAW

## II. IN ANY EVENT, THE *GLASKI* PLAINTIFF LACKED STANDING TO ASSERT ANY CLAIM BASED UPON ALLEGED NONCOMPLIANCE WITH THE PSA

Even if New York law applied to the Glaski plaintiff's claims (and it does not), the Glaski plaintiff still lacked standing to bring affirmative claims based upon alleged noncompliance with the alleged requirements of the PSA. If the agreement at issue (i.e., the PSA) was governed by New York law, then New York law would also govern which parties have prudential standing to assert a claim based upon the PSA (that is, only parties to the PSA or third-party beneficiaries thereof). Yet, as one District Court in New York recently noted, when interpreting PSAs that are actually governed by New York law, "[t]he weight of caselaw throughout the country holds that a non-party to the PSA lacks standing to assert noncompliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA." Rajamin, 2013 WL 1285160, at *3.

This accords with the well-settled principle of New York law that a litigant that is neither a party to, nor an intended third-party beneficiary of, an agreement lacks standing to complain about alleged noncompliance with the agreement's provisions. See Premium Mortg. Corp. v. Equifax Inc., 583 F.3d 103, 108 (2d Cir. 2009); Karamath v. U.S. Bank, N.A., No. 11-cv-1557, 2012 WL 4327613, *7 (E.D.N.Y. Aug. 29, 2012), report and recommendation adopted, 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012); Cimmering v. Merrill Lynch Mortg. Investors, Inc., No. 8727/11, 2012 WL 2332358, *9 (Sup. Ct. N.Y. Cty. June 13, 2012) (dismissing declaratory judgment claim that was premised upon defendant RMBS trustee's noncompliance with a PSA because plaintiffs lacked standing to assert such a claim given that "they [were] not parties to [the] contract, [and did not] allege that they [were] third-party beneficiaries to the agreement.").

For example, in Karamath, the plaintiff's mortgage loan was conveyed to an RMBS trustee as part of a RMBS securitization transaction. 2012 WL 4327613, *1. After plaintiff defaulted on that loan, foreclosure proceedings against the plaintiff's mortgage loan were instituted in the name of the RMBS trustee. Plaintiff brought a separate action asserting causes of action against the RMBS trustee seeking to set aside the assignment of her mortgage and to enjoin the foreclosure proceeding. Karamath, 2012 WL 4327613, *2. Plaintiff alleged that the RMBS trustee had no legal or equitable interest in her mortgage loan because the conveyance of the loan into the RMBS trust was invalid under the provisions of the applicable PSA. Id., *7. The Court dismissed the plaintiff's claims, noting that "plaintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no

---

original briefs (which are available on Westlaw). Per its online docket, it also appears that the Court *sua sponte* then asked the parties to address this issue at oral argument, but did not request—and did not receive—further briefing on the issue prior to rendering the Opinion. Whether or not this procedure comported with Cal. Govt. Code § 68081, see People v. Alice, 41 Cal.4th 668, 679 (2007) (holding that oral argument alone was an insufficient opportunity for the parties to address an issue), it did not provide the Court with adequately developed arguments warranting a published opinion on this New York trust law issue.

Chief Justice Tani G. Cantil-Sakauye
  and the Associate Justices
October 7, 2013
Page 4

**Morgan Lewis**
COUNSELORS AT LAW

standing to challenge the validity of that agreement or the assignment." Id. As explained more fully below, the Court also rejected and dismissed the plaintiff's claim that the assignment of her mortgage loan was invalid because it did not comply with the NY EPTL. Id.

The Glaski plaintiff indisputably is not a party to the PSA at issue in that case. Nor does it appear that he even claimed to be. Thus, he may rely upon the PSA only if he was clearly an intended third-party beneficiary of the PSA. Premium Mortg. Corp., 583 F.3d at 108 (third-party status only exists if the terms of the agreement "clearly evidence an intent to permit enforcement by the third party.") (quotation omitted); Rajamin, 2013 WL 1285160, at *3. That was not the case either. As such, the Court should have held that the Glaski plaintiff's claims were properly dismissed because they were all based upon alleged noncompliance with the PSA.

