UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANH NGUYET TRAN, et al.,

                              Plaintiffs,                            13 Civ. 580 (RPP)

                - against -                                **OPINION & ORDER**

BANK OF NEW YORK, et al.,

                              Defendants.
------------------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

On April 15, 2013, an Amended Complaint[1] was filed by thirty-eight individuals and one limited liability company[2]— (collectively, the "Plaintiffs")—against trustees Bank of New York (now known as Bank of New York Mellon), Deutsche Bank National Trust Company, HSBC Bank USA National Association, U.S. Bank National Association, and Wells Fargo Bank National Association (the "Trustee Defendants"), as well as thirty-seven separate trusts[3] (the "Trust Defendants") (collectively, the "Defendants"). (Am. Compl. ¶¶ 1-4.)

---

[1] The original Complaint in this action was filed on January 25, 2013. (Compl., ECF No. 1.) Before serving any Defendant, the Plaintiffs filed their Amended Complaint on April 15, 2013. (Am. Compl., ECF No. 2.) It is the Amended Complaint that is operative here and that the Defendants seek to dismiss.

[2] Anh Nguyet Tran, Christina T. Soulamany, Lai Somchanmavong, Colleen Dwyer, Elaine Phan, Hoa V. Nguyen, Huan N. Tran, Hung V. Nguyen, Kay Aphayvong, Kim-Thuy Nguyen, Mai L. Pham, Minh A. Trinh, My-Hanh Huynh, Nhieu V. Tran, Patricia Gunness, Patricia S. Adkins, Peter Delamos, Peter Ha, Tina Le, Phokham Soulamany, Phetsanou Soulamany, Sarah M. Young, Suong Ngoc Nguyen, Long Le, Thai Christie, Thiem Ngo, Thuan T. Tran, Thu Lam Tran, Thuy-Trang Nguyen, Tri Thien Nguyen, Tuy T. Hoang, Thomas T. Hoang, Tuyen T. Thai, Tuyetlan T. Tran, Uyen T. Thai, Thong Ngo, Van Le, Vu Dinh, and Sequoia Holdings LLC. (Am. Compl. ¶ 1.)

[3] American Home Mortgage Assets (AHMA 2006-1), Securitized Asset Backed Receivables (SABR 2005-HE1), Impac Secured Assets Corp (IMSA 2006-5), Countrywide Alternative Loan Trust (CWALT 2005-17), CHL Mortgage Pass-Through Trust (CWHL 2007-HYB2), Alternative Loan Trust (CWALT 2006-OA6), RALI Series 2006-QS8 Trust (RALI 2006-QS8), CHL Mortgage Pass-Through Trust (CWHL 2005-HYB6), Citigroup Mortgage Loan Trust (CMLTI 2007-6), IXIS Real Estate Capital Trust (IXIS 2006-HE3), Lehman Mortgage Trust (LMT 2007-6), Merrill Lynch Mortgage Investors Trust (MLMI 2006-HE6), CWALT, Inc., Alternative Loan Trust (CWALT 2005-58), Opteum Mortgage Acceptance Corp. (OMAC 2005-1), GSAA Home Equity Trust (GSAA 2006-12), CHL Mortgage Pass-Through Trust (CWHL 2007-HY6), Citigroup Mortgage Loan Trust (CMLTI 2005-11), Fremont Home Loan Trust (FHLT 2005-1), Merrill Lynch Alternative Note Asset Trust (MANA 2007-A2), First Franklin Mortgage Loan Trust (FFML 2005-FF9), First Franklin Mortgage Loan Trust (FFML 2007-FF2), First Franklin Mortgage Loan Trust (FFML 2007-FFC), CHL Mortgage Pass-Through Trust (CWL 2005-11), CHL Mortgage Pass-Through Trust (CWHL 2007-3),

1

In their Amended Complaint, the Plaintiffs allege that the Defendants violated the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and that they conspired to violate Federal RICO, 18 U.S.C. § 1962(d).  (Id. ¶¶ 35-54.)  Finally, the Plaintiffs seek to enjoin the Defendants from foreclosing on any of the properties of Plaintiffs in this pending action.  (Id. ¶¶ 55-59.)