Indeed, a "judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement." In re Walker, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012). This appears to be the prevailing view of federal courts in California also. Gilbert v. Chase Home Finance, LLC, No. 13-cv-265, 2013 WL 2318890, *3 (C.D. Cal. May 28, 2013) ("A majority of district courts have held that plaintiffs who are not parties to a PSA do not have standing to raise violations of a PSA or to otherwise bring claims on the basis that a PSA was violated."); see also Maynard v. Wells Fargo Bank, N.A., 12-cv-1435, 2013 WL 4883202, *10-11 (S.D. Cal. Sept. 11, 2013); Almutarreb v. Bank of N.Y. Trust Co., N.A., No. 12-cv-3061, 2012 WL 4371410, *2 (N.D. Cal. Sept. 24, 2012) (holding that "because Plaintiffs were not parties to the PSA, they lack standing to challenge the validity of the securitization process, including whether the loan transfer occurred outside of the temporal bounds prescribed by the PSA.").[5]

Moreover, every federal appellate court opinion that the Trustee's counsel could identify thus far that has actually decided this issue has held that a plaintiff/mortgagor lacks standing to bring an affirmative claim challenging the assignment of her or his mortgage loan that is based upon alleged noncompliance with a PSA.[6]

---

[5] See also Bernardi v. Deutsche Bank Nat. Trust Co. Am., No. 11-cv-5453, 2013 WL 163285, *4 (N.D. Cal. Jan. 15, 2013); Dinh v. Citibank, N.A., No. 12-cv-1502, 2013 WL 80150, *3 (C.D. Cal. Jan. 7, 2013).

[6] See Reinagel v. Deutsche Bank Nat'l Trust Co., 722 F.3d 700, 708 (5th Cir. July 11, 2013) (dismissing claim by plaintiff/mortgagor against RMBS trustee seeking to enjoin a foreclosure based upon the theory that the mortgage assignment was invalid because it was recorded after the closing date in the PSA; because "[plaintiffs] concede that they are not [a] party to the PSA, they have no right to enforce its terms unless they are its intended third-party beneficiaries."); Robinson v. Select Portfolio Serv'g, Inc., No. 12-1768, 2013 WL 1405201, *3-4 (6th Cir. Apr. 9, 2013) (plaintiff/mortgagors lacked standing to allege unfair practices against RMBS trustee challenging the assignment of their mortgage (based upon a theory that their mortgage was allegedly added to the RMBS trust after the closing date specified in PSA) because they were not parties to, or third-party beneficiaries of, the assignment or PSA); Smith
(Continued note)

Chief Justice Tani G. Cantil-Sakauye
and the Associate Justices
October 7, 2013
Page 5

**Morgan Lewis**
COUNSELORS AT LAW

It is also noteworthy that the Court in Glaski relied upon a single New York trial court decision to support its finding that a plaintiff can assert an affirmative claim based upon alleged noncompliance with the alleged requirements of a PSA. Wells Fargo Bank, N.A. v. Erobobo, No. 31648/09, 2013 WL 1831799 (Sup. Ct. Kings Cty. Apr. 29, 2013). However, the decision in Erobobo does not stand for that proposition. There, the mortgagor was not a plaintiff asserting a cause of action based upon alleged noncompliance with a PSA; he was a defendant in a foreclosure action, brought in the name of an RMBS trustee, who was asserting an affirmative defense. In that context, the plaintiff RMBS trustee moved for summary judgment, and thus bore the burden of proving that there were no questions of fact that it indeed owned the plaintiff/mortgagor's mortgage loan. The defendants in Glaski bore no such burden.[7]

Moreover, Erobobo (which is on appeal) is contrary to other, more well-reasoned New York cases that espouse the overwhelming majority view. Rajamin, 2013 WL 1285160, at *3;