On August 2, 2013, the Trustee Defendants filed a joint motion to dismiss the Amended Complaint, or, in the alternative, to sever the Plaintiffs.  (Defs.' Mem. of Law in Supp. of Joint Mot. to Dismiss the Compl. or to Sever Pls. ("Defs.' Mot."), ECF No. 40.)  This motion was filed by the Trustee Defendants on their own behalves and on behalf of the Trust Defendants.[4]  (Id. at 3.)  On September 5, 2013, the Plaintiffs opposed the motion to dismiss.  (Pls.' Br. in Opp'n to Defs.' Mot. ("Pls.' Opp'n"), ECF No. 45.)  The Trustee Defendants filed a reply on October 7, 2013.  (Reply Mem. of Law in Supp. of Joint Mot. to Dismiss or to Sever ("Defs.' Reply"), ECF No. 48.)  Oral argument was held on this motion on November 5, 2013.  (Tr. of Nov. 5, 2013 Hr'g ("Tr. 11/5/13").)

I. BACKGROUND

The Plaintiffs are thirty-eight individuals and one limited liability company who own or owned residential real properties that have been the subject of foreclosure proceedings.  (Am. Compl. ¶ 1.)  The Plaintiffs mortgaged their properties at varying times between 2004 and 2007.

---

CWHEQ Home Equity Loan Trust (CWL 2007-S2), Bear Stearns ALT-A Trust Series (BALTA 2005-4), Structured Adj. Rate Mtg. Loan Trust (SARM 2008-8XS), Lehman XS Trust Mgt. Pass-Through Cert.( LXS 2005-2 ), GreenPoint Mortgage Funding Trust (GPMF 2005-AR4), Alternative Loan Trust (CWALT 2006-OA19), Banc of America Funding (BAFC 2006-6), CWALT, Inc., Alternative Loan Trust (CWALT-2005-22T1), Bear Stearns ALT-A Trust (BALTA 2006-3), CHL Mortgage Pass-Through Trust (CWHL 2006-HYB5), CSMC Mortgage-Backed Trust (CSMC 2006-5), Alternative Loan Trust (CWALT 2006-29T1), and GSAMP Trust (GSAMP 2006-HE1).  (Am. Compl. ¶¶ 3-4.)

[4] Trustee Defendants argue on behalf of the Trust Defendants because, under New York law, a trust is not a person that can sue or be sued, and litigation involving a trust must be brought by or against the trustee in its capacity as such. (Defs.' Mot. at 3 (citing Kirschbaum v. Elizabeth Ortman Trust, No. 03–24492, 2004 WL 1372542, at *2, 3 (N.Y. Sup. Ct. Mar. 10, 2004) (trustees "as legal owners of the trust estate generally sue and are sued in their own capacity" because the trust itself lacks capacity to act)).)

(Id., Ex. 1.)  The Trustee Defendants are trustees of residential mortgage-backed securities ("RMBS") trusts created under New York law for the purpose of pooling residential mortgage loans, including the Plaintiffs' mortgage loans, and issuing residential mortgage-backed securities to investors.  (Defs.' Mot. at 2.)  The Plaintiffs' mortgages were pooled and securitized at varying times between 2005 and 2007.  (Am. Compl., Ex. 1.)  The Trust Defendants are the RMBS trusts in which Plaintiffs allege that their mortgage loans are held.  (Id. ¶¶ 2, 5.)

Each of the Plaintiffs' RMBS trusts was formed pursuant to a Pooling Service Agreement ("PSA"), which is a contract that governs a RMBS trust.  (Id. ¶ 5.)  Generally, parties to a PSA include a "depositor", who conveys the loans to the RMBS trustee in return for the certificates, the RMBS trustee (here, the Trustee Defendants), who owns and holds mortgage loans in trust for investors who buy certificates backed by the pooled mortgage loans, and a "servicer", who sees to administrative tasks involving the individual mortgage loans, such as monthly payment collection and, in cases of default, foreclosure.[5]  (Defs.'s Mot. at 3 (citing Trust for the Certificate Holders of the Merrill Lynch Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp., 556 F.3d 100, 104-05 (2d Cir. 2009) (describing the role of the PSA in the mortgage securitization process)).)  A PSA governs the creation of the trust, the date of closing the trust, the date of the trust's formation, and what trustee actions are valid and invalid under the trust.  (Am. Compl. ¶ 17.)  In particular, each PSA provides for delivery of trust assets (consisting principally of promissory notes and mortgages) to the trustee in a particular manner on or before a specified closing date.  (Id. ¶18.)