---

v. Litton Loan Servicing, LP, No. 12-1684, 2013 WL 888452, *2 (6th Cir. Mar. 12, 2013) (dismissing claims asserting that RMBS trustee did not own plaintiff's mortgage loan because assignment of the mortgage to the trust occurred after the closing date specified in the PSA; plaintiff lacked standing to assert such claims because he "was neither a party nor a third-party beneficiary to the [PSA], so even if its terms were violated, [plaintiff] may not challenge compliance with the [PSA]"); Karnatcheva v. JP Morgan Chase Bank, N.A., 704 F.3d 545, 547 (8th Cir. 2013) (plaintiff/mortgagors lack standing to assert a declaratory judgment claim challenging the assignment of their mortgage loan based upon alleged noncompliance with a PSA because they are not parties to, or third-party beneficiaries of, the PSA); Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 399 F. App'x 97, 102-03 (6th Cir. 2010) (a plaintiff/mortgagor "who is not a party to an assignment" lacks standing to challenge a defendant's ownership of their mortgage loan based upon noncompliance with a PSA that allegedly rendered assignment invalid); In re Cook, 457 F.3d 561, 567-68 (6th Cir. 2006) (dismissing plaintiff's claim against RMBS trustee seeking a declaration that the trustee did not have a perfected security interest in the property because of alleged noncompliance with the "Trust Agreement," which required the assignment to be recorded, because plaintiff lacked standing to enforce the Trust Agreement); In re Marks, No. 12-cv-1140, 2012 WL 6554705, *10 (9th Cir. B.A.P. Dec. 14, 2012) (plaintiff/mortgagor lacked standing to assert claim against RMBS trustee challenging the validity of an assignment of her mortgage loan into RMBS trust because assignment occurred after closing date specified in PSA); In re Correia, 452 B.R. at 324-25 (dismissing plaintiff/mortgagors' claim against RMBS trustee challenging mortgage assignment to RMBS trust based upon alleged noncompliance with the PSA because plaintiffs lacked standing to assert such a claim; standing requirements mandate that a litigant assert only its own rights and not those of a third party).

[7] One court's apt explanation of the standing concept distinguishes the situation presented in Erobobo from the one at issue in Glaski. See Williams v. Rickard, No. 09-cv-535, 2011 WL 2116995, *5 (D. Haw. May 25, 2011) ("The banks need not establish that they are the legal owners of [plaintiff's] loans before they defend against [plaintiff's] claims. 'Standing' is a plaintiff's requirement, and [plaintiff] misconstrues the concept in arguing that Defendants must establish 'standing' to defend themselves.").

Chief Justice Tani G. Cantil-Sakauye
and the Associate Justices
October 7, 2013
Page 6

**Morgan Lewis**
COUNSELORS AT LAW

Karamath, 2012 WL 4327613, *7; Cimmering, 2012 WL 2332358, *9. Accordingly, under New York law, the Glaski plaintiff lacked standing to assert an affirmative claim based upon alleged noncompliance with the PSA.

### III.  THE *GLASKI* PLAINTIFF ALSO LACKED STANDING TO CHALLENGE THE ASSIGNMENT OF HIS DEED OF TRUST

Because the Glaski plaintiff was neither a party to nor a third-party beneficiary of the assignment of his deed of trust ("DOT"), he likewise lacked standing to challenge that assignment, as New York courts have held. See, e.g., Karamath, 2012 WL 4327613, *7 ("plaintiff is not a party to the…Assignment of Mortgage, and is not a third-party beneficiary…either, and therefore has no standing to challenge the validity of that… assignment."); see also Utreras v. Aegis Funding Corp., No. 13-cv-291, 2013 WL 789614, *2 (E.D.N.Y. Mar. 1, 2013) (dismissing claims against RMBS trustee; "if one party purported to assign [a] mortgage to another party, but actually failed to do so, there could be a genuine dispute between the putative assignee and assignor…but [p]laintiff [who is not a party to the assignment] would have no standing in such a dispute.").

### IV.  THE NY EPTL DID NOT ALLOW THE *GLASKI* PLAINTIFF TO CIRCUMVENT THE STANDING REQUIREMENT

In Glaski, the plaintiff argued that he had standing to challenge the assignment of his mortgage loan as void because it was submitted to the RMBS trust at issue there after the closing date specified in the PSA, purportedly in contravention of the PSA and NY EPTL § 7-2.4. That argument, which the Glaski Court accepted, is without legal basis under New York law.[8] First, under New York trust law, persons that are not beneficiaries of a trust lack standing to challenge the actions of the trustee. Second, even assuming, arguendo, that the assignment of the Glaski plaintiff's mortgage loan was in contravention of the PSA and NY EPTL § 7-2.4 based upon the timing of the assignment, the assignment would be merely "voidable," not void.