---

[5] Although Plaintiffs' claims are based on the premise that it is the Trustee Defendants that collect their mortgage loan payments and execute foreclosure proceedings, that premise is factually incorrect.  The mortgage loan servicers "will collect the debt service payments on the loans and distribute the same to the investors" and "are responsible for enforcing the terms of a defaulted securitized loan.  This responsibility may include…foreclosing on the property."  Talcott Franklin & Thomas Nealon III, Mort. & Asset Based Sec. Litig. Handbook, §§ 5:111-5:112 (2013).

The parties agree that the PSAs follow a general template, and, at the Court's request, the Plaintiffs submitted a representative PSA, the PSA of Plaintiff Elaine D. Phan.[6] (Pls.' Letter of Nov. 6, 2013 ("Pls.' 11/6/13 Letter"), Ex. 3.)  Section 2.01 of that PSA provides for the delivery of "the Mortgage File for each Mortgage Loan listed in the Mortgage Loan Schedule" within thirty days of the closing date of May 27, 2005.  (Pls.' 11/6/13 Letter Ex.3, at I-6, I-31.)  Section 2.02 provides that the Trustee will deliver a certification form by the closing date, certifying its acceptance of the Mortgage Files, to the Depositor, the Master Servicer, and Countrywide, the seller of the Countrywide Mortgage Loans to the Depositor.  (Id. at I-7, II-5.)

The Plaintiffs' Amended Complaint alleges that the Defendants breached the PSAs, and that these breaches prevented the Trustee Defendants from acquiring ownership of the Plaintiffs' mortgage loans.  Specifically, the Amended Complaint alleges that, in violation of Sections 2.01 and 2.02 of the PSAs, "[t]he delivery of the trust funds to each defendant…was never completed on the date of closing or at any other date permitted under the PSA."  (Am. Compl. ¶¶ 18, 20.)  The Plaintiffs also assert that other "conditions for acquisition of the loan by the trust," prescribed by the PSAs, were never met by the Defendants.  (Id. ¶ 31.)

The Plaintiffs allege that the Defendants "each knew that each of them did not own" the Plaintiffs' mortgage loans and knew that they "never had standing to enforce the loans."  (Id. ¶ 21.)  The Defendants "fraudulently represented that the conditions [required by the PSA for the Defendants to acquire ownership of the mortgage loans] were met and/or concealed the fact that they were not met," (id. ¶ 31), and that based on these fraudulent representations, the Defendants "collected from the Plaintiffs payment of the mortgage[s] and enforced the mortgage payments,

---

[6] PSAs are filed publicly with the Securities and Exchange Commission as part of the securitization process.  Thus, the Phan PSA is also properly the subject of the Court's review as a publicly-available document filed with the Securities and Exchange Commission.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 773-74 (2d Cir. 1991) (Court considering motion to dismiss may rely on documents required to be filed with the Securities and Exchange Commission).

wrongfully foreclosing on the corresponding listed Plaintiffs or sought to foreclose on their properties." (Id. ¶ 14.)

In doing so, the Defendants acted in concert "among themselves and with other[s] such as the servicers of the loans, [and] the [D]efendants' attorneys who sought to enforce the loans." (Id. ¶ 34.) The Defendants "have known of the systematic violations, exemplif[ied] above for years, and in like manner had engaged in this pattern of racketeering for years." (Id.)

The Plaintiffs allege that the Defendants' wrongful collection efforts constitute violations of Federal RICO, 18 U.S.C. § 1962, and that the Defendants conspired to violate Federal RICO, 18 U.S.C. § 1962(d); and, finally, the Plaintiffs demand that the Defendants be enjoined from foreclosing on any of the properties of Plaintiffs in this pending action. (Id. ¶¶ 35-59.)

In their motion to dismiss, the Trustee Defendants argue: (1) that the Plaintiffs lack standing to maintain claims based on alleged breaches of the PSAs; (2) that the Amended Complaint fails to sufficiently allege a RICO violation by any Defendant; (3) that the Amended Complaint fails to allege a conspiracy to commit a RICO violation; (4) that the substantive RICO count and the conspiracy count are time-barred; (5) that the third count fails to identify a substantive claim for relief, and (6) that the all of the Plaintiffs are misjoined in this action. (Defs.' Mot. at 1-2.)