---

[8] Numerous courts have rejected the argument that a plaintiff has standing to challenge the assignment of her or his mortgage loan as void because some loan-related document was submitted to the RMBS trust after the PSA's closing date. See, e.g., Robinson, 2013 WL 1405201, *3-4 (plaintiff/mortgagors lacked standing to allege unfair practices against RMBS trustee challenging the assignment of their mortgage (based upon a theory that their mortgage was allegedly added to the RMBS trust after the closing date specified in PSA) because they were not parties to, or third-party beneficiaries of, the assignment or PSA); Smith, 2013 WL 888452, *2 (dismissing claims asserting that RMBS trustee did not own plaintiff's mortgage loan because assignment of the mortgage to the trust occurred after the closing date specified in the PSA, plaintiff lacked standing to assert such claims); In re Marks, 2012 WL 6554705, *10 (plaintiff/mortgagor lacked standing to assert claim against RMBS trustee challenging the validity of an assignment of her mortgage loan into RMBS trust because assignment occurred after closing date specified in PSA); Almutarreb, 2012 WL 4371410, *2 (holding that "because Plaintiffs were not parties to the PSA, they lack standing to challenge the validity of the securitization process, including whether the loan transfer occurred outside of the temporal bounds prescribed by the PSA.").

Chief Justice Tani G. Cantil-Sakauye
 and the Associate Justices
October 7, 2013
Page 7

**Morgan Lewis**
COUNSELORS AT LAW

Therefore, the general rule that a non-party to an assignment lacks standing to challenge the validity of a voidable (rather than void) assignment would still apply.

### A. Non-Beneficiaries Of A New York Trust Lack Standing To Challenge The Actions Of The Trustee

It has long been the rule, in New York and elsewhere, that only a beneficiary of a trust has standing to sue for a breach of that trust. See Restatement (Third) of Trusts, § 94 (2012) ("A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries."); see also 90A C.J.S., Trusts § 719 (2013) ("A suit to establish and enforce an express trust, on the trustee's failure or refusal to execute it properly, or his or her breach thereof, may and should be brought and maintained, ordinarily, by the trust beneficiary or those representing or claiming under him or her.").

Thus, New York courts, including its highest court, consistently find that litigants who are not beneficiaries of a trust lack standing to enforce the trust's terms or to challenge the actions of the trustee. See In re Estate of McManus, 47 N.Y.2d 717, 718, 417 N.Y.S.2d 55, 56 (1979) (those "not beneficially interested" in a trust lack standing to challenge the actions of the trustee); Cashman v. Petrie, 14 N.Y.2d 426, 430-31, 252 N.Y.S.2d 447, 449-50 (1964) (litigant who was not a trust beneficiary could not sue to enforce a trust); Naversen v. Gaillard, 38 A.D.3d 509, 509, 831 N.Y.S.2d 258, 259 (3rd Dept. 2007) ("[S]ince the defendants were not beneficiaries of the [trust], they lacked standing to challenge the actions of the plaintiff as its trustee.").

Because the Glaski plaintiff was not a beneficiary of the trust (or even a third-party beneficiary of the PSA), he lacked standing to bring any claim either explicitly or implicitly challenging the actions of the trustee of that trust.

### B. Even If The Assignment Of The *Glaski* Plaintiff's Mortgage Loan To The Trust Was In Contravention Of The PSA And NY EPTL, He Still Lacked Standing To Challenge It Because That Assignment Would Be Merely Voidable, Not Void

NY EPTL § 7-2.4 provides that, "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." NY EPTL § 7-2.4. Several courts have recognized that, although a third party generally lacks standing to challenge the validity of an assignment, a borrower may raise a defense to an assignment if that defense renders the assignment void. The Glaski Court found that the plaintiff there fell under this exception to the standing requirement because the alleged noncompliance with the PSA rendered the assignment void under NY EPTL § 7-2.4. In doing so, the Court relied upon a single New York state trial court opinion, Erobobo, 2013 WL 1831799, which found, with very little analysis, that the trustee's mere receipt of the mortgage loan exceed its authority and was therefore "void" under the NY EPTL. First, as demonstrated above, Erobobo was a foreclosure case brought in the name of the RMBS trustee in which, as plaintiff, the RMBS trustee had the burden of affirmatively proving that it owned the defendant's mortgage loan. No such requirement was present in Glaski.