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint

for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The United States Supreme Court has recognized limits on the class of persons who have standing to invoke the federal courts' decisional and remedial powers. Specifically, the Court has held that a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). In ruling on a motion to dismiss for want of standing, the trial court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Id. at 501. Only if the plaintiff's standing does not appear from all materials of the record may the complaint be dismissed for want of standing. Id. at 502.

## III. ANALYSIS

### A. The Plaintiffs Do Not Have Standing to Assert Claims Based on Breaches of the PSAs

The Plaintiffs' Amended Complaint is predicated upon alleged breaches of the PSAs which, the Plaintiffs allege, made the assignment of their mortgage loans by the original lending institution to the Trustee Defendants invalid. (Am. Compl. ¶¶ 14, 21.) With full knowledge of the invalidity of this transfer, the Trustee Defendants allegedly "concealed" from the Plaintiffs the fact that they did not validly own the mortgage loans and sought to foreclose on certain of the Plaintiffs' properties, in violation of RICO and as part of a conspiracy to violate RICO. (Id. ¶¶ 35-54.) In their motion, the Trustee Defendants argue that the Plaintiffs are neither parties to nor third-party beneficiaries of the PSAs, and therefore lack standing to assert claims based on breaches of those agreements. (Defs.' Mot. at 5.) This argument has merit. Even construing the Amended Complaint in favor of the Plaintiffs, the Plaintiffs' standing to bring this action is lacking based on a careful review of the entire record. Therefore, the Amended Complaint must be dismissed.

The PSAs here are to be interpreted under the New York Estates, Powers, and Trusts Law ("EPTL"). (Pls.' 11/6/13 Letter, Ex. 3 § 10.03 (New York law governs the interpretation of the PSA); Pls.' Opp'n at 10; Defs.' Reply at 2.) New York courts interpreting the EPTL consistently hold that litigants who are not beneficiaries of a trust lack standing to enforce the trust's terms or to challenge the actions of the trustee. See In re Estate of McManus, 390 N.E.2d 773, 774 (N.Y. 1979) (individuals "not beneficially interested" in a trust lack standing to challenge the trustee's actions); Cashman v. Petrie, 201 N.E.2d 24, 26 (N.Y. 1964) ("A person who might incidentally benefit from the performance of a trust but is not a beneficiary thereof cannot maintain a suit to enforce the trust or to enjoin a breach."); Naversen v. Gaillard, 831 N.Y.S.2d 258, 259 (N.Y. App. Div. 2007) ("The Supreme Court properly determined that since the defendants were not beneficiaries of the G. Everett Gaillard Revocable Trust, they lacked standing to challenge the actions of the plaintiff as its trustee.").

The Amended Complaint does not allege that the Plaintiffs were parties to the PSAs, (see generally Am. Compl. ¶¶ 1-59), and the representative PSA provided by the Plaintiffs for the Court's review does not include any provision indicative of a party status for borrowers or mortgagors. (See generally Pls.' 11/6/13 Letter Ex.3.) Though the Second Circuit has not ruled directly on this issue, district courts in this Circuit and elsewhere have generally held that "a non-party to a PSA lacks standing to assert noncompliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third-party beneficiary of the PSA."[7] Rajamin

---

[7] In so holding, the Court in Rajamin stated that it was joining "the weight of the case law around the country." Rajamin, 2013 WL 1285160, at *3. Indeed, many federal courts, including several federal appellate courts, have held that a plaintiff-borrower lacks standing to bring any claim that is based upon alleged noncompliance with a PSA or the assignment of the plaintiff's mortgage loans. See, e.g., Robinson v. Select Portfolio Servicing, Inc., 522 F. App'x 309, 312 (6th Cir. 2013) (under Michigan law, plaintiffs/mortgagors lacked standing to allege unfair practices against RMBS trustee challenging the assignment of their mortgage based on alleged noncompliance with a PSA because they were not parties to, or third-party beneficiaries of, the assignment or the PSA); Karnatcheva v. JPMorgan Chase Bank, N.A., 704 F.3d 545, 547 (8th Cir. 2013) ("Under Minnesota law, mortgagors do not have standing to request declaratory judgments regarding trust agreements relating to mortgage-backed securities because the mortgagors are not parties to