Chief Justice Tani G. Cantil-Sakauye
and the Associate Justices
October 7, 2013
Page 8

**Morgan Lewis**
COUNSELORS AT LAW

Second, even assuming that such acts would contravene the PSA, courts that have conducted any meaningful analysis of the NY EPTL issue raised in Glaski have concluded that, notwithstanding the statute's reference to an act being "void," a breach of the terms of a PSA would, at most, render an assignment voidable, not void, and that mortgagors lack standing to bring claims based upon merely voidable assignments. A void contract is "invalid or unlawful from its inception," while a voidable contract "is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." 17A C.J.S., Contracts § 169 (2013); 22 N.Y. Jur. 2d, Contracts § 8 (2013) ("A void contract is no contract at all; it binds no one and is a mere nullity. A void contract requires no disaffirmance to avoid it....Using the term in its exact sense and limiting it to the parties themselves, a void contract is binding upon neither and cannot be ratified....Contracts are held to be voidable when one of the parties has the power either to avoid or to validate the agreement."). New York courts have thus held that *ultra vires* acts by trustees are merely voidable because they can be ratified by the trust's beneficiaries. See, e.g., Mooney v. Madden, 193 A.D.2d 933, 933-34, 597 N.Y.S.2d 775, 776 (3d Dept 1993) (holding that "[a] trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement"); Washburn v. Rainer, 149 A.D. 800, 803, 134 N.Y.S. 301, 302 (2d Dept. 1912) ("If a trustee in contravention of his trust dispose of his trust property, the beneficiary can elect to regard the act as for or against his advantage..."); Hine v. Huntington, 118 A.D. 585, 592, 103 N.Y.S. 535, 540 (4th Dept. 1907) (trust beneficiary "is at perfect liberty to elect to approve an unauthorized investment and enjoy its profits, or to reject it at his option."); 106 N.Y. Jur. 2d, Trusts § 431 (2013) (a "[t]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's ultra vires act or agreement.").

Indeed, after conducting an exhaustive examination of New York law, including the NY EPTL, the Illinois Court of Appeals in Bank of Am. Nat'l Ass'n v. Bassman FBT, L.L.C., 981 N.E.2d 1, 8 (Ill. Ct. App. 2012), found that, because a beneficiary of a trust can ratify a trustee's *ultra vires* act, that act is merely voidable rather than void. Id. Moreover, the Bassman court found that the beneficiaries of the trust need not actually ratify the act to preclude mortgagors from bringing a claim—the mortgagors "have standing to attack the transaction only if it is void, regardless of whether it was in fact ratified." Id., at 9. "[S]everal New York courts have applied the rule that a beneficiary can ratify a trustee's *ultra vires* act. Where an act can be ratified it is voidable rather than void. Accordingly, these cases indicate that *ultra vires* transactions are voidable rather than void." Id.

Several other courts have recently undertaken this analysis and have held that NY EPTL § 7-2.4 does not provide plaintiff/mortgagors with the standing they otherwise lack to assert a claim based upon alleged noncompliance with a PSA. One such case analyzed Erobobo and explicitly rejected its analysis. See Koufos v. U.S. Bank, N.A., No. 12-cv-10743, 2013 WL 1189502, *13, n.2 (D. Mass. July 1, 2013) ("The heft of Erobobo's statutory argument was considered and rejected by the detailed analysis of this issue in Bassman"). Several other courts examined the NY EPTL and the underpinnings of the Erobobo opinion and have concluded that the NY EPTL does not provide mortgagors with the standing that they lack. See Karamath, 2012 WL 4327613, *7 (rejecting plaintiff's claim based upon the NY EPTL because plaintiff lacked standing to assert a claim based upon noncompliance with the PSA); Green v. Bank of Am.

Chief Justice Tani G. Cantil-Sakauye
  and the Associate Justices
October 7, 2013
Page 9

**Morgan Lewis**
COUNSELORS AT LAW

N.A., No. 13-cv-1092, 2013 WL 2417916, *2 (S.D. Tex. June 4, 2013) ("Courts applying New York law have treated actions by trustees as voidable. [citing Mooney] Because assignments made after the trust's closing date are voidable, rather than void, [plaintiff] likely lacks authority to challenge the assignments of his mortgage."); Sigaran v. U.S. Bank Nat'l Ass'n, No. 12-cv-3533, 2013 WL 2368336, *3 (S.D. Tex. May 29, 2013) (analyzing a mortgagor's arguments under the NY EPTL, and holding that "assignments made after the [RMBS] Trust's closing date are voidable, rather than void."); Deutsche Bank Nat'l Trust Co. v. Stafiej, No. 10-cv-50317, 2013 WL 1103903, *3 (N.D. Ill. Mar. 15, 2013) ("After reviewing the pertinent New York authority on section 7-2.4, this court agrees with the analysis in Bassman and holds that section 7-2.4 only makes an act by the [RMBS] trustee in contravention to the trust instrument voidable, not void."); Keyes v. Deutsche Bank Nat'l Trust Co., 921 F. Supp. 2d 749, 755 (E.D. Mich. 2013).