v. Deutsche Bank Nat. Trust Co., No. 10 Civ. 7531 (LTS), 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013) (citing, inter alia, Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 717 F. Supp. 2d 724, 736-37 (E.D. Mich. 2010) ("For over a century, state and federal courts around the country have [held] that a litigant who is not a party to an assignment lacks standing to challenge that assignment."), aff'd, 399 F. App'x 97 (6th Cir. 2010)) ; see also Karamath v. U.S. Bank, N.A., No. 11 Civ. 1557 (RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) (mortgagor "is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary or either, and therefore has no standing to challenge the validity of that agreement or the assignment") adopted by No. 11 Civ. 1557 (NGG), 2012 WL 4327502 (E.D.N.Y. Sep. 20, 2012).  These cases have further held that for a party to be considered a third-party beneficiary to a PSA, the intent to render a non-party a third-party beneficiary must be clear from the face of the PSA.  Rajamin, 2013 WL 1285160, at *3 (internal citations omitted).

In an effort to establish their standing in the face of this case law, the Plaintiffs argue that the breaches of the PSAs, specifically, the transfers of ownership after the closing dates specified in the PSAs, rendered the conveyances void under Section 7-2.4 of the EPTL.  (Pls.' Opp'n at 9.) That section provides that "if the trust is expressed in the instrument creating the estate of the

---

or beneficiaries of the agreements."). See also Calderon v. Bank of America N.A., 941 F.Supp.2d 753, 766 (W.D. Tex. 2013) (holding that the plaintiffs did not have standing to challenge an after-the-deadline-transfer of a mortgage loan in violation of a PSA because the transfer would merely be voidable at the election of the parties to the PSA, not void); Abruzzo v. PNC Bank, N.A., No. 4:11–CV–735–Y, 2012 WL 3200871, *2 (N.D. Tex. July 30, 2012) (holding that the plaintiffs did not have standing to challenge the assignment of their mortgage on the ground that the assignment violated a PSA because the plaintiffs were not parties to the PSA); In re Correia, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (finding that debtors lacked standing to challenge the chain of title under a PSA because they could not show that they were a party to the contract); In re Almeida, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009)(same); Dauenhauer v. Bank of New York Mellon, No. 3:12–cv–01026, 2013 WL 2359602, *5 (M.D. Tenn. May 28, 2013) (collecting cases); Preciado v. Wells Fargo Home Mortg., No. 13–00382 LB, 2013 WL 1899929, *5 (N.D. Cal. May 7, 2013)("The weight of persuasive authority in this district is that a plaintiff has no standing to challenge foreclosure based on a loan's having been securitized."); Lester v. J.P. Morgan Chase Bank, No. C 12–05491 LB, 2013 WL 3146790, *6 (N.D. Cal. June 18, 2013) (same); Clark v. Lender Processing Services, Inc., 949 F.Supp.2d 763, 771 (N.D. Ohio 2013) (Plaintiffs lack standing to assert any claim based on allegedly faulty assignments of the notes and mortgages into the PSAs because Plaintiffs are not parties to the agreements).

trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." EPTL § 7-2.4. The Plaintiffs argue first that the conveyances are void under EPTL § 7-2.4, and, second, that because the conveyances are void under that section, they have standing, even as non-parties, to challenge the assignments. (Pls.' Opp'n at 7.)

First, though some courts have held that non-compliance with the terms of a PSA renders an assignment void under EPTL § 7-2.4, the weight of the case law holds that such an assignment is merely voidable, and therefore outside the scope of that section. A void contract is "invalid or unlawful from its inception," while a voidable contract "is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." 17A C.J.S. Contracts § 169. The Plaintiffs cite two cases that found that acceptance of the note and mortgage by a trustee after the closing date of the PSA renders an assignment void under EPTL § 7-2.4. Wells Fargo Bank, N.A. v. Erobobo, No. 31648/2009, 2013 WL 1831799 (N.Y. Sup. Ct. Apr. 29, 2013); Glaski v. Bank of America, Nat'l Ass'n, 218 Cal. Rptr. 3d 449 (Cal. Ct. App. 2013) (relying on Erobobo).