Recently, in reliance on the New York authorities cited above, yet another court held that:

> New York courts have made clear that a beneficiary can ratify a trustee's ultra vires act. ... If an act may be ratified, it is voidable rather than void. See Hacket v. Hackett, 950 N.Y.S.2d 608, 2012 WL 669525, at *20 (N.Y. Sup. Ct. Feb. 21, 2012) ("A void contract cannot be ratified; it binds no one and is a nullity. However, an agreement that is merely voidable by one party leaves both parties at liberty to ratify the transaction and insist upon its performance.") (quoting 27 Williston on Contracts § 70:13 [4th ed.] ) (internal quotation marks omitted). ...
>
> Because a trustee's unauthorized transactions may be ratified, such transactions are voidable—not void. Thus, even if it is true that the Notes were transferred to the trust in violation of the trust's terms, that transaction could be ratified by the beneficiaries of the trust and is therefore merely voidable. ... Accordingly, since even an after-the-deadline transfer of the Notes to the trust would merely be voidable at the option of the trust's beneficiaries, Plaintiff has no standing to challenge that assignment.

Omrazeti v. Aurora Bank, FSB, No. 12-cv-730, 2013 WL 3242520, *6-7 (W.D. Tex. June 25, 2013).

NY EPTL § 7-2.4 does not provide the Glaski plaintiff with the standing he otherwise lacked.

## V. THE OPINION ACTUALLY HARMS BENEFICIARIES OF THE TRUST

The Court "believe[d] applying the statute to void the attempted transfer is justified because it protects the beneficiaries of the [trust] from the potential adverse tax consequences of the trust losing its status as a REMIC trust under the Internal Revenue Code." Glaski, *7. As explained below, the trust's REMIC status was never in jeopardy, and, contrary to the Court's belief, the Opinion harms, rather than protects, the trust's beneficiaries.[9]

---

[9]   The Court even recognized that its interpretation may have the effect of harming, rather than protecting, the beneficiaries of the RMBS trust. Glaski, *11. The Court's focus on
(Continued note)

Chief Justice Tani G. Cantil-Sakauye
and the Associate Justices
October 7, 2013
Page 10

**Morgan Lewis**
COUNSELORS AT LAW

First, the Court focused on the subsequent, separate written assignment of the Glaski DOT (the "Assignment") and incorrectly believed that that document was necessary to convey the plaintiff's mortgage loan. As a result, the Court assumed that because the Assignment was recorded in 2008 (three years after the closing date of the PSA (2005)), the mortgage loan had not been conveyed to the trust until 2008, which could create adverse tax consequences for the trust and its beneficiaries. This is incorrect. Pursuant to Section 2.04 of the Glaski PSA, by virtue of the PSA itself and as of its closing date, the mortgage loans, notes, and DOTs in the trust were irrevocably "s[old], transfer[red], assign[ed], set over and otherwise convey[ed] to the Trust, without recourse ... ." Thus, as of the closing date in the PSA (as opposed to the date the Assignment was recorded), the trustee of the trust became the legal owner of the Glaski plaintiff's mortgage loan, note, and DOT. Any subsequent, confirmatory assignment of his DOT was surplusage and would not implicate the trust's REMIC status because no new assets were conveyed to the trust by virtue of the Assignment. In re Wright, No. 10-cv-3893, 2012 WL 27500, *3 (D. Haw. Jan. 5, 2012) (after the assignment of a mortgage in the RMBS trust agreement, the "formal assignment of the mortgage at a later date is surplusage.").

Second, the Court's belief that its Opinion protects the interests of the trust's beneficiaries is wrong. To the contrary, the Opinion, which has already begun to create false hope among defaulted mortgagors that a new avenue of attack on non-judicial foreclosures now exists, will lead to more baseless challenges to foreclosures in California (and elsewhere). This frustrates the purposes of the non-judicial process.[10] The substantial costs and expenses incurred in defending against wrongful foreclosure actions ultimately will be borne by the beneficiaries of the RMBS trusts. See PSA § 3.09. Far from "protecting" their interests, the Opinion will likely lead to a substantial drain on trust assets that, net of expenses, belong to the beneficiaries.