However, those cases run counter to better-reasoned cases, which apply the rule that a beneficiary can ratify a trustee's ultra vires act. See Mooney v. Madden, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993) ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement."); Washburn v. Ranier, 149 A.D. 800, 803 (N.Y. App. Div. 1912) (same); 106 N.Y. Jur. 2d Trusts § 431 ("the trustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's ultra vires act or agreement"). Where an act can be ratified, it is voidable

9

rather than void. See Hackett v. Hackett, No. 3338/2008, 2012 WL669525, at *20 (N.Y. Sup. Ct. Feb. 21, 2012) ("A void contract cannot be ratified; it binds no one and is a nullity. However, an agreement that is merely voidable by one party leaves both parties at liberty to ratify the transaction and insist upon its performance.") (internal citation omitted). Notably, trust beneficiaries need not actually ratify the act to render an act voidable and therefore outside the scope of EPTL § 7-2.4, rather, the fact that trust beneficiaries could ratify such an act is sufficient to render it voidable. Bank of America Nat'l Ass'n v. Bassman FBT, LLC, 981 N.E.2d 1, 9 (Ill. App. Ct. 2012).

Applied to the context of alleged non-compliance with the terms of a PSA, courts considering EPTL § 7-2.4 have held that "even if it is true that the Notes were transferred to the trust in violation of the trust's terms [after the closing date of the trust], that transaction could be ratified by the beneficiaries of the trust and is therefore merely voidable." Omrazeti v. Aurora Bank FSB, No. SA:12-CV-00730-DAE, 2013 WL 3242520, at *7 (W.D. Tex. June 25, 2013); see also Calderon, 941 F.Supp.2d at 766 (same); Bassman, 981 N.E.2d at 944 ("Hence, numerous cases, including several that specifically reference 7-2.4…indicate that under various circumstances a trustee's ultra vires acts are not void."). Following this case law, even assuming that the transfer of Plaintiffs' mortgages to their respective trusts violated the terms of their respective PSAs, the after-the-deadline transactions would merely be voidable at the election of one or more of the parties—not void.

Furthermore, even if the allegedly untimely conveyances were to be considered void under EPTL § 7-2.4, district courts in the Second Circuit have found that that section does not provide standing to mortgagors to challenge the conveyances. In Karamath, the plaintiff-mortgagor alleged that the trustee defendant had no legal or equitable interest in her loan because the assignment of the note was invalid, and the transfer was void under the EPTL. Karamath, 2012 WL 4327613, at *7.

The Eastern District nevertheless held that because the plaintiff was not a party to the PSA or to the Assignment of Mortgage, and was not a third-party beneficiary of either, she therefore had no standing to challenge the validity of that agreement or the assignment.[8] Id.; see also Rajamin, 2013 WL 1285160, at *3 ("Plaintiffs have not alleged any facts that would support plausibly a claim that they are intended third-party beneficiaries of the PSAs. Thus, Plaintiffs lack standing to challenge Defendants' alleged ownership of the Notes and [Deeds of Trust] or authority to foreclose based on non-compliance with the PSAs.").

Finally, the Plaintiffs argue that whether or not they are intended third-party beneficiaries of the PSAs is a "fact-laden issue" that cannot be determined within the context of the Defendants' motion to dismiss. (Pls.' Opp'n at 19.) However, Plaintiffs bear the burden to plead facts showing their intended third-party beneficiary status. Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009); Rajamin, 2013 WL 1285160, at *3. The Plaintiffs do not make any such factual allegations in the Amended Complaint. (See generally Am. Compl. ¶¶ 1-59.) Moreover, the Plaintiffs can only attain status as intended third-party beneficiaries if the PSAs themselves "clearly evidence[] an intent to permit enforcement" by them. Premium Mortg, 583 F.3d at 108 (quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208, 212 (N.Y. 1985)). The Plaintiffs point to no such provisions, and the Court's independent search has discovered none. (See generally Pls.' 11/6/13 Letter Ex.3.) While the Plaintiffs' Opposition argues that the PSAs place duties upon mortgage loan servicers to safeguard the Plaintiffs' properties from such perils as

---

[8] The foreclosure proceedings of the Plaintiffs are not a part of the record, so it is unclear whether the Plaintiffs have raised this issue in their underlying foreclosure proceedings, but Karamath additionally held that the proper time to raise the issue of ownership of the note is at the underlying foreclosure action, and mortgagors who do not raise it at that time waive their right to challenge the validity of the assignment. See Karamath, 2012 WL 4327613, at *7 ("To the extent plaintiff is arguing that [the trustee defendant] lacks standing to foreclose on the mortgage, that is an affirmative defense that plaintiff waived when she failed to assert it in the foreclosure action."). Because the Trustee Defendants have not raised this argument, this Court does not consider whether the Plaintiffs waived any right to argue that the assignment of their mortgages were invalid.

physical destruction and tax forfeiture, (Pls.' Opp'n at 19-20), the Plaintiffs fail to explain how such provisions would be intended to benefit them, as opposed to the RMBS certificateholders, for whom the Plaintiffs' properties constitute collateral securing their investment. Accordingly, the Plaintiffs have failed to allege that they are intended third-party beneficiaries of the PSAs, and they therefore lack standing to bring claims based on alleged breaches of those agreements.