Respectfully submitted,

Bernard J. Garbutt III

---

potential adverse tax consequences to the beneficiaries missed the mark. If such consequences could befall the beneficiaries, that might provide them with an injury to satisfy Article III standing, but it would not provide such standing to the Glaski plaintiff.

[10] Although the Opinion may impact thousands of RMBS securitization transactions, and also foreclosures in many states, the impact in California will be particularly acute. For example, the Glaski RMBS trust contains more than 2,500 mortgage loans, 72% of which relate to California properties.

Morgan Lewis
COUNSELORS AT LAW

## CERTIFICATE OF SERVICE

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 years and not a party to the within action. My business address is Morgan, Lewis & Bockius LLP, One Market, Spear Tower, San Francisco, California 94105.

On October 7, 2013, I served the attached **LETTER REQUESTING DEPUBLICATION DATED OCTOBER 7, 2013**, on the parties in this action by placing a true copy thereof in sealed envelopes, addressed as follows:

### SEE ATTACHED SERVICE LIST

Regarding those parties designated as being served by "Fax," I transmitted via facsimile the document(s) listed above to the fax number(s) shown for those parties on this date before 5:00 p.m.

Regarding those parties designated as being served by "Overnight Delivery," I delivered each such sealed envelope to a Federal Express office for processing and delivery the next business day.

Regarding those parties designated as being served by "Hand Delivery," I caused the envelope(s) to be delivered by hand to the addressee(s) noted above by delivering said envelope an authorized courier or driver to be delivered on the same date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 7, 2013, at San Francisco, California.

Lynda Rosenblatt

Morgan Lewis
COUNSELORS AT LAW

## SERVICE LIST

| | |
|---|---|
| SUPREME COURT OF THE STATE OF CALIFORNIA<br>350 McALLISTER STREET<br>SAN FRANCISCO, CA 94102-4797 | Original and 2 copies<br>[one to be conformed]<br><br>[Hand Delivery] |
| CATARINA BENITEZ, ESQ.<br>LAW OFFICES OF CATARINA M. BENITEZ<br>2014 TULARE STREET, SUITE 400<br>FRESNO, CA 93721 | Attorney for Appellant Thomas A. Glaski<br>Tel: 559-472-7337<br>Fax: 559-579-1100<br><br>[1 copy by Overnight Delivery, 1 copy by Fax] |
| RICHARD L. ANTOGNINI<br>LAW OFFICES OF RICHARD L. ANTOGNINI<br>819 "I" STREET<br>LINCOLN, CA 95648-1742 | Attorney for Appellant Thomas A. Glaski<br>Tel: 916-645-7278<br>Fax: 916-290-0539<br><br>[1 copy by Overnight Delivery, 1 copy by Fax] |
| SUPERIOR COURT OF FRESNO COUNTY<br>B.F. SISK COURTHOUSE<br>1130 "O" STREET<br>FRESNO, CA 93721 | [1 copy by Overnight Delivery] |
| MIKEL GLAVINOVICH<br>ALVARADOSMITH<br>633 W. FIFTH STREET, SUITE 1100<br>LOS ANGELES, CA 90071 | Attorney for Defendants-Respondents<br>Tel: 213-229-2400<br>Fax: 213-229-2499<br><br>[1 copy by Overnight Delivery, 1 copy by Fax] |
| CALIFORNIA COURT OF APPEAL<br>FIFTH APPELLATE DISTRICT<br>2424 VENTURA STREET<br>FRESNO, CA 93721 | [1 copy by Overnight Delivery] |
| ALAN E. SCHOENFELD, *Pro Hac Vice*<br>NOAH LEVINE, *Pro Hac Vice*<br>LEAH LITMAN, *Pro Hac Vice*<br>WILMERHALE<br>7 WORLD TRADE CENTER<br>250 GREENWICH STREET<br>NEW YORK, NY 10007 | Attorney for Defendants-Respondents<br>Tel: 212-230-8800<br>Fax: 212-230-8888<br><br>[1 copy by Overnight Delivery, 1 copy by Fax] |