For the foregoing reasons, the Plaintiffs have no standing to bring any claim based on alleged breaches of the PSAs, and, because the theory underlying the Plaintiffs' claims is untenable, any amendment of the Amended Complaint would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). Therefore, the Amended Complaint is dismissed with prejudice in its entirety. Furthermore, because the standing issue is dispositive, this Court need not reach the other issues raised in the motion to dismiss or the issue of severance.

## IV. CONCLUSION

For the reasons discussed herein, the Defendants' joint motion to dismiss the Amended Complaint is GRANTED. The Clerk of the Court is ordered to close this case.

IT IS SO ORDERED.

Dated:  New York, New York
       March 24, 2014

                                                                                          /s/

                                                         Robert P. Patterson, Jr.
                                                         United States District Judge

**Counsel for Plaintiffs:**

**Tomas Espinosa**
Tomas Espinosa, Esq
8324 Kennedy Blvd.,
North Bergen, NJ 07047
(201)-223-1803

Fax: (201)-223-1893
Email: drtomasespinosa@yahoo.com

**Counsel for Defendants:**

*Counsel for Bank of New York Mellon:*

**Christine B. Cesare**
Bryan Cave LLP (NY)
1290 Avenue of Americas
New York, NY 10104
(212) 541-2000x1228
Fax: (212) 904-0506
Email: cbcesare@bryancave.com

**Nafiz Cekirge**
Four Times Square
24th Floor
New York, NY 10036
(212) 735-3639
Fax: (212) 489 2384
Email: nafiz.cekirge@bryancave.com

**Scott Harris Kaiser**
Bryan Cave LLP (NY)
1290 Avenue of Americas
New York, NY 10104
(212)-541-1195
Fax: (212)-541-13
Email: scott.kaiser@bryancave.com

*Counsel for Deutsche Bank National Trust Company:*

**Bernard J. Garbutt , III**
Morgan, Lewis and Bockius LLP (NY)
101 Park Avenue
New York, NY 10178
212-309-6000
Fax: 212-309-6273
Email: bgarbutt@morganlewis.com

**Christopher J Mannion**
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadephia, PA 19103-1628

13

215-963-5000
Fax: 215-963-5001
Email: cmannion@morganlewis.com

**Thomas James Sullivan , Jr.**
Morgan Lewis & Bockius, LLP (PA)
1701 Market Street
Philadelphia, PA 19103
(215)-963-5146
Fax: 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
Email: tsullivan@morganlewis.com

*Counsel for HSBC Bank USA National Association & Wells Fargo Bank National Association:*

**Allison J Schoenthal**
Hogan Lovells US LLP (nyc)
875 Third Avenue
New York, NY 10022
(212) 918-3000
Fax: (212) 918-3100
Email: allison.schoenthal@hoganlovells.com

**Patrick Joseph Dempsey**
Hogan Lovells US LLP (nyc)
875 Third Avenue
New York, NY 10022
(212)-918-3000
Fax: (212)-918-3100
Email: patrick.dempsey@hoganlovells.com

**Brian S McGrath**
Hogan Lovells US LLP (nyc)
875 Third Avenue
New York, NY 10022
212-918-3000
Fax: 212-918-3100
Email: brian.mcgrath@hoganlovells.com

**Lisa Jean Fried**
Hogan Lovells US LLP (nyc)
875 Third Avenue

New York, NY 10022
(212) 918-3000
Fax: (212) 918-3100
Email: lisa.fried@hoganlovells.com

*Counsel for US Bank National Association:*

**Christopher George Karagheuzoff**
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
212 735 0793
Fax: 212 953 7201
Email: karagheuzoff.christopher@dorsey.com

**Eric R. Sherman**
Dorsey & Whitney, LLP (MN)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 492-6609
Fax: (612) 340-2868
Email: sherman.eric@dorsey.